IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Justin Spiehs | | Case No.   5:23-cv-04107-JAR-BGS |
| | Plaintiff | |
| v. | | PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION & MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |
| Lisa Larsen *et al* | | |
| | Defendants | |

**LEGAL STANDARD**

To obtain a preliminary injunction there must be a likelihood of success on the merits and that the movant will suffer irreparable harm; the balance of the equities favor movant and the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Dr. Spiehs suffers irreparable harm absent an injunction because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020). The balance of equities and public interest merge when the opposing party is the government. *Denver Homeless out Loud v. Denver,* 32 F.4th 1259, 1278 (10th Cir. 2022). Injunctions "protecting the core First Amendment right of political expression" serve the public interest. *Homans v. City of Albuquerque,* 264 F.3d 1240, 1244 (10th Cir. 2001).

**Facts**

The Lawrence City Commission is the governing and legislative body of the City of Lawrence, Kansas. The Lawrence City Commission provides for a public forum presided over by a Mayor of the City of Lawrence. ECF 1 (Complaint), p.3 **¶7**. Plaintiff Dr. Spiehs has been a frequent and consistent speaker on a wide range of

1

topics including criticizing the defendant Commission and Mayors' policies, ethics, and competency. ECF 1, ¶**30**. The Commission conducts open meetings in which it invites the public to speak.  ECF 1, ¶¶**19, 21, 43, 79**. The Lawrence City Commission, the Governing Body, adopted City of Lawrence, Kan., Res. No. 7451 (October 4, 2022), establishing its public speaking rules and procedures. ECF 1, ¶**26**.  In that Resolution it states in part the following:

> (d) General Public Comment. When the presiding officer asks for General Public Comment, persons are encouraged to speak on items not scheduled for discussion on any agenda prepared for that meeting. As a general practice, the Governing Body will not discuss or debate items nor will the Governing Body make decisions on items presented during General Public Comment. General Public Comment should be limited to issues and items germane to the business of the Governing Body.
> (e) Public Comment on a Specific Item. When the presiding officer asks for Public Comment on a specific item being considered by the Governing Body, persons may comment on that specific item at that time. Persons will be limited to addressing the Governing Body on that specific item one time, unless otherwise permitted by the presiding officer. Public Comment on a specific item shall be germane to the item being discussed.
> (f) Decorum. Members of the public are encouraged to act with decorum and to address the Governing Body and each other with respect. The following will not be tolerated: fighting words, slander, speech invasive of the privacy of individuals, unreasonably loud or repetitious speech, and speech so disruptive of the proceedings that it substantially interferes with the Governing Body's ability to conduct the business of the City. Any member of the public engaging in disruptive behavior that substantially interferes with the Governing Body's ability to conduct the business of the City may, after a warning, be subject to removal from the meeting. During a meeting, it shall be the duty of the presiding officer to preserve order and decorum.

ECF 1, ¶**26**. The Commission video records its open meetings.  On November 7, 2023, many speakers spoke on matters the Commission had no control over such as the Israeli / Gaza conflict.  https://www.youtube.com/watch?v=sTOcPC4masY (time mark 1:05:25).  And when the defendant Mayor Larsen stated that the matter was not germane, the speakers continued without interruption or being told to leave.  ECF 1, ¶**47**.  Under current policy, the Commission allows speakers such as Chris Flowers to discuss "poop" and "pee" policies at his place of employment and his suggestion

that the bathrooms be divided, not by biology, but by "peeing" or "pooping." https://www.youtube.com/watch?v=Ll2PXTrO090&list=PLzt8e_efB6wWeZHkZyLW 5wDjJoavZH2IH (1:37:41). Under this current policy, the Commission has engaged in activities concerning voicing its opinions and asserting public influence over matters the Commission has no control over such as those made in its proclamations. ECF 1, **¶¶16-18**. The Commission has historically engaged in these activities since 2022, taking positions about topics such as "World Polio Day," "Indigenous Peoples Day," "Domestic Violence Awareness Month," "Maryemma Graham Jubilee Day, "Day of Awareness for Missing and Murdered Indigenous Women, Girls, and Persons," "Child Abuse Prevention Month," "Imagine a Day Without Water," and "National Health Center Week." ECF 1, **¶¶16-18**. In May 2023, the Commission proclaimed the "month of June is designated as LGBTQ+ Pride Month and it commemorates the Stonewall Rebellion that occurred during the weekend of June 27-29, 1969 in New York City, New York, that gave birth to the modern lesbian, gay, bisexual, and transgender (LGBT) civil rights movement." ECF 1, **¶¶16-18**. Since October 11, 2022, Public speakers, such as Chris Flowers, Nicole, Amy, and many others speakers are routinely allowed by the defendant mayor to speak during the General Public Comment portions at the Commission meetings on topics, subjects, and matters of which the Commission has absolutely no control over. ECF 1, **¶27**. Despite speaking on those topics over which the Commission has no control over, the defendant Commission has not each time interrupted, terminated, or instructed police to have a speaker (not named Justin Spiehs) removed because of an off-topic

discussion. ECF 1, **¶27.** The Commission also allows written comments, as a part of the General Public Comment portion of the meeting, to include matters the Commission has no control over. ECF 1, **¶28.** On November 6, 2023, Lora Jost wrote, in part, that they "support a city resolution calling for a ceasefire in Gaza" and that "Israel has bombed Gaza relentlessly and indiscriminately." Other verbal and written comments of speakers contain vulgarity or other topics of which the Commission has no control over. ECF 1, **¶28.** Speaker Chris Flowers was allowed by the defendant mayors to communicate in his written comments to the General Public Comment on April 6, 2020, when speaking about the Hobby Lobby's owner's wife, that when she said God told her to "guide, guard, and groom" that "I think she misheard the message. I think God told her, "Quit bringing up my name to justify your selfish greed. Fuck you, you money grubbing cunt!" That's what I think God told her…." Speaker Chris Flowers was never punished or removed from the General Public Comment portion of the Commission meetings because of that statement. ECF 1, **¶29.** The Commission has no control over Douglas County elections yet the defendant Mayor Shipley allowed Dr. Spiehs to speak on his campaign for county commissioner at the October 4, 2022, general public comments section. ECF 1, **¶31.** The Commission conducted a recorded meeting with public comments on October 11, 2022. https://www.youtube.com/watch?v=j20V0R0vsbk (21:47). At the meeting Commission meeting, speaker Chris Flowers (22:24) stated that he had discovered a loophole to the "should be germane to the business" requirement by simply asking that the speech be made a proclamation. Flowers reasoned that proclamations have

no subject limitations and that incorporating the speech into a proclamation request would make the speech germane.  ECF 1, ¶**33.**  Defendant Shipley prohibited the following speaker Dr. Spiehs from talking about his proposed topic of proclamation regarding taxes, rent, and inflation. (25:15) ECF 1, ¶**34**. Dr. Spiehs was then forced to be removed from the open meeting.  (29:08) ECF 1, ¶**34.**  Yet, in the very next public meeting by the Commission on October 18, 2022, a speaker named Nicole spoke again on many topics, as Dr. Spiehs did (and attempted to do), regarding former presidents without interruption or removal from the meeting by defendant Shipley. https://www.youtube.com/watch?v=PVMDlmjbpQ4&t=4192s  ECF  1,  ¶¶**39-40.**  On July 18, 2023, Dr. Spiehs spoke – or attempted to speak – at the General Comments part of the Commission open meeting about masks – a topic the Commission has addressed  and  of  which  many  speakers  had  spoken. https://www.youtube.com/watch?v=gJJ1_O_Jr3U&t=15s  ECF  1,  ¶¶**43-46.** Defendant Larsen prevented Dr. Spiehs from talking and then had him physically removed from the open meeting. (1:07:21) ECF 1, ¶**43-46.**  Defendant Larsen stated to the Lawrence Journal World in November 2023, that "the issue of what is considered a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic." ECF 1, ¶**24.**

## Argument
### Count 1  Facial Challenge

Count 1 brings a facial challenge. ECF 1, p. 29.  The Commission has and operates a laissez-faire standardless public speaking policy.  It is a designated public forum.  *See Mesa v. White*, 197 F.3d 1041, 1045 (10th Cir. 1999).  The erratic and

standardless application undermines any claim it is a limited public forum. *See Planned Parenthood Ass'n/Chi. Area v. Chi. Transit Auth.,* 767 F.2d 1225, 1232 (7th Cir. 1985) (inconsistent and loose application of policy was "laissez-faire" and created designated public forum); *See also Gregoire v. Centennial Sch. Dist.,* 907 F.2d 1366, 1374 (3d Cir. 1990) ("access to many diverse groups" evinced intent to create designated public forum); *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 355 (6th Cir. 1998) ("In accepting a wide array of political and public-issue speech, SORTA has demonstrated its intent to designate … a public forum"). The defendant Mayor's unpredictable tolerance of some "off-topic" speech while vigilantly moderating other viewpoints on the same off-topic demonstrates that the City defendants do not limit the open forum it created. "Having effectively opened its doors to all comers, subject only a standardless standard," the City defendants have "failed to exercise the clear and consistent control" over the scope of speech "required to maintain a [limited] public forum." *Hopper v. City of Pasco*, 241 F.3d 1067, 1080 (9th Cir. 2001). The City operates a public forum subject to strict scrutiny. *See  Mesa; See also Scroggins v. City of Topeka,* 2 F.Supp.2d 1362, 1370 (D.Kan.1998) (city council meeting public forum).

First, the policy speaks of "disruptive behavior" but it is unconstitutionally vague as to whether this encompasses off-topic speech.  It does because each time Dr. Spiehs purportedly spoke off-topic he was removed – thus meaning it was "disruptive behavior."  Second, speakers under the General Public Comment Resolution, are allowed to "speak on items not scheduled for discussion on any agenda prepared for

that meeting." While the Specific Comment portion is limited with the language "***shall*** be germane" the General Comment portion is not so limited. It states the "General Public Comment ***should*** be limited to issues and items germane to the business of the Governing Body." Is "germane to the business of the Governing Body" mandatory or permissive? The phrase "should be germane to the business of the Governing body" is unconstitutionally vague as a speaker cannot discern what exactly constitutes the "business" of the board at each meeting. Mayor Larsen admits it is not a "clear guideline" not only verbally but also in the way this phrase is interpreted. Third, the words and phrases "slander, speech invasive of the privacy of individuals, unreasonably loud or repetitious speech" are unworkable, unreasonable, and overbroad and unconstitutionally vague. To enforce "slander" the presiding mayor must be judge, jury, and executioner as to what constitutes every element of defamation. PIK 127.51. To be "invasive of privacy" means what? So one can be loud – but not *unreasonably* loud? The Mayor does not give a speaker an ongoing decibel meter that flashes red when the volume crosses this *unreasonable* line. That subjects a speaker to arbitrary enforcement. How does a speaker determine "repetitious"? Like repeating someone's name or a topic or repeating another speaker's topics or phrases? Can a speaker make the same point different ways?

The defendants have not drawn "a reasonable line" when regulating the content of speech at its open meetings. *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888 (2018). Defendants bear the burden to "articulate some sensible basis for distinguishing what may come in from what must stay out." *Id.* And its rules must

further – rather than undermine – the purpose of the forum. *Id*. at 1891. As one court has explained, an "opinion that a school employee is incompetent in performing school duties or violating the law governing the performance of the employee's duties is in fact relevant to the purpose of the limited public forum." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 426 (E.D. Pa. 2021). Thus, the manner in which defendants interpret its speaking policy "undermines" defendants' "interest in maintaining" a forum to hear opinions about literally anything a proclamation does or may include, *Mansky*, 138 S. Ct. at 1891, because it prevents speakers from discussing issues that otherwise fit within the "subject matter" that the City talks about. This is a KOMA open meeting in which citizens have a right to be on the property. *See Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,* 508 U.S. 384, 393 (1993) (skipping forum determination for analysis of viewpoint neutrality). The cited words and phrases are unconstitutionally vague because they lack "objective, workable standards" that a person of ordinary intelligence can understand. *Marshall*, 571 F. Supp. 3d at 424 (quoting *Mansky*, 138 S. Ct. at 1891). The terms are "irreparably clothed in subjectivity." *Id*. This subjectivity renders the policy facially unconstitutionally vague. *Id*.

Count 2 As Applied Challenge

If the policy is not vague and is viewpoint neutral on its face, it has not been applied to Dr. Spiehs in a viewpoint-neutral manner. ECF 1, p. 32. If "business of the board" only encompasses subjects the Commission has control over, many speakers routinely speak on issues beyond the control of the Commission. With its

resolution process, there is no limitation of subjects – yet the defendant Commission applies topical subjects to Dr. Spiehs with a personal vengeance. If topic "germane to the business of the board" is only a suggestion, the defendants apply it as a mandatory requirement. If the removal authority is limited to "disruptive behavior" and not purported "off-topic" speech, the defendants have applied its removal authority to speech the defendants do not like. These words and phrases are "irreparably clothed in subjectivity" and provides no standards to guide a Mayor's discretion. *Marshall* at 424-25.

## Conclusion

Dr. Spiehs is likely to prevail. "In a typical case, the party moving for a preliminary injunction bears the burden of establishing its likelihood of success on the merits." *Mama Bears of Forsyth County v. McCall,* 642 F.Supp.3d 1338, 1362 (2022) (citing *Matal v. Tam*, 582 U.S. 218, 137 S. Ct. 1744, 1763 (2017)). "However, in First Amendment cases the initial burden is flipped." *Id.* "Instead, the government bears the burden of proving that the law is constitutional and, as a result, the plaintiff must be deemed likely to prevail if the government fails to show the constitutionality of the law." *Id. See New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2130, 213 L.Ed.2d 387 (2022) (government "bears the burden of proving the constitutionality of its actions" when it restricts speech). The City defendants bear the burden to show each and every reason for the suppression of his speech and his subsequent removal was Constitutional. *See Kennedy v. Bremerton School District*,

142 S. Ct. 2407, 2426 (2022) ("Whether one views the case through the lens of the Free Exercise or Free Speech Clause, at this point the burden shifts to the District"). "Singling out one individual, banning his (perhaps disfavored) speech, and essentially preventing him from engaging in a form of civil discourse that is available to everyone else … is unreasonable." *Mama Bears* at 1362 (quoting *McBreairty v. Sch. Bd. of RSU 22*, 616 F.Supp.3d 79, 96 (D. Me. July 20, 2022)). "Allowing a viewpoint to be offered on some occasions without interruption does not prove the policy viewpoint neutral." *McBreairty* at 96 (quoting *Marshall*). "Here, it is hard to shake the sense that the School Board is restricting the speech because the Board disagrees with both [Dr. Spiehs'] opinions and the unpleasantness that accompanies them." *Id.* No harm will come to the City defendants regarding an injunction. The Court is requested to provide the injunctive and declaratory relief set forth in the Complaint. ECF 1, pp 43-44.

## Verification

I, Dr. Justin Spiehs, am the plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this motion and in the filed Complaint, and I hereby declare under penalty of perjury that the allegations contained in the Complaint and the above foregoing allegations are true and correct to the best of my knowledge and understanding.

Date: _12-28-23_          By: _____
                          Dr. Justin Spiehs

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:          913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff