# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JUSTIN SPIEHS, | ) |
| | ) Case No.: 5:23-cv-04107 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LISA LARSEN, *et al*., | ) |
| | ) |
| Defendants. | ) |

## OPENING BRIEF IN SUPPORT OF THE COMMISSION DEFENDANTS' MOTION TO DISMISS

Defendants Lisa Larsen, Courtney Shipley, and incorrectly denominated Defendant, the Lawrence City Commission[1] (the "Commission Defendants"), by and through counsel, and in accordance with Fed. R. Civ. P. 12(b)(1) and (6), submit the following Brief in Support of their Motion to Dismiss.

## NATURE OF THE MATTER BEFORE THE COURT

In this lawsuit, Plaintiff, Justin Spiehs, alleges numerous constitutional violations against the Commission Defendants and against the Board of Directors of the Free Public Library of the City of Lawrence, Kansas, Kathleen Morgan, Marc Veloz, Sara Mathews, Erica Segraves, Phillip Howard, and an Unidentified Library Security Guard (the "Library Defendants"). The Complaint alleges causes of action premised on two distinct and separate factual circumstances. First, the Complaint lodges allegations regarding Plaintiff's involvement at Lawrence City Commission public meetings. Specifically, Plaintiff alleges his First Amendment rights were violated at two

---

[1] Plaintiff's claims against the Lawrence City Commission are precluded because it is not a legal entity that is subject to suit. Kansas courts have consistently held that subordinate government agencies do not have the capacity to sue or be sued in the absence of statutory authorization. *See, e.g.*, *Whayne v. State of Kan.*, 980 F. Supp. 387, 391 (D. Kan. 1997) (stating a subunit of city government "is not a governmental entity subject to suit."). The Lawrence City Commission is not a separate entity from the City of Lawrence—it is merely a subordinate agency of the city government. Because there is no statutory authority granting the Lawrence City Commission the capacity to sue or be sued, it must be dismissed from this action.

public meetings on October 11, 2022, and July 18, 2023. *See* Compl. ¶ 34, 43. As a result, Plaintiff asserts numerous as-applied First Amendment claims and a facial challenge to the governing speaking policy implemented at these meetings. The second—and distinct—factual circumstance relates to two incidents Plaintiff was involved in at the Lawrence Public Library. Plaintiff alleges he was prevented from attending, or physically removed from, two events hosted at the library on May 17, 2023, and June 11, 2023. *See id.* ¶ 64, 75.

The claims asserted against the Commission Defendants should be dismissed and the Commission Defendants should be dismissed from this lawsuit. The Lawrence City Commission public meetings Plaintiff attended are properly characterized as "limited public forums." *See McCulen v. Coakley*, 573 U.S. 464, 477 (2014). As a result, the Lawrence City Commission policies and procedures were allowed to place reasonable restrictions on speech. Plaintiff's claims fail as a matter of law because the policies and procedures Plaintiff alleges are unconstitutional are not unconstitutional in every application and are narrowly tailored to serve the limited purpose of conducting an efficient meeting. Furthermore, Plaintiff's as-applied challenges, i.e., being interrupted, prohibited from handclapping, and being removed from these meetings, also fail as a matter of law because these are instances of the Commission Defendants properly invoking and implementing reasonable restrictions to conduct these public meetings efficiently and effectively. This Court should dismiss these meritless claims and enter an order dismissing the Commission Defendants from this lawsuit.

## **STATEMENT OF THE SPECIFIC RELIEF SOUGHT**

The Commission Defendants move this Court to dismiss all of the claims against them in Plaintiff's Complaint and to dismiss the Commission Defendants from this case.

**FACTUAL BACKGROUND**

I. *Factual allegations involving the Commission Defendants.*

Plaintiff alleges he attended four public meetings hosted by the Lawrence City Commission. On October 11, 2022, Plaintiff alleges he attended a Lawrence City Commission public meeting and offered testimony during the "General Public Comment" portion of the meeting. *Id.* ¶ 34. During this meeting, Plaintiff alleges he was interrupted by Shipley while giving his public comments and was ultimately "required to leave [the] meeting and city hall building by LEO." *Id.* On October 18, 2022, Plaintiff alleges he attended another Lawrence City Commission public meeting. *Id.* ¶ 42. Plaintiff alleges he provided his comments on "rent, his election campaign, taxes, defendant Shipley's SUV, [and] the County's Mill Levy." *Id.* Plaintiff advised that he was allowed to provide his general comments without interruption and was not removed from the meeting. *Id.*

On July 18, 2023, Plaintiff attended another Lawrence City Commission public meeting. *Id.* ¶ 43. Plaintiff alleges that he provided his public comment, was interrupted by Shipley, and was ultimately required to leave the meeting and city hall. *Id.* Finally, on November 7, 2023, Plaintiff attended a Lawrence City Commission public meeting where he, again, provided public comment. *Id.* ¶ 48. At this meeting, Plaintiff alleges that he was able to offer testimony without interruption and without being removed from the meeting. *Id.* ¶ 49. As it relates to these four meetings, the Complaint alleges the Lawrence City Commission implemented rules and procedures to govern during these meetings. *Id.* ¶ 26. The Complaint alleges the policy regarding the "General Public Comment" is unconstitutionally vague. *Id.* ¶ 85, 89. Additionally, although it is relatively unclear, it appears Plaintiff alleges the "Decorum" portion of the policy is also impermissible. *Id.* ¶ 88 ("The restrictions 'slander, speech invasive of the privacy of individuals,

3

unreasonably loud or repetitious speech' are unworkable, unreasonable, and overbroad and vague."). Finally, although Plaintiff does not allege any factual allegations supporting the claim, he alleges in a conclusory manner that his First Amendment rights were violated when the Commission Defendants prevented him from "handclapping." *Id.* ¶ 119.

### II. *Factual allegations involving the Library Defendants.*

In a separate heading of the Complaint, titled "*Incidents at the Lawrence Public Library*" Plaintiff alleges he was prevented from attending, or physically removed from, two events hosted at the library on May 17, 2023, and June 11, 2023. *See id.* ¶ 64, 75. On May 17, 2023, the library hosted an event with Kansas Legal Services to help transgender people change their gender markers on their birth certificates and IDs. The Complaint alleges Plaintiff attended the event with a sign that read "If you have a dick, then you are not a chick." *Id.* ¶ 62. The Complaint further alleges that Plaintiff was confronted by library employees who physically prevented Plaintiff from entering the library's auditorium. *Id.* ¶ 64. On June 11, 2023, the Complaint alleges that the library hosted an event titled "Deja's Reading Rainbow" *Id.* ¶ 67. Plaintiff alleges he attended the event with a sign that stated, "This is Wrong" and "Stop Grooming Kids." *Id.* ¶ 70. Plaintiff alleges that he was initially allowed to attend the event but was ultimately required to leave for allegedly being disruptive. *Id.* ¶ 73. The Complaint alleges that "[w]hatever policy the [Library Defendants] were utilizing to prohibit Mr. Spiehs' entry into the [a]uditorium or to suppress the quiet display of his signs, as applied to Mr. Spiehs was intentional viewpoint discrimination." *Id.* ¶ 150.

## ARGUMENTS AND AUTHORITIES

### I. STANDARD OF REVIEW

The Commission Defendants seek dismissal under two independent grounds: failure to state a claim under Rule 12(b)(6) and lack of subject matter jurisdiction under Rule 12(b)(1). For

a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint need not have "detailed factual allegations" the Rule demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tronsgard v. FBL Fin. Grp., Inc.*, 312 F.Supp.3d 982, 989 (D. Kan. 2018) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 752, 756 (10th Cir. 2010).

Defendants Shipley and Larsen additionally seek dismissal under the defense of qualified immunity, which would deprive this court of subject matter jurisdiction over them. "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations." *Hobbs v. Kan. Dep't for Child. and Families*, No. 19-1307-KHV, 2021 WL 325839, at *1 (D. Kan. Feb. 1, 2021). Federal courts may exercise jurisdiction only when authorized, thus, they must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

II. **THE LAWRENCE CITY COMMISSION PUBLIC MEETINGS WERE LIMITED PUBLIC FORUMS, THUS REASONABLE RESTRICTIONS ON SPEECH WERE PERMISSIBLE.**

As an initial matter, it is important to recognize that the Lawrence City Commission public meetings that Plaintiff attended are properly characterized as "limited public forums." A three-step analysis applies to free speech claims on government property: (1) determine whether the

5

plaintiff's conduct is protected speech; (2) "identify the nature of the forum, because the extent to which the [defendant] may limit access depends on whether the forum is public or nonpublic"; and (3) determine "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Gilmore v. Beveridge*, No. 2:22-cv-02032-HLT-RES, 2022 WL 3139023, at *5 (D. Kan. Aug. 5, 2022) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). Under the second prong of the analysis, the public meetings—at least the portions of the meetings that Plaintiff challenges—certainly constitute limited public forums.[2]

There are four types of fora that may exist on government property: "(1) traditional public fora; (2) designated public fora; (3) limited public fora; and (4) nonpublic fora." *Cole v. Goossen*, 402 F. Supp. 3d 992, 1013 (D. Kan. 2019). Tenth Circuit precedent essentially demands the conclusion that the public meetings here are properly defined as limited public forums. Plaintiff does not challenge these public meetings as a whole, but rather challenges the "General Public Comment" portion of these meetings. *See* Compl. ¶ 85. These meetings are conducted to help maintain "effective governance and professional administration." (Exhibit "A"). During these meetings, there is a dedicated portion for general public comments, which is the portion of the policy Plaintiff challenges. Saliently for this lawsuit, Plaintiff challenges the provision that states a constituent's comments "should be limited to issues and items germane to the business of the Governing Body." (Exhibit "A"); Compl. ¶ 26.

---

[2] The Complaint does not allege which fora the public meetings should be characterized as.

Thus, although these public meetings are commenced to pursue and conduct the business of the Lawrence City Commission, the meetings are opened to limited public comments so that constituents may voice their opinions on certain topics to assist the Commission with these pursuits. These meetings can only be characterized as limited public forums because there are restrictions on speech that are implemented during a portion of the meeting. For example, the comments are limited to three minutes and must be limited to "issues and items germane to the business of the Governing Body." (Exhibit "A"). These public meetings are not arenas such as courtyards that are left open for public protest or an opened university classroom to all corners on a first-come-first-served basis. *See Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1180 (D. N.M 2014) (citing *Widmar v. Vincent*, 454 U.S. 263, 265 (1981)). Rather, this portion of the meeting is only open to public for limited and tailored comments—not an unqualified opportunity for constituents to voice their opinions. Thus, because these general public comments are restricted and limited, they must be considered "limited public forums." "Although a number of courts have followed the Tenth Circuit's lead in refraining from categorizing city council meetings one way or the other, the Court's conclusion comports with every United States Court of Appeals that has decided the issue: the Fourth, Fifth, Ninth, and Eleventh Circuits." *See id.* (citing cases that have held city council meetings, that allow for general public comment portions, constitute limited public forums).

### III. THE CHALLENGED LAWRENCE CITY COMMISSION POLICY IS NOT UNCONSTITUTIONALLY VAGUE.

Plaintiff's facial challenge against the policy fails to state a claim because the challenged policy is not unconstitutionally vague. "Facial challenges for vagueness and overbreadth involve a common preliminary inquiry about the statute's effect on constitutionally protected activity." *Jordan v. Pugh*, 425 F.3d 820, 828 (10th Cir. 2005). To mount a facial vagueness challenge, Plaintiff must show that the potential chilling effect on protected expression is "both real and

7

substantial." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975). The Tenth Circuit has described vagueness challenges as "strong medicine" requiring the court to be "vigilant in applying a most exacting analysis to such claims." *Ward v. Utah*, 398 F.3d 1239, 1246 (10th Cir. 2005). When considering a vagueness argument, Plaintiff must plead and prove that the challenged policy is impermissibly vague in all of its applications. *See Colorado Right to Life Comm., Inc. v. Davidson*, 395 F.Supp.2d 1001, 1010 (D. Col. 2005) ("I may conclude any section is unconstitutionally vague on its face only if it is impermissibly vague in all its applications."). A policy is unconstitutionally vague if it either "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or it "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

As discussed supra, the general public comment portion of these meetings constituted a "limited public forum," thus, the government can "regulate features of speech unrelated to its content" through "time, place, or manner" restrictions. *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). Such restrictions are permissible if "they are narrowly tailored to serve a significant government interest, and [they] leave open ample alternative channels for communication of the information." *Id.*

The challenged policy is not unconstitutionally vague because a person with ordinary intelligence would understand what speech is prohibited by the policy. Furthermore, the policy does not create a specter of arbitrary enforcement. Here, Plaintiff specifically challenges the portion of the policy that states general public comments "should be limited to issues and items germane to the business of the Governing Body." *See* Compl. ¶ 85. The text of this policy provides ample opportunity for an ordinary person to understand what speech is prohibited during this portion of the public meeting. "The primary issue raised by the doctrine [of vagueness] is whether

8

the particular [policy] is sufficiently definite to give fair notice to one who would avoid its sanctions, ascertainable standards to the factfinder who just adjudicate guilt under it." *Smith v. Sheeter*, 402 F.Supp. 624, 628 (S.D. Ohio 1975). This policy is plain and simple. It provides that if a speaker wants to provide testimony during the general public comment portion of the meeting, the speaker is plainly on notice that his speech must be "germane to the business of the Governing Body." There is no ambiguity in the text; rather, it straightforwardly provides adequate notice that the comments must be "germane to the business of the Governing Body."

Critically, this Court has just recently upheld a strikingly similar policy involving the Olathe School Board's public speaking policy. In *Gilmore v. Beveridge*, the Olathe school board allowed for general public comments during school board meetings, but required the comments to be "germane to the business or activities of the Board." 2022 WL 3139023. In similar fashion, the plaintiff in *Gilmore* lodged a facial challenge invoking the vagueness doctrine—just as Plaintiff does here. The Court in *Gilmore* rejected this argument, stating "[t]he Court struggles to see how a person of ordinary intelligence would not understand their remarks during a school board meeting should be relevant to the business of the school board." *Id.* at *7. This conclusion should be adopted here.[3] Moreover, the Complaint provides no reasoning or articulation in support of another conclusion; he merely claims, in a conclusory manner, that an ordinary person would not have adequate notice. *Id.* Rather, Plaintiff seems to compare the terms "should" and "shall" from a differing portion of the policy. *See* Compl. ¶ 86. It is unclear, however, how Plaintiff contends this comparison renders the challenged provision vague. Even if there were differing standards for different portions of the meeting, that does not, in of itself, render the challenged provision vague.

---

[3] The Court should utilize the dictionary definition of germane, which is defined as "relevant" or "pertinent." *Germane*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, under a plain reading approach, Plaintiff was on notice that his comments should have been "relevant" or "pertinent" to the business of the Lawrence City Commission.

*See, e.g.*, *Felton v. Griffin*, 185 F. App'x 700, 701 (9th Cir. 2006) ("Thus, the fact that different standards may apply depending on the subject of the potential slander does not render the word vague."). In sum, the text of the provision is clear: if a constituent wants to provide comments during this portion of the meeting, the comments must be related to the business of the Commission.

Furthermore, the policy is not impermissibly vague because the Commission must implement *some* guidelines and policies to conduct the meetings effectively and efficiently. "There is significant governmental interest in conducting orderly, efficient meetings of public bodies." *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 803 (11th Cir. 2004); *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 272 (9th Cir. 1995) ("Meetings of a public body do not become free-for-alls simply because the body goes beyond what a member of the public believes (even correctly) to be the body's proper purview." (citations omitted)). Certainly, the Commission could not prohibit Plaintiff from speaking merely for the viewpoints he was expressing, but it is constitutionally permissible to stop Plaintiff when his speech becomes "irrelevant or repetitious." *See White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990). Limiting speech to items "germane to the business of the Governing Board" is not an impermissible restriction that leads to arbitrary enforcement; rather, it is a reasonable restriction that allows for these public meeting to be efficiently conducted. This Court should maintain its holding in *Gilmore*, and find that this challenged policy does not allows for arbitrary enforcement. *See Gilmore*, 2022 WL 3139023, at *8.

    IV.    **THE CHALLENGED LAWRENCE CITY COMMISSION POLICY DOES NOT PLACE RESTRICTIONS ON THE CONTENT OF SPEECH.**

The challenged policy is also not facially unconstitutional due to restrictions on the content of speech. Here, Plaintiff shifts his focus to the text of the "decorum" portion of the policy.

Specifically, Plaintiff alleges "[t]he restrictions 'slander, speech invasive of the privacy of individuals, unreasonably loud or repetitious speech' are unworkable, unreasonable, and overbroad and vague." Compl. ¶ 88. Plaintiff's argument has no merit. As discussed above, at these public meetings, the Commission was allowed to "regulate the features of speech unrelated to its content" through "time, place, or manner" restrictions. As it follows, "Courts have consistently held that restrictions on and prohibitions on loud and boisterous conduct or comments are permissible." *Mama Bears for Forsyth Cnty. v. McCall*, 642 F.Supp.3d 1338, 1358 (N.D. Ga. 2022); *see also City of Norwalk*, 900 F.3d at 1426 (holding that city council restriction on speech that "disrupts, disturbs, or otherwise impedes the orderly conduct of the Council meeting" was a constitutionally sound restriction); *Scroggins v. City of Topeka, Kan.*, 2 F.Supp.2d 1362, 1374 (D. Kan. 1998) ("The Court believes that the Council rules at issue plainly promote a substantial government interest in orderly, efficient, and dignified meetings and that without these rules the Council's ability to conduct such meetings would be compromised."). Thus, the "decorum" portion of the challenged policy is not unconstitutional.

V. **PLAINTIFF'S AS-APPLIED AND RETALIATION CLAIMS FAIL TO STATE A CLAIM BECAUSE THE COMMISSION DEFENDANTS WERE IMPLEMENTING REASONABLE RESTRICTIONS.**

A. ***Plaintiff's compelled speech and viewpoint discrimination claims relating to the prohibition on handclapping fail.***

The Complaint alleges two causes of action—a compelled speech claim and a content and viewpoint discrimination claim—focused on Plaintiff's claim that he was prevented from "hand clapping after a speaker completes his or her speech." Compl. ¶ 110, 118, 119. Notwithstanding, the Commission "has the constitutional power to impose reasonable restrictions on speech during city council meetings." *Ernst v. City of Bellingham*, 177 F. App'x 652, 654 (9th Cir. 2006) (upholding city ordinance that punished disruptive speech during city council meetings because

there is a "significant governmental interest[] of preserving public order and ensuring that government business is accomplished in an efficient manner."); *Shero v. City of Grove Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (upholding city council restriction that was "appropriately designed to promote orderly and efficient meetings."); *Taylor v. St. Louis Comm. Coll.*, No. 4:18cv00272, 2020 WL 1065651, at *4 (E.D. Mo. Mar. 5, 2020) (upholding college's "no-clapping rule" during a limited public meeting because it was "designed to maintain an orderly public meeting."). The Court should find the same here.[4]

### B. *Plaintiff's as applied claims and his retaliation claim fail because the Commission was just exercising its power to impose reasonable restrictions on speech.*

Plaintiff's as-applied challenge against the policy fails because the policy, as applied to him, was simply the Commission exercising its inherent power to reasonably restrict speech. The Complaint alleges that "[t]he Commission's speaking policy has been applied to the plaintiff Spiehs in a discriminatory and disparate fashion." Compl. ¶ 94. As discussed above, the policy restriction that speech must be "germane to the business of the Governing Body" was a reasonable restriction on speech tailored to serve the interest of efficiently running a meeting. Plaintiff alleges this policy was only used to impermissibly restrict his speech on two occasions: on October 11, 2022, *id*. ¶ 34; and on July 18, 2023. *Id.* ¶ 43. For example, at the October 11th meeting, Plaintiff called Defendant Shipley a "nazi" numerous times and was warned that his speech was not "germane to the business" of the Commission and he was asked to remove himself from the meeting *Id.* ¶ 34. Plaintiff continued to provide testimony that was not germane to the business of the Commission and continued to call Shipley and the other Commissioners "nazis." *Id.* At the July 18, 2023, meeting, Plaintiff was given numerous warnings that his testimony was not germane

---

[4] Furthermore, there are no factual allegations of an example when Plaintiff was actually prevented from clapping during a meeting.

to the business of the Commission. *Id.* ¶ 43. On either occasion, Plaintiff provided testimony that was irrelevant, disruptive, and hindered the Commission's authority to conduct an efficient and orderly meeting. When the Commission enforced the policy, it was not discriminating against Plaintiff's viewpoints; rather, the Commission was enforcing a reasonable restriction on speech to orderly and efficiently conduct the public meetings.

In line with this analysis, Plaintiff's retaliation claim also fails. Government retaliation for exercising a First Amendment right can be showed by proving: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's protected speech. *Worrel v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). The Commission Defendants were merely enforcing constitutionally permissible restrictions, not discriminating against the viewpoints of Plaintiff's speech. Second, Plaintiff did not suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. Plaintiff alleges that his injury was being removed from the public meetings; however, Plaintiff was last removed from a meeting on July 18, 2023. Compl. ¶ 43. Even after being removed from a meeting, Plaintiff still returned to a future meeting on November 7, 2023, where he was able to offer testimony without interruption and without being removed from the meeting. *Id.* ¶ 49. Thus, Plaintiff has not offered evidence of a sufficient injury that would chill an ordinary person.

VI. **DEFENDANTS SHIPLEY AND LARSEN ARE ENTITLED TO QUALIFIED IMMUNITY.**

"Qualified immunity is meant to protect public servants—'all but the plainly incompetent or those who knowingly violate the law'—from the burdens of lawsuits." *Hirt v. U.S.D. No. 287*, No. 2:17-CV-02279-HLT, 2019 WL 1866321, at *18 (D. Kan. April, 24, 2019) (quoting *Lewis v.*

*Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010)). Once a defendant asserts qualified immunity, the plaintiff must show that: (1) the defendant's actions violate a constitutional right and (2) the constitutional issue was clearly established at the time of defendant's actions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citations omitted).

First, Shipley and Larsen's alleged actions did not violate Plaintiff's constitutional rights. As discussed in depth throughout this brief, Plaintiff's First Amendment rights were not violated. Shipley and Larsen—as Commissioners—had authority to enforce reasonable restrictions on speech to conduct the public meetings efficiently and effectively. *See, e.g.*, *Shero*, 510 F.3d at 1204 (upholding grant of official immunity to city employees for "limiting a plaintiff's speaking time at a city council meeting."). However, even assuming the Complaint sufficiently alleges that a constitutional right was violated, Plaintiff cannot prevail in establishing that this right was "clearly established" under Tenth Circuit precedent. Certainly, Plaintiff has a fundamental right to express himself through speech. However, merely asserting the existence of a generic constitutional right is not enough to defeat a claim of qualified immunity. *See Cole v. Buchanan Cnty. Sch. Bd.*, 328 F. App'x 204, 208 (4th Cir. 2009).

The "clearly established" prong of the qualified immunity analysis turns on "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Plaintiff does not have a "clearly established" right to participate in a limited public meeting and be allowed unfettered opportunities to voice his testimony. By the very nature of these limited meetings, reasonable restrictions were allowed so long as they were viewpoint neutral and enforced that way. *See Norse v. City of Santa*

*Cruz*, 629 F.3d 966, 975 (9th Cir. 2010). The Complaint does not allege targeted discrimination on the basis of the content of Plaintiff's speech; instead it merely highlights the Commission enforcing its authority to restrict speech to effectively conduct meetings. In short, Plaintiff's First Amendment rights were not violated, let alone extinguished when the policy was enforced and he was removed from the meeting. Accordingly, Shipley or Larsen did not violate a clearly established constitutional right, thus, they are entitled to qualified immunity.

## CONCLUSION

The Commission Defendants move this Court to dismiss all of the claims against them in Plaintiff's Complaint, to dismiss the Commission Defendants from this case, and for any additional relief this Court deems appropriate.

Dated: December 29, 2023                                Respectfully submitted,

 */s/ Benjamin A. Ramberg*
| | |
|---|---|
| JOHN E. FRANKE            #13539 | TONI RAMIREZ WHEELR  #18473 |
| BENJAMIN A. RAMBERG  #29498 | RANDALL F. LARKIN         #14184 |
| **FRANKE SCHULTZ & MULLEN, P.C.** | ZACHARY T. FRIDELL        #27338 |
| 8900 Ward Parkway | **CITY OF LAWRENCE, KANSAS** |
| Kansas City, Missouri 64114 | City Hall |
| (816) 421-7100 | 6 East 6th Street |
| (816) 421-7915 (Fax) | Lawrence, Kansas, 66044 |
| jfranke@fsmlawfirm.com | twheeler@lawrenceks.org |
| bramberg@fsmlawfirm.com | rlarkin@lawrenceks.org |
| | zfridell@lawrenceks.org |

**Attorneys for Defendants,
Lisa Larsen, Courtney Shipley, and
the Lawrence City Commission**

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of December, 2023, the foregoing was electronically filed using the Kansas Pacer Program, which will send notification of electronic filing to all registered attorneys of record.

 */s/ Benjamin A. Ramberg*