IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Justin Spiehs<br><br>    Plaintiff<br><br>v.<br><br>Lisa Larsen *et al*<br><br>    Defendants | Case No.   5:23-cv-04107-JAR-BGS<br><br>PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS |

The defendants' motion to dismiss (ECF 13) is misdirected with ruinous analytics. The type of forum is factual. Unless the pleadings can be controverted and mischaracterized, forum awaits a factual judgment procedure. It cannot be determined at this stage in the proceedings. The motion ignores altogether the well-pled factual allegations as well as any mention of Count 5 (equal protection).[1] The conclusory arguments regarding qualified immunity are altogether without merit.[2] Defendants citation to cases with different policies and how they were applied are unconnected without application to these facts.

---

[1] Plaintiff has pled class of one and the pleaded facts show he was treated differently. "Government action that suppresses protected speech in a discriminatory manner may violate both the First Amendment and the Equal Protection Clause." *Schnekloth v. Deakins*, No. 21-CV-5131, 2022 WL 1050380, at *7 (W.D. Ark. Apr. 7, 2022) (quoting *Dariano v. Morgan Hill Unified Sch. Dist.,* 767 F.3d 764,779 (9th Cir. 2014)). "Even if [Defendants] possess a legitimate government interest in removing disruptive participants from [Lawrence] board meetings, the legitimacy of their decision to remove Plaintiff from the [July / October 2022] board meetings cannot be resolved at this stage." *Miller v. Goggin*, No. CV 22-3329-KSM, 2023 WL 3294832, at *22–23 (E.D. Pa. May 5, 2023).

[2] One example – defendants argue that qualified immunity entitles it to a complete dismissal. But qualified immunity is only a defense to damages from the individuals – not to declaratory or injunctive relief or to any claims stated against the Commission.

1

**Defendants Admit Dr. Spiehs' Speech was Suppressed and That He Was Removed From Open Meetings – They Have Failed to Substantiate Their Burden to Demonstrate the Constitutionality of Each of Their Actions**

Defendants unequivocally admit in their motion that Dr. Spiehs' speech was suppressed. Dr. Spiehs has met his initial burden of proof. *See Brewer v. City of Albuquerque,* 18 F.4th 1205, 1219 (10th Cir. 2021) ("Plaintiffs carried their threshold burden of showing their speech and conduct are protected by the First Amendment"); *American Legion Post 7 v. City of Durham*, 239 F.3d 601, 606 (4th Cir.2001) (threshold determination triggering application of First Amendment scrutiny is whether challenged regulation burdens speech). The burden falls on the defendants to now prove the constitutionality of Dr. Spiehs' speech suppression and his removal. *See McCullen v. Coakley*, 573 U.S. 464, 134 S.Ct. 2518, 2540 (2014) ("To meet the requirement of narrow tailoring, the government must demonstrate [that the speech restriction meets the relevant requirements]." *Doe v. City of Albuquerque,* 667 F.3d 1111, 1135 (10th Cir. 2012) (When "a law infringes on the exercise of First Amendment rights, its proponent bears the burden of establishing its constitutionality"). *See also New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2130, 213 L.Ed.2d 387 (2022) (government "bears the burden of proving the constitutionality of its actions" when it restricts speech).

**The City Commission is a Proper Party and Suit Against It is Suit Against the City**

The City Commission is not a "subunit" of the City of Lawrence as claimed by the City defendants. ECF 13, fn. 1. The Commission is the governing body of the City. The City utilizes a commission-manager form of government. *See* KSA § 12-

2

184b(b)(3).  Its relationship to the City of Lawrence parallels the relationship of a school board to a school district.  There is no duplication of claims being made in this lawsuit.   Plaintiff's claims against the City Commission is "the equivalent of a suit against the city." *Rubio v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1300 (D. Kan. 2006); *White v. City of Grandview Plaza*, No. 16-4162-DDC-KGS, 2017 WL 2215133, at *10 (D. Kan. May 19,2017).  *See also Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815 (10th Cir.1990) (stating that a "local governmental entity such as a school board may only be held liable for decisions made by officials who have authority under state law to speak as final decisionmakers on the particular issue").

**The Forum is a Public Forum and Not a "Limited" Public Forum**

The Court is required to determine the type of forum at issue.  *See Summum v. Callaghan*, 130 F.3d 906, 913 (10th Cir. 1997).  City defendants claim its forum is a "limited" public forum but it is not. *See* plaintiff's motion for injunctive relief. ECF 12, pp. 5-6.  Regulations on speech in public and designated public forums require more exacting scrutiny. *Cole v. Goossen*, 402 F. Supp. 3d 992, 1013 (D. Kan. 2019). The way the defendant Mayors conducted these meetings was akin to town-hall meetings and open-mike events.  *See Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 680 (1998) (analyzing forum as "an open-microphone format").

When attempting to distinguish between a designated public forum and a limited public forum, courts look to "the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum." *Cornelius v. NAACP Legal Def. & Educ. Fund,* 473

3

U.S. 788, 802 (1985). Both a policy and a consistent application thereof must be present in order to establish that a government intended to create a "limited" public forum. "What matters is what the government actually does – specifically, whether it consistently enforces the restrictions on use of the forum that it adopted." *Hopper v. City of Pasco*, 241 F.3d 1067, 1075 (9th Cir.2001) ("The city's so-called policy of non-controversy became no policy at all because it was not consistently enforced and because it lacked any definite standards"). All speech restrictions are therefore reviewed under strict scrutiny. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983). Any restriction based on the content of speech in a public forum must be narrowly tailored to serve a compelling government interest. *See Pleasant Grove City v. Summum,* 555 U.S. 460, 469 (2009) (a traditional public forum allows "reasonable time, place, and manner restrictions … but any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest").

A "policy purporting to keep a forum closed (or open to expression only on certain subjects) is no policy at all for purposes of public forum analysis if, in practice, it is not enforced or if the exceptions are haphazardly permitted." *Hopper* at 1076. Unlimited numbers of speakers speak at the City's open meetings with no subject matter limitations. Defendants ignore the facts contained in the verified Complaint which must be taken as true.[3] The erratic and standardless application undermines

---

[3] The purported written subject matter limitation of "germane to the business of the governing board" is not a requirement at all but a suggestion because it uses the word "should" rather than "shall." The citation to *Gilmore v. Beveridge*, No. 2:22-cv-02032-

4

any claim it is a "limited" public forum. *See Planned Parenthood Ass'n/Chi. Area v. Chi. Transit Auth.,* 767 F.2d 1225, 1232 (7th Cir. 1985) (inconsistent and loose application of policy was "laissez-faire" and created designated public forum); *See also Gregoire v. Centennial Sch. Dist.,* 907 F.2d 1366, 1374 (3d Cir. 1990) ("access to many diverse groups" evinced intent to create designated public forum); *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 355 (6th Cir. 1998) ("In accepting a wide array of political and public-issue speech, SORTA has demonstrated its intent to designate … a public forum"). "Having effectively opened its doors to all comers, subject only a standardless standard," the City defendants have "failed to exercise the clear and consistent control" over the scope of speech "required to maintain a [limited] public forum." *Hopper at* 1080. The City operates a public forum subject to strict scrutiny. *See Perry. Mesa v. White*, 197 F.3d 1041 (10th Cir. 1999) is still good law.[4]

---

HLT-RES, 2022 WL 3139023 (D. Kan. Aug. 5, 2022) supports this plaintiff. The *Gilmore* court was not presented with the same policy or any issue as to whether "germane to the business" was mandatory or permissive. In *Gilmore*, the policy specifically used the phrase "shall be": "Topics expressed during the limited public forum *shall be* germane to the business of the board." *Id.* at pp.5 & 6. That policy was mandatory. And in *Gilmore*, the parties did not dispute that the forum was a limited public forum.

[4] The Tenth circuit recognizes the terms "designated public forum" and "limited public forum" are not "interchangeable terms." *Summum* at n. 14 ("We recognize that the boundary between a designated public forum for a limited purpose (e.g., *Widmar*) and a limited public forum [citing *Rosenberger and Lamb's Chapel*] is far from clear.... We simply note that a designated public forum for a limited purpose and a limited public forum are not interchangeable terms").

5

### *Should be Germane* to the Business is Not a Requirement as Interpreted by the Mayor Defendants

Plaintiff has made as applied and facial Counts regarding the defendants' speaking policy. Defendants completely avoid any analysis as to the distinction between "shall be" and "should be" in reference to the "germane to the business" references made in the Commission's written policy. Instead, they claim the phrases are not vague yet also acknowledge the possibility there are "differing standards" that apply. ECF 13, p.9. The policy never uses the word "must" for either speaking section. *See Indigo Ag, Inc. v. Summit Ag, LLC,* 2023 WL 3884697 at *5 (June 8, 2023) (use of word "must" is mandatory). The use of "shall" and "should" in the same policy (regarding different speaking sections) indicates most likely an intended respective mandatory and permissive interpretation to those respective sections. There is no reason to use "shall" and "should" in the same speaking policy regarding separate speaking sections if the words were intended to mean the same thing. The word "should" "is advisory, not compulsory." *Henderson v. Montgomery Cty. Bd. of Commissioners*, 57 Kan. App. 2d 818, 461 P.3d 64, 76, *rev. denied* 312 Kan. 891 (2020). Even the term "shall" can be ambiguous because it is susceptible to multiple meanings, including "must," "should," or even "may," depending on the context. *See State v. Raschke*, 289 Kan. 911, 920-22, 219 P.3d 481 (2009) (recognizing "shall" can be either mandatory or directory depending on context).

Even if "should be" is not vague, the issue of what standard does actually apply – or how the Mayors have applied it – still is at issue in this case. The defendant Mayors apply "should be" as a mandatory requirement. The Court can declare that

there is no requirement that comments be "germane to the business of the governing board" under the "should be" general comments section of the open meeting. The Court can enjoin the City from enforcing this provision as mandatory. Defendants' argument is completely silent on this issue.

## "Germane to the Business of the Governing Board" is Vague in Context of This Policy and Its Arbitrary Application

The *Gilmore* court did not analyze the verbiage "germane to the business of the governing board" in the context of this policy or its application.[5] The defendants define "germane" but curiously omit analyzing what "business of the governing board" encompasses. Mayor Larsen herself explicitly admitted the notion of "business" was subjective – the epitome of vagueness and arbitrary enforcement. It lacks "objective, workable standards" that a person of ordinary intelligence can understand. *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1891 (2018)[6].

The defendant mayors interpret this phrase as only including things the Commission has control over. The mayors confronted Dr. Spiehs asking him how the Commission "had control" over the subjects he was speaking about. This city commission repeatedly utilizes public proclamations on virtually anything over which the Commission has no control over. In application it allows speakers to speak on anything and is not limited to subjects which the Board has control over.

---

[5] Putting aside this is not an apples to apples factual analysis, a "decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 730 n.7 (2011).

[6] Mayor Larsen's admission cannot be ignored: she stated that the "issue of what is considered a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic." ECF 1, **¶24.**

7

**Defendants' Citation to Other Cases Referring to Different Policies Does Not Intrinsically Inject Those Restrictions Into This Commission Policy**

Defendants make the vague and unsupported assertion that "Defendants were merely enforcing constitutionally permissible restrictions." ECF 13, p.13. Defendants go on to indiscriminately slosh around various case citations injecting non-existent restrictions – as well as pretextual and *post hac* reasons – regarding the suppression of Dr. Spiehs' speech and his removal.[7] But the only restrictions are those stated in the written policy – not made up restrictions smuggled in from other cases. There are no so-called intrinsically infused rules not stated by the Commission as claimed by the defendants.[8] The Commission has a policy and is bound to it. "Once the government has set the boundaries of its forum, it may not renege; it must respect its own self-imposed boundaries." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 858 (7th Cir. 2006) (also finding it did not have enough facts at the stage of proceedings to define the nature of the speech forum).

And the only restriction stated at the meetings was the no-control-germane one – singular. Now they claim after the fact that Dr. Spiehs was silenced and then removed because his speech was "irrelevant and repetitious." (ECF 13, p.10). Defendants do not explain how Dr. Spiehs protected speech in purportedly talking

---

[7] A jury may consider any reason offered by the defendants as to why Dr. Spiehs' speech was suppressed at the public meeting as pretextual in order to hide an actual discriminatory reason or reasons the speech was suppressed. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993); *Wright v. West*, 505 U.S. 277, 296 (1992).

[8] When challenged about removal authority even the defendants' attorney admitted there was no authority stated in the policy. ECF 1 **¶117**.

off-topic "disrupts, disturbs, or otherwise impedes the orderly conduct" of the open meeting. But defendants' post-reasoning is a confession of viewpoint discrimination because "anything [the Mayors] don't wish to hear is disruptive to their worldview." *Marshall v. Amuso*, 571 F.Supp.3d 412, 423 (E.D. Pa. 2021). Connecting the dots it was Dr. Spiehs' articulated *ideas* that the Mayors thought were disruptive. All of this means there was and are no workable standards to guide a presiding Mayor at these free-for-all open meetings. The entire policy and its application is "clothed in subjectivity." *Id.* Defendants cannot conjure up imaginary restrictions citing other policies or case decisions. *See Mama Bears of Forsyth County v. McCall,* 642 F.Supp.3d 1338, 1361 (2022) (actions exceed policy authority); *See Miller v. Goggin*, at \*13 (finding there were no workable standards). The "term 'disruptive' reaches constitutionally protected speech when it is applied to ideas being expressed." *Marshall* at 423. Because the evidence shows that the Mayors "applied the term 'disruptive' to disruptive ideas rather than disruptive conduct, this too constitutes viewpoint discrimination." *Id.*

Indeed, these public meetings are "free-for-alls" and are completely laissez-faire meetings (see ECF 12 ("poop and pee" and Palestinian comments). Its authority is not intrinsic but only exists pursuant to a written policy.

**Plaintiff States a Claim for Retaliation**

The defendants do not analyze the specific factual allegations regarding retaliation or equal protection. Neither do they analyze the purported speech restrictions nor what authority they contend exists to remove Dr. Spiehs regarding a

9

purported speech code violation. Defendants claim that a defendant Mayor had the authority to not only silence Dr. Spiehs for "irrelevant" speech but to have him removed because of purported off-topic speech. Defendants proffer a spin on the facts: that the Mayor merely suggested Dr. Spiehs leave – that "he was asked to remove himself from the meeting." ECF 13, p.1. But the videos don't lie.[9] Dr. Spiehs stated he did not want to leave. A reasonable jury could conclude that the Mayor was not asking anything but telling Dr. Spiehs to get out. The defendant Mayors each made the decision to remove Dr. Spiehs because they each contended his speech was off-topic – not the business of the Board. What Dr. Spiehs said after that decision was made is irrelevant.[10] As to handclapping, there is no policy language prohibiting handclapping. And the allegations state that others are allowed to handclap but not Dr. Spiehs. That is retaliatory. Defendants claim that later Dr. Spiehs was allowed to return and speak – which does not cure the prior retaliatory conduct and injury. It does not mean the policy or its application is not discriminatory. *See McBreairty v. Sch. Bd. of RSU 22*, 616 F.Supp.3d 79, 96 (D. Me. July 20, 2022)) ("Allowing a viewpoint to be offered on some occasions without interruption does not prove the policy viewpoint neutral").

---

[9] Video footage may properly be considered on a motion to dismiss under the incorporation-by-reference doctrine. *See Baker v. City of Madison, Alabama*, 67 F.4th 1268 (11th Cir. 2023).

[10] The defendants cite Dr. Spiehs' use of the word "Nazi" as justifying his removal. The use of the word Nazi only occurred *after* Dr. Spiehs was ordered to be removed. It does not justify the removal of Dr. Spiehs using this *post facto* reasoning.

**Defendants Larsen and Shipley Are Not Immune**

When qualified immunity is raised in a motion to dismiss, a court analyzes the issue based on the allegations in the complaint. *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) ("it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness"). The Court must consider whether the conduct specifically attributable to Larsen and Shipley plausibly states a clearly established constitutional violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("Because § 1983 and Bivens are vehicles for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants"). But nothing in that case law relieves each defendant of her burden. *See Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010) ("The burden of establishing entitlement to qualified immunity is on [the defendant]").

The defendants make no effort to examine the well-pled allegations. The plaintiff Dr. Spiehs has asserted five First Amendment causes of action against these City defendants individually. ECF 1. "Qualified immunity is not a talismanic phrase that relieves Defendants of their burden to show that their actions did not violate Plaintiff's clearly established constitutional rights." *Miller v. Goggin* at \*4. In asserting this defense, "Defendants fail to grapple with the facts and claims alleged

11

in Plaintiff's Complaint." *Id.* "They do not highlight particular claims against them and analyze the pleadings nor do they conduct any of the other analysis necessary to establish qualified immunity. Instead, they just use the phrase qualified immunity and cross their fingers in the hopes that the Court will dismiss the claims against them." *Id.* Similarly, these defendants recast the well-pled allegations which does not sustain their respective burdens. The Complaint contains numerous allegations that, if proven, amount to violations of Plaintiff's constitutional rights.

The law at the time of these incidents was clearly established that the government violates the Free Speech Clause of the First Amendment when it excludes a speaker from a speech forum the speaker is entitled to enter. *See Rosenberger v. Rector & Visitors of Univ. of Virginia,* 515 U.S. 819, 829-30 (1995). (finding a denial of access to a group to a traditional public forum constituted impermissible viewpoint discrimination and stating "when the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant"); *Universal Amusement Co. v. Vance,* 587 F.2d 159, 165 (5th Cir. 1978) ("prior restraint of expression comes before [the] court with a heavy presumption against its constitutional validity"). "Defendants have not suggested a legitimate basis upon which [Defendant] might have differentiated between Plaintiff and other audience members who were also violating Quorum Court rules." *Schnekloth v. Deakins*, No. 21-CV-5131 2022 WL 1050380 at *7 (W.D. Ark. 4/7/2022) (denying qualified immunity). Dr. Spiehs has sued these defendant Mayors specifically alleging their respective conduct in the Complaint.

The law was clearly established as of July 18 and October 11, 2022. *See also Marshall* and *Mcbreairty*. *Marshall* (April 4, 2022), *Mcbreairty* (July 20, 2022) and *Schnekloth* (April 2022) existed when the events occurred.[11] *See also Heaney v. Roberts*, 147 F. Supp. 3d 600 (E.D. La. 2015).[12]

The "law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). A reasonably competent public official would necessarily know that the Mayor is bound to the City's speaking policy. *See Christian Legal Soc'y*. That official would know that retaliatory behavior violated plaintiff's First Amendment rights. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2001). Where the alleged constitutional violation is plain, "it is unnecessary to resort to such granular detail as to require another case involving a 'purple cow.'" *Butler v. Board of County Commr's for San Miguel County*, 920 F.3d 651, 668-69 (10th Cir. 2019) (Lucero, J., dissenting). A "right does not have to have been applied in the exact same situation for it to be clearly established. There does not have to be a case directly on point so long as existing

---

[11] In *Gilmore*, those defendants filed, at the close of evidence at trial, a motion claiming the defendant Board president possessed qualified immunity regarding the claim of viewpoint discrimination against him. *See Gilmore v Beveridge*, 2:22-cv-02032. Judge Teeter entered a verbal order denying that motion.

[12] In *Heaney*, the plaintiff challenged the opinion of a Parish attorney in which a councilman interrupted him and directed a police officer, who was also named as a defendant, to remove the plaintiff from the meeting. The plaintiff Heaney sued the councilman and the officer. The *Heaney* court declined to grant qualified immunity as to the councilman.

13

precedent [has] placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. ___, ___, 136 S.Ct. 305, 308 (2015).

**Conclusion**

The defendants' motion to dismiss is but a defendant's check-the-box task at this stage in the proceedings. It is premised on a factually unsupported theory that the open meeting was a "limited" forum of which the allegations contained in the Complaint absolutely refute. Even if those allegations are viewed in their most unfavorable light this issue cannot be determined on a motion to dismiss at this stage in the proceedings. Under either forum analysis the Complaint states Constitutional claims against each defendant including the City by and through its governing authority the City Commission. Defendants Larsen and Shipley are not entitled to qualified immunity. The defendants' motion to dismiss should be denied in its entirety.

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:            913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

Certificate of Service

The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

/s/Linus L. Baker
Attorney for the plaintiff