IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Justin Spiehs<br>Plaintiff<br>v.<br>Lisa Larsen *et al*<br>Defendants | Case No.   5:23-cv-04107-JAR-BGS<br><br>PLAINTIFF'S REPLY TO MOTION FOR PRELIMINARY INJUNCTION |

**REPLY**

Defendants make a wholly unsupported bare assertion that its Commission open meetings were not "unqualified opportunities for constituents to voice their opinions on any topic of their choosing" – yet the verified facts say *precisely the opposite*. And enforcement was indeed arbitrary and unpredictable.[1] Employee Sherri Riedemann offers no factual analysis as to the range of topics actually spoken upon at the Commission's meetings. Employee Riedemann's opinions are irrelevant.[2]

---

[1] As the verified complaint states, other speakers were confronted by the Mayor as speaking on topics purportedly not "germane" in her opinion yet were allowed to speak without any adverse consequences. This treatment is another factor as to why this forum is *laissez-faire* ("let (people) do (as they think best)." ONLINE ETYMOLOGY DICTIONARY, ETYMONLINE.COM (last visited Jan. 10, 2023).

[2] Defense counsel chose a city clerk, an employee under the supervision of the Lawrence City Manager, rather than the Mayor herself or an actual sitting Commission member, to provide the Commission's position. This employee is propped up to make numerous legal conclusions she is not competent to make for the Commission. This clerk is neither a Commissioner nor the embodiment of the Commission. This clerk is not authorized to make Commission policy nor is she authorized to interpret it. Employee Riedemann reports to the City Manager. She speaks with no more authority in making any of her legal conclusions than any other citizen or employee of the City of Lawrence – all of which are irrelevant to the present inquiry.

1

**Defendants Talk in Generalities Without Specific Factual Analysis**

The defendants are wholly deficient in analyzing <u>WHAT</u> Dr. Spiehs said and <u>WHAT</u> policy reason a presiding Mayor silenced and then removed Dr. Spiehs twice. Instead, they offer their employee city clerk's opinions and then chirp generalities with no specific factual detail or application. They make the unremarkable decree they have a right to manage the meeting – then full stop. OK – but now what? No one disputes the general principles about managing an open meeting. But rules – proper rules – are required. So the lurking devilish elephant absent in defendants' response is the legal application to these specific factual details. Questions:

- What exactly did Dr. Spiehs say, and was it "germane" to this Board's "business"?
- Was his speech any different than the topics the Mayor allowed and allows from other speakers?
- Was having Dr. Spiehs removed (as a result of speaking "off-topic") reasonable and the most narrow means of keeping order?

**Plaintiff's Speech Was "Germane to the Business of the Governing Body"**

Let's start and end this Reply with this question: was Dr. Spiehs' speech at the October 11, 2022, Commission open meeting and the July 18, 2023, open meeting "germane to the business" of this Commission? Defendants conclude it wasn't but don't factually explain *why*. The germane phrase is not defined in writing in any manner. Resorting to dictionary definitions, "business" could mean a commercial aspect of the Commission's operation[3] or more generally any activity of the Commission.[4] Taking the broader definition of "business," "proclamations" are part

---

[3] "Business" – "an occupation, profession, or trade ... the purchase and sale of goods in an attempt to make a profit." Random House Webster's College Dictionary (1997).
[4] "Business" – "an activity engaged in as normal, logical, or inevitable and usually extending over a considerable period of time: role, function." Webster's Third New

of this Board's business – probably more so than most other governing boards. And how do the subjects of these Commission proclamations come about? Citizenry come before the Board, either before or during public comments at its meetings, to recommend topics for proclamations. The Commission then hears from citizenry for or against these proposed proclamations. Then the Commission enacts an official proclamation – its viewpoint – regarding a certain social or legal issue. Proclamations are by their very nature viewpoint driven statements many of which is the Commission projecting its status as a government city entity over matters it has absolutely no control over. But that input is not available if one's name is Dr. Spiehs.

The poignant point the defendants are silent on is the scope or meaning of the "Board's business" – after all the Court must determine the contours of Dr. Spiehs' speech utilizing the fencing of the policy. Did Dr. Spiehs's speech fit within the confines of that policy? And if not why is removal justified rather than allowing Dr. Spiehs to return to his audience seat? The defendants offer zero factual analysis and explanation. But there are more than bread crumbs: the Mayors said at the time this "germane" phrase means only those topics the Board can exercise control over – at least as enforced as to Dr. Spiehs:

October 11, 2022
Shipley: "Dr. Spiehs, is there some way that we have control, is there some way that this city commission has control over inflation?" ECF 1, p.10
Shipley: "Mr. Spiehs, is there some way this city commission has control over the NASDAQ? … Again, we have no control over the NASDAQ, Mr. Spiehs." *Id*. at pp. 10-11. "Good bye, sir." *Id*. at p.13.
July 18, 2023

International Dictionary 302 (1993).

> Dr. Spiehs "I started a protest against the child mask mandates that were in effect in USD497…." Larsen: "you are not speaking about something that is germane to the city …. Officer, please remove this…."

And it is curious the Commission chose the academia word "germane" rather than saying "connected with" or some other connector word such as "pertinent" or "relevant." Instead, a much broader connector word "germane" was chosen. "Germane" literally means having the same parents. Webster's Third New International Dictionary 951 (1981). In current usage, it means "in close relationship, appropriate, relative, pertinent. Relevant or closely allied." BLACK'S LAW DICTIONARY 618 (5th ed. 1979). All of those synonyms carry subjective connect-the-dots nuances. And not to be overlooked is what might be "germane" to one board's business will not necessarily be germane to another board's business. Thus there is no one-size-fits all. It is a highly factual inquiry. Taken together, putting on a speaker the burden of determining the connection limitations to a topic is the hallmark of Constitutional vagueness and arbitrary enforcement. It is "irreparably clothed in subjectivity" and provides no standards to guide a Mayor's discretion. *Marshall v. Amuso*, 571 F. Supp. 3d 412, 424-25 (E.D. Pa. 2021) ("What may be considered 'irrelevant,' 'abusive,' 'offensive,' 'intolerant,' 'inappropriate' or 'otherwise inappropriate' varies from speaker to speaker, and listener to listener").

Nothing in the policy provides guidelines. The self-serving and factually vapant affidavit of the employee Riedemann does not begin to proffer any kind of guidelines – and neither does she offer any conclusion (legal or otherwise) as to what "should" means in the context of the general public comment period. As the *Marshall* court recognized, the

> [Commission] presents no evidence of "objective, workable standards" to guide the presiding officer's exercise of discretion. *Mansky*, 138 S. Ct. at 1891. Allowing little more than the presiding officer's own views to shape "what counts" as irrelevant, intolerant, abusive, offensive, inappropriate, or otherwise inappropriate under the policies openly invites viewpoint discrimination.

That is entirely true under these circumstances. Everyone in the world not named Dr. Spiehs can talk about any "poop and pee," Gaza, Palestine, water in Africa, topic over which the Commission has zero control. But when Dr. Spiehs brings up topics such as masking, taxes, and inflation, the defendant Mayors are triggered: they declared this prohibited – and immediately ousted Dr. Spiehs' from their presence. This Commission policy invites and encourages this kind of punitive and arbitrary viewpoint discrimination. This is a highly subjective inquiry that cannot meet an objective standard as Mayor Larsen candidly admitted:

> a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic… each commission is given wide latitude to make that determination, which she said can be difficult.

ECF 1 ¶24. Each succeeding Mayor's varying interpretations have <u>zero</u> guidelines. The defendants' response is silent as to the other limitations: "slander, speech invasive of the privacy of individuals, unreasonably loud or repetitious speech" which are vague and unreasonable. Plaintiff requests an evidentiary hearing which would include factual determination of type of forum, all of which would benefit of the Court.

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:            913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

Certificate of Service

The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

<u>/s/Linus L. Baker</u>
Attorney for the plaintiff