IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Justin Spiehs<br>Plaintiff<br>v.<br>Lisa Larsen *et al*<br>Defendants | Case No.  5:23-cv-04107-JAR-BGS<br><br>PLAINTIFF'S INJUNCTION HEARING BRIEF |

**THE TENTH CIRCUIT REQUIRES ANALYSIS OF A FORUM PROVIDED IN EACH MEETING**

There can be multiple forums in one meeting. *See Summum v. Callaghan*, 130 F.3d 906, 913 (10th Cir. 1997) (First Amendment violation centers on three questions: (1) whether speech is protected, (2) the type of forum, and (3) the justification for restricting speech). The evidence demonstrates Dr. Spiehs viewpoints were protected speech – his speech did not constitute "fighting words" or other kinds of speech such as slander which are not protected by the First Amendment.

The City of Lawrence created multiple speaking forums with different purposes during its open meeting. There were three forums – all with different purposes: (1) C Recognition/Proclamation Presentation; (2) D General Public Comment; and (3) E. Consent Agenda Comments (comments on a specific agenda item). The pertinent forum at issue is forum (2) D General Public Comment. Ex. 6 (Agenda). *Summum* recognized that the terms "designated public forum" and "limited public forum" are not the same. *Summum* at n. 14. In a traditional public forum, familiar First Amendment rules apply: "any restriction based on the content of … speech must satisfy strict scrutiny." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009).  In a public forum, almost all speech restrictions offend the First

1

Amendment. *See Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (First Amendment shielded Westboro Baptist members for offensive speech at funeral).

**OVERALL STRUCTURE OF SPEAKING SECTIONS INDICATE GENERAL PUBLIC COMMENTS IS AN OPEN PUBLIC FORUM**

Both City Resolutions contemplate two on-topic forums (Proclamations and Specific Agenda) and one any-topic forum (General Public Comment). Both the Proclamation section and specific agenda forums identify *topics*. Under defendants' interpretation the General Public Comment section is essentially bound to agenda topics similar to the specific agenda. But this is not what the Resolutions say and it is counterintuitive to the stated purposes of each speaking forum. The specific agenda forum is limited to agenda items – topics the City theoretically has legislative control over. On the other hand speech about proclamations is a topic but one in which the City exercises no legislative control over. The General Comment forum serves a different purpose allowing all speakers to choose their own topic. Thus the purposes of the two forums restrict to topics – including agenda topics – while the General Public Comment serves a different purpose in allowing all topic discussions.

**THE RESOLUTIONS GIVE UNBRIDLED DISCRETION TO INTERPRET TOPICS DURING THE GENERAL COMMENTS FORUM**

This issue dovetails in the conclusion that the General Comment Public forum is an open public forum subject to strict scrutiny. The Resolutions give unbridled discretion to the presiding Mayor at each of the three forums in the meeting. The videos evidence different interpretations and different enforcement for purported off-topic speech. Both former Mayors disagreed with each other as to whether the policy was subjective. This indeterminacy alone poses a problem because the City gives

each presiding Mayor virtually unlimited discretion to decide what the Resolution General Public Comment language means. It gives the Mayor absolute discretion without "objective, workable standards" to guide enforcement. *See Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1891 (2018). The City bears the burden of "articulat[ing] some sensible basis for distinguishing what may come in from what must stay out" and "must draw a reasonable line." *Id.* As demonstrated in the testimony and videos, the City applies no workable standard and the City's inconsistency in what speech comes in or stays out during general public comments makes the germane-business rule – if it is mandatory – even more unreasonable. "It is self-evident that an indeterminate prohibition carries with it the opportunity for abuse, especially where it has received a virtually open-ended interpretation." *Mansky*, 138 S. Ct. at 1891. To "pass constitutional muster," even a viewpoint-neutral policy "must contain adequate standards to guide the official's decision." *Wag More Dogs Liab. Corp. v. Cozart*, 680 F.3d 359, 372 (4th Cir. 2012). Put another way, the City's General Public Comment policy cannot give presiding Mayors unbridled discretion. *See Summum v. Callaghan*, at 919; *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation,* 322 F.3d 1298, 1310-11 (11th Cir. 2003); *DeBoer v. Village of Oak Park*, 267 F.3d 558, 572-73 (7th Cir. 2001); *Lewis v. Wilson,* 253 F.3d 1077, 1079 (8th Cir. 2001). The City's Public Comment forum cannot survive constitutional scrutiny.

**FORUM D PUBLIC COMMENT, AS APPLIED SINCE ITS INCEPTION, HAS BEEN AN OPEN PUBLIC FORUM**

Ex 18 (Resolution 7496) (current) (pp.5-6) and its predecessor Ex 16 (Resolution 7451) (pp. 5-6) contain the identical language applicable to D General

Public Comments. As to that General Public Comment forum the Court has uncontroverted evidence that the City conducted – and continues to do so – an open public forum in prior years and since the enactment of Resolution 7451. The verified complaint demonstrates this, the video evidence introduced at the hearing, and the transcribed portions of that video evidence show this. The evidence demonstrates that each presiding Mayor "failed to exercise the clear and consistent control" over the scope of speech "required to maintain a [limited] public forum." *Hopper v. City of Pasco*, 241 F.3d 1067, 1080 (9th Cir. 2001); *Mesa v. White*, 197 F.3d 1041, 1045 (10th Cir. 1999); *Garnier v. O'Connor-Ratcliff*, Nos. 21-55118, 21-55157, 2022 WL 2963453 (9th Cir. July 27, 2022). The question is not what is written but how each Mayor applies or interprets whatever standard purports to apply. To distinguish between a limited public forum and a designated public forum, the "touchstone" is the government's "intent in establishing and maintaining" that forum." *Bryant v. Gates*, 532 F.3d 888, 895–96 (D.C. Cir. 2008). The Mayors did not author the Resolutions and had nothing to offer as far as authorship. Irrespective, whatever so-called paper standards that existed were essentially unenforced or interpreted inconsistently rendering them a mere paper policy with no topic limitations. "Objective indicia of intent" includes the "*consistent* policy and practice of the government." *Id.* (emphasis in original). *See also Garnier* ("what matters in forum analysis is what the government actually does – specifically, whether it consistently enforces the restrictions on use of the forum that it adopted") (quoting *Hopper v. City of Pasco*). "Mere statements of policy, if consistently contradicted by practice, are not

4

dispositive." *Stewart v. District of Columbia Armory Bd.*, 863 F.2d 1013, 1021 (D.C. Cir. 1988). *Summons* confirms that this Court should analyze the nature of the comments made during the Public Comment period. The City provided no evidence of any consistent enforcement of its purported no-control limitation. Evidence demonstrates:

- The General Comment Section utilizes "should" – which is a suggestion and not a requirement:

- There is no gatekeeping limitation to who is allowed to speak – anyone approaching the podium is permitted to speak;

- There is no gatekeeping function on topics: No speaker is required to submit for approval or even declare any proposed topic before speaking;

- All topics are allowed: neither Larsen nor Shipley could identify any topic that they could identify that would be off-topic during this Public Comment section of speaking;

- If the speech limitation was based upon the idea of what the City Commission could legislate upon (i.e. "control"), no Mayor maintained "clear and consistent control" utilizing this standard allowing vast speech on topics not under the control of the City;

- No Mayor maintained clear and consistent control of speech topics as evidenced by Dr. Spiehs own subsequent speech – in which he spoke the identical speech that defendant Shipley and defendant Larsen deemed off-topic previously;

- Defendants offered no evidence of enforcement of any standard during the 60 City meetings (except for the two instances of Dr. Spiehs) since October 4, 2022, Resolution standard of "germane" was enacted. *See* Hearing Ex. 1, p.6 (meetings since Oct 4, 2022); Ex. 14 (video); Ex. 15; Exs, 19-20; Exs. 23 -25.

**CITY BEARS THE BURDEN OF DEMONSTRATING ITS RESOLUTION AND DECORUM LANGUAGE IS CONSTITUTIONAL**

"In a typical case, the party moving for a preliminary injunction bears the burden of establishing its likelihood of success on the merits." *Mama Bears of Forsyth County v. McCall,* 642 F.Supp.3d 1338, 1362 (2022) (citing *Matal v. Tam*, 582 U.S.

5

218, 137 S. Ct. 1744, 1763 (2017)). "However, in First Amendment cases the initial burden is flipped." *Id.* "Instead, the government bears the burden of proving that the law is constitutional and, as a result, the plaintiff must be deemed likely to prevail if the government fails to show the constitutionality of the law." *Id. See New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2130, 213 L.Ed.2d 387 (2022) (government "bears the burden of proving the constitutionality of its actions" when it restricts speech). The City defendants bear the burden to show each and every reason for the suppression of his speech and his subsequent removal was Constitutional. *See Kennedy v. Bremerton School District*, 142 S. Ct. 2407, 2426 (2022).

## VAGUENESS

The General Public Comment language in both Resolutions, along with the decorum language, have been applied adversely to Dr. Spiehs. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

## SHOULD?

The first step in the analysis is examining the word "should" – is it advisory or mandatory? The City provides no guidelines or definitions of anything contained in the Public Comment Section. The Ex. 18 Resolution language states:

> General Public Comment. When the presiding officer asks for General Public Comment, persons are encouraged to speak on items not scheduled for discussion on any agenda prepared for that meeting. As a general practice, the Governing Body will not discuss or debate items nor will the Governing Body make decisions on items presented during General Public Comment. General Public Comment should be limited to issues and items germane to the business of the Governing Body.

6

The Resolution never uses the clear word "must" for any speaking section. *See Indigo Ag, Inc. v. Summit Ag, LLC*, 2023 WL 3884697 at *5 (June 8, 2023) (use of word "must" is mandatory). There is no reason to use "shall" and "should" in the Resolution for different speaking forums if the words were intended to mean the same thing. The word "should" "is advisory, not compulsory." *Henderson v. Montgomery Cty. Bd. of Commissioners*, 57 Kan. App. 2d 818, 461 P.3d 64, 76, *rev. denied* 312 Kan. 891 (2020). Even the term "shall" is ambiguous. *See State v. Raschke*, 289 Kan. 911, 920-22, 219 P.3d 481 (2009) (recognizing "shall" can be either mandatory or directory depending on context). Whether "should" means a requirement or a suggestion is vague. The language "fails to provide a person of ordinary intelligence fair notice" of whether anything, is prohibited. *United States v. Williams,* 553 U.S. 285, 304 (2008).

**ITEMS AND ISSUES GERMANE TO THE BUSINESS OF THE GOVERNING BODY?**

If "should" is only advisory, then the Court should so declare and enjoin future enforcement. But if "should" is interpreted as mandatory – what does "issues and items germane to the business of the Governing Body" mean to inform the public as to what speech is allowed or not allowed? One assumes "germane" means some connection. But the Court should first note, as the former Mayors admitted at the hearing, that this germane-business language does not identify any topic that is prohibited in discussion. If no topics are prohibited then exactly what is prohibited? "Issues" and "items" cannot be construed as meaning the same thing. Defendants offer no interpretation as to what either of those words mean in connection with "business." "Business" has a large cadre of meanings, ranging from "commercial or sometimes an industrial enterprise"; "dealings or transactions"; a "role," "function,

7

"mission," or "field of endeavor"; a "right"; a "serious activity requiring time and effort"; "creation" or "concoction"; or a "damaging assault" – rebuke.[1]

Assuming "business" is construed as any activity of this Commission, that is a factual issue unique to this Commission. There is no objective topic identified. Rather, each presiding Mayor, each member of the public – and now this Court – must then engage in a factual and wholistic historical analysis of what activities the Commission engages in for whatever applicable time period. That analysis is not a "fair notice" of what speech is prohibited or permitted. What "renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Paull,* 551 F.3d 516, 525 (6th Cir. 2009) (citing *Williams*, 553 U.S. at 306). And then a Mayor or the public can conclude that since the City routinely engages in activities speaking on issues and items of unlimited scope called proclamations – then speaking on issues over which the City speaks to is also permitted. Ex. 5 (list of various proclamations since 2019). The public could reasonably conclude that the activities of the Commission include speaking on items over which the Commission has no control over in any manner. What would the public then understand what speech is prohibited when the "issues" and "items" of the Commission concern speaking on an unlimited universe of topics? Defendant Shipley's and Larsen's no-control interpretation is not the only reasonable

---

[1] Merrian Webster Online https://www.merriam-webster.com/dictionary/business

interpretation of the germane-business language. It is reasonable to interpret it as allowing all topics which this Court should so declare.

## DISRUPTIVE SPEECH

The "decorum" provision prohibits the following: slander, speech invasive of the privacy of individuals, unreasonably loud or repetitious speech, and speech so disruptive of proceedings that it substantially interferes with the Governing Body's ability to conduct the business of the City. The defendant Shipley invoked this wrong-speak as *post hac* reasons at the hearing for silencing and removing Dr. Spiehs. Defendant Shipley stated that Dr. Spiehs speech made some audience members angry. But the defendants cannot silence speakers for alleged fear of how others may react to their views. "Speech cannot be … punished or banned, simply because it might offend a [crowd]." *Forsyth County. v. Nationalist Movement*, 505 U.S. 123, 134-35 (1992). Defendants "may not regulate speech because it causes offense or makes listeners uncomfortable, or because it might elicit a violent reaction or difficult-to-manage counterprotests." *Fort Lauderdale Food not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1294 (11th Cir.2021).

"Disruptive speech" is unconstitutionally vague and overbroad. The Resolution language equates offensive (disruptive) speech with disruptive behavior. "Government cannot regulate speech by relabeling it as conduct." *Otto v. City of Boca Raton*, 981 F.3d 854, 865 (11th Cir. 2020) (citing *Texas v. Johnson*, 491 U.S. 397, 414 (1989)). The decorum prohibition is not limited to fighting words. It includes statements that are rude, hostile, personal attacks – in fact could include any

9

decorum speech requirement. A speaker would have no idea what constitutes "disruptive speech."

### REPETITIVE, SLANDER, PRIVACY TOO LOUD ARE UNCONSTITUTIONALLY VAGUE AND UNREASONABLE

The defendants were questioned about the other "decorum" restrictions. When questioned about "slander" the defendant's definition was nearly cryptic being more akin to barring a personal attack – and in fact did not mention a false statement of fact. Although slander is not protected speech, the tort includes elements that no person could adjudicate on the spot during a City meeting – compounding the vagueness problem. Defendant Larsen herself admitted she doesn't know the elements of slander or whether a true statement can be defamatory. Given that these former presiding Mayors cannot explain what slander is under the policy, no person of reasonable intelligence could be expected to do so either. Defendant Shipley brought up other issues such as Dr. Spiehs' manner or volume of speech. The decorum allows speakers to be "loud" but not excessively loud which is vague and subject to complete arbitrary enforcement.

### REASONS OFFERED HIDE VIEWPOINT DISCRIMINATION

The Supreme Court has admonished courts to beware of policies that are or even may become viewpoint discriminatory in application. The "absence of express standards renders it difficult to differentiate between a legitimate denial of access and an illegitimate abuse of censorial power." *Child Evangelism Fellowship of MD, Inc. v. Montgomery Cnty. Pub. Sch.*, 457 F.3d 376, 386 (4th Cir. 2006). Defendant

Shipley's *post hac* claims[2] of disruption or distraction as a justification for her stopping Dr. Spiehs speech and having him removed is unconvincing in light of her testimony that she made her decision prior to any claimed disruption or audience anger ("You're welcome to leave). Indeed, among "the dangers posed by unbridled discretion" is the censor's "ability to hide unconstitutional viewpoint discrimination." *Id.*

**RESOLUTION SO STANDARDLESS THAT IT AUTHORIZES OR ENCOURAGES SERIOUSLY DISCRIMINATORY ENFORCEMENT**

Another reason the General Public Comment language is vague is because it "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams* at 304. A presiding Mayor has to determine relevancy – what is "germane" to "business" of the Commission. In this regard former Mayor Larsen admitted her statements made to the World Journal news (Ex. 17) were correct. The former Mayor admits the Resolution authorizes discriminatory enforcement because of its designed ambiguity with no guidelines:

> a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic… each commission is given wide latitude to make that determination, which she said can be difficult.

This admitted "wide latitude" encourages discriminatory enforcement. Former mayor Shipley determined that Dr. Spiehs could not even mention "Democrat" in the

---

[2] Shipley stated lack of control reasoning at the October 11, 2022, meeting – yet at the injunction hearing came up with new additional reasons such as disruptive conduct or making audience members angry. There was no disruptive conduct Shipley could identify when she determined Dr. Spiehs was to be removed ("you're welcome to leave") – the only thing Dr. Spiehs had done was speak words which were not fighting words but were offensive ideas. These are *post hac* reasons a jury can contemplate as to defendant Shipley's bias and motive.

11

meeting ("This is a non-partisan body, whether anyone is Democrat or Republican is not relevant"). ECF 1 p.11. There are no guidelines, much less "clear" guidelines. It is "irreparably clothed in subjectivity" and provides no standards to guide a Mayor's discretion. *Marshall v. Amuso*, 571 F. Supp. 3d 412, 424-25 (E.D. Pa. 2021) ("What may be considered irrelevant…. varies from speaker to speaker, and listener to listener"). And *Marshall's* conclusion was born out by former Mayor Shipley disagreeing with defendant Larsen's interpretation – claiming it wasn't subjective at all.

The Resolution decorum authorizes discretion to remove a speaker after a warning – but not for speaking off topic:

> Any member of the public engaging in disruptive behavior that substantially interferes with the Governing Body's ability to conduct the business of the City may, after a warning, be subject to removal from the meeting.

The word "behavior" in the phrase "disruptive behavior that substantially interferes" is vague and encourages discriminatory enforcement as each of the former Mayors interpret "behavior" as including mere speech – speech occurring during the allotted 3 minutes of the speaker. There is no record that Dr. Spiehs has ever threatened anyone or put anyone in danger at any City Commission meeting. The videos demonstrate Dr. Spiehs never conducted himself in any threatening manner – he did not ball his fists or flail his arms or even remove himself from behind the podium. But "behavior" is being interpreted by the former Mayors as encompassing merely speech – simply speaking off-topic. Speaking off-topic does not disrupt the flow of the meeting at all – it occurs during the allotted 3 minutes of the speaker.

12

And it certainly does not "substantially interfere" with the Commission's "ability to conduct the business" as the Commission's business is allocating the 3 minutes of speaking time to Dr. Spiehs. The Court should enjoin the City from removing any speaker for merely speaking off-topic as the former Mayors have done so. "Behavior" must be construed as something concerning a safety risk – a physical demonstration or fighting words – neither of which the Mayors interpret as a limitation to removal. If the City "wishes" to limit the topic in which speakers can discuss during public comment, "it must employ a more discernable approach than the one [it] has offered here." *Mansky*, 138 S. Ct. at 1891.

**EVIDENCE OF ARBITRARY AND DISCRIMINATORY ENFORCEMENT IS ABUNDANT**

For all the reasons that this forum should be construed as a public forum those same reasons demonstrate how the Resolution language permits and encourages inconsistent and arbitrary interpretations and applications depending on the mood of the presiding Mayor at any given Public Comment forum. If the purported "standard" is what the former Mayors articulated – "is there some way the Commission has control over inflation…." ECF 1 p.10 (Oct 11 meeting) then there is ample evidence the enforcement of this *ad hoc* requirement is arbitrary and inconsistent. All of the videos since enactment of the germane language demonstrate what the *Marshall* court characterized – it varies from Mayor to Mayor and speaker to speaker. Numerous speakers spoke about numerous things the City has no control over. Indeed, selective enforcement of a policy only when a presiding officer is feeling provoked does not help to support the policy's constitutionality. *Marshall*, 571 F.

13

Supp. 3d at 422; see also *McBreairty v. Sch. Bd. of RSU22*, No. 1:22-cv-00206-NT, 2022 U.S. Dist. LEXIS 128353, at *13 (D. Me. July 20, 2022).

Either the Mayors interpret "should" as a suggestion or they are all over the map on when they decide – or how they decide – to enforce or not enforce "germane to the business." And as speaker Chris Flowers correctly stated, incorporating speech into a possible proclamation (Ex. 14) converts the speech into an activity of the Commission. And despite Dr. Spiehs repeatedly stating he wanted his speech considered as a proclamation, former Mayor Shipley arbitrarily silenced and then removed Dr. Spiehs from the meeting. The City's designed vague germane language is so "standardless that it authorizes or encourages seriously discriminatory enforcement."

## OVERBREADTH

This issue also relates to the forum analysis. Dr. Spiehs speech did not disrupt either the July or October meeting. Dr. Spiehs did not "substantially interfere" with the orderly procession of speakers that evening. The City had allocated 3 minutes of speaking time to Dr. Spiehs. Those 3 minutes were scheduled and did not prevent or delay any other speaker from speaking. Even for speech that disrupts a meeting, the First Amendment will protect speech in a traditional public forum but might not protect the same speech if delivered in a limited public forum.

Dr. Spiehs speech was protected. There were no fighting words. He merely spoke off-topic (according to the interpretation of the former Mayors). A law that punishes a substantial amount of protected speech, "judged in relation to the statute's plainly legitimate sweep," invalidates all enforcement of that law. *Broadrick v.*

*Oklahoma*, 413 U.S. 601, 615 (1973). Dr. Spiehs was punished by censorship removal over what the defendants considered a speech code violation. When asked why those Mayors would not allow Dr. Spiehs to remain in the meeting even after having his 3 minutes speaking time cut short, neither had an adequate explanation as to why banishment from the meeting was the only reasonable consequence available. Being removed from the meeting because one speaks off-topic is not narrowly tailored and chills permissible speech. "Overbroad laws may deter or chill constitutionally protected speech and cause would-be speakers [to] remain silent." *United States v. Hansen*, 599 U.S. 762, 769-770 (2023).

**FACTORS FAVOR INJUNCTIVE RELIEF**

Defendants articulate no harm in declaring the Public Comment Section a Public forum allowing all topics. There will be no harm to the City interpreting "should" as a recommendation which is not mandatory – which is already occurring in practicality. "Disruptive behavior" is not offensive, crass, or rude speech and removal cannot be invoked merely by speaking off-topic. Declaring that removal of a speaker for speaking off-topic is not narrowly tailored does not harm the City. It is always in the public interest to protect First Amendment rights.

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:         913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

Certificate of Service
The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

/s/Linus L. Baker
Attorney for the plaintiff

15