## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JUSTIN SPIEHS, | |
| Plaintiff, | |
| v. | Case No. 5:23-CV-4107-JAR-BGS |
| LISA LARSEN, et al., | |
| Defendants. | |

## MEMORANDUM AND ORDER

Plaintiff Justin Spiehs brings this action under 42 U.S.C. § 1983 against Lisa Larsen, Courtney Shipley, and the Board of City Commissioners of Lawrence, Kansas,[1] asserting that his free speech and equal protection rights were violated at two Lawrence City Commission meetings.  This matter is currently before the Court on Defendants' Motion to Dismiss (Doc. 12) for lack of subject-matter jurisdiction and failure to state a claim.  The motion is fully briefed, and the Court is prepared to rule.  For the reasons explained more fully below, the Court grants in part and denies in part Defendants' motion to dismiss.

## I.     Background

The following facts are alleged in Plaintiff's Complaint.[2]  For the purposes of deciding this motion, the Court assumes these facts to be true.[3]

---

[1] Plaintiff brought suit against several additional Defendants, all of whom have either been terminated or severed from this action.  *See* Docs. 25, 38.

[2] Doc. 1.

[3] Defendants ask the Court to take judicial notice of an exhibit attached to their motion to dismiss, which is a copy of Lawrence Resolution No. 7496.  Doc. 13-1.  Defendants assert that the document is the full and complete version of the resolution which Plaintiff cited portions of in his Complaint.  *See* Doc. 24 at 2 n.3.  However, Plaintiff identified the relevant resolution in his Complaint as Resolution No. 7451, not Resolution No. 7496.  Doc. 1 ¶ 26.  Given this disparity, and without considering whether the two resolutions are meaningfully different, the Court declines to take judicial notice of Exhibit A at this time.

Defendant Lawrence City Commission ("City Commission") meetings are open to the public and presided over by the Lawrence City Mayor.  Members of the public may offer oral or written comment at certain times during City Commission meetings.  For example, the presiding officer may invite public comment on a specific item being considered by the City Commission, or invite general public comment on items not scheduled for discussion.  The public is invited to offer these two types of public comments (either specific or general) at different portions of the meetings.  But for both types of public comments, they are limited to three minutes.  Plaintiff has historically been the most infamous and outspoken public speaker at City Commission meetings.

On October 4, 2022, the City Commission adopted a resolution which established public speaking rules and procedures.  This resolution added several new provisions, including: (1) a provision governing the general public comment portion of the meeting, providing that comments "*should* be limited to issues and items germane to the business of the Governing Body" ("germane standard"); and (2) a decorum provision updating the rules to prohibit "fighting words, slander, speech invasive of the privacy of individuals, unreasonably loud or repetitious speech," and disruptive speech that interferes with the Board's ability to conduct City business ("decorum standard").[4]

At the October 11, 2022 City Commission meeting, Chris Flowers, a member of the public, offered a strategy for evading the germane standard during his general public comment.  Flowers stated that members of the public could simply ask that their speech be made a

---

[4] Doc. 1 ¶ 26 (emphasis added).  The resolution also adopted a provision governing the specific public comment portion of the meetings, providing that "[p]ublic [c]omment on a specific item *shall* be germane to the item being discussed."  *Id.* (emphasis added).  Plaintiff challenges only the general comment germane standard and the decorum standard in his Complaint.  Thus, when the Court refers to the germane standard throughout this Order, the Court is referring to the general comment germane standard.

proclamation—which he described as unlimited in subject-matter—to avoid the germane standard.

Plaintiff was the next speaker at the October 11 meeting.  He began his comment by introducing himself as a Republican candidate for Douglas County Commissioner.  Plaintiff then proceeded to offer several statistics comparing things such as inflation, gas prices, and mortgage rates, from the last day President Trump was in office and under President Biden.  Defendant Shipley, then-Mayor, interrupted Plaintiff and asked him, "is there some way that we have control, is there some way that this city commission has control over inflation?"  Plaintiff stated in response, "I'd like to make this a proclamation of how stupid Democrats are," and then continued offering statistics on rent and the NASDAQ.  Shipley interrupted Plaintiff again, asking Plaintiff whether the Commission had control over the NASDAQ.  Plaintiff then stated that he wanted to make his comment a proclamation, and called Shipley a Nazi.  Plaintiff continued to try to speak on matters that Shipley considered non-germane, and Plaintiff called Shipley a Nazi several more times.  Shipley then called for a recess of the meeting, and Plaintiff was soon removed from the building by security officers.

In the next public meeting, on October 18, 2022, another speaker, "Nicole," spoke about former presidents without interruption or removal from the meeting.  Plaintiff also offered comment at the October 18 meeting.  Plaintiff began his comment by introducing himself as a Douglas County Commissioner candidate, and then discussed topics such as: Shipley's high-pollution car; the Douglas County mill levy; the Douglas County budget; Plaintiff's opponent in his political campaign, Patrick Kelly; and property taxes.  Plaintiff was interrupted by Shipley only once, when Plaintiff began speaking directly to a reporter, and was asked to address his

comments to the Commission.  Plaintiff complied without further issue and ceased speaking when his three minutes were up.

On July 18, 2023, Plaintiff again offered public comment during the general public comment portion of the City Commission meeting.  At this time, Defendant Larsen was the acting Mayor.  Larsen inadvertently misgendered the speaker immediately preceding Plaintiff, but corrected herself and apologized.  When Plaintiff began his comment, he noted that Larsen had misgendered the former speaker, and questioned whether that error would be considered a hate crime under the discrimination act the Commission was considering.  Plaintiff then addressed the journalists in the room, asking whether they planned to run a story about the snafu, and noted that the journalists certainly would run that story if it was Plaintiff who misgendered someone.  Plaintiff then stated "[t]alk about, talk about baseless conspiracy theories—men having babies, men having periods.  Come on, there ain't (sic) a bigger conspiracy theory than that."[5]  City Commissioner Amber Sellers interrupted Plaintiff during this comment about conspiracy theories and asked for a point of order, but Larsen did not act upon the request.  Plaintiff continued to speak, stating "so save your conspiracy theory bullshit for somebody that gives a shit."[6]

Plaintiff then introduced himself, describing himself as a candidate for Douglas County Commissioner, and started to discuss a protest he started in July 2021 against child mask mandates in the Lawrence Unified School District 497 ("USD 497").  Sellers continued to interrupt Plaintiff several more times by asking for a point of order.  Larsen then interrupted Plaintiff and asked him, "Sir, what's it do with the city?"  At this time, another speaker, Michael

---

[5] *Id.* ¶ 43.

[6] *Id.*

Eravi, interrupted Larsen; Larsen warned Eravi that he was out of order and subject to being removed if he spoke out-of-turn again.  Plaintiff then continued to speak about his protest, but was interrupted several more times by Sellers asking for a point of order.  Larsen then interrupted Plaintiff to warn him that he was not speaking about something germane to the City, and also asked Sellers to be quiet.  Plaintiff continued to try to speak about the City's mask mandate, but Larsen told Plaintiff "Sir, you're done" and warned him again that he was not speaking about germane items.  When Plaintiff continued to speak, and questioned why he was being interrupted, Larsen paused the meeting and asked a security officer to remove Plaintiff from the building.

At the November 7, 2023 meeting, several speakers offered general public comment on the conflict in Israel and Gaza, requesting that the City Commission issue a proclamation calling for a ceasefire.  Larsen interrupted two of the speakers with a warning that they needed to speak about matters germane to the business of the City, but allowed the speakers to continue speaking. Plaintiff also offered comment at the November 7 meeting.  In his comment, Plaintiff mentioned masks and the cost of living under President Trump versus President Biden, and then challenged the City Commission about why they were not interrupting him, given that he was removed for speaking about those topics in the past.  Plaintiff then questioned what the City of Lawrence has to do with the ceasefire the other speakers requested, and asserted that the ceasefire was not germane.  Plaintiff concluded his comment by stating that the City Commission was engaging in viewpoint discrimination against him.  At no point during his comment was Plaintiff interrupted by Larsen, or any other City Commissioner.

In November 2023, Larsen conducted an interview with the Lawrence Journal World ("LJW") that touched on the new policies governing speech at City Commission meetings. The article stated that:

> Larsen told the Journal-World that the issue of what is considered a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic. Instead, she said each commission is given wide latitude to make that determination, which she said can be difficult.[7]

## II.      Subject-Matter Jurisdiction—Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim where the court lacks subject matter jurisdiction. Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[8] A court lacking jurisdiction must dismiss the claim, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[9] The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[10] Mere conclusory allegations of jurisdiction are not enough.[11]

Defendants assert, in a single footnote, that this Court does not have subject-matter jurisdiction over Defendant City Commission because it is a subordinate governmental agency

---

[7] Doc. 1 ¶ 24.

[8] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.").

[9] *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

[10] *Montoya*, 296 F.3d at 955.

[11] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) (citation omitted).

not amenable to suit under Kansas law.[12]  In his response, Plaintiff asserted that dismissal would be improper because the City Commission is not a subordinate City agency, but rather is the governing body for the City of Lawrence.  In their reply, Defendants did not respond to Plaintiff's arguments about whether the City Commission can be considered "subordinate," since it is the governing body for the City.  After careful consideration of Kansas law, the Court finds that dismissal of Defendant City Commission would be improper.

Plaintiff is constrained by Kansas law regarding the capacity of parties to be sued in this Court.[13]  Applying Kansas law, courts have held that subordinate agencies like sheriff's departments[14] and city police departments[15] do not have the capacity to be sued.  However, these examples can easily be distinguished from Defendant City Commission, which is not *subordinate* to any other City entity.  Rather, for all intents and purposes, the City Commission *is* the City.

K.S.A. § 12-101 grants cities in Kansas several enumerated, but nonexclusive, powers— including the power to "[s]ue and be sued."  K.S.A. § 12-103 is entitled "How powers exercised" and states that "[t]he powers hereby granted shall be exercised by the governing body of such city."  Plaintiff alleges that Defendant City Commission is the governing body of Lawrence, and Defendants do not controvert this assertion.  Thus, based on the plain language of the

---

[12] *See Lindenman v. Umscheid*, 875 P.2d 964, 977 (Kan. 1994) ("Subordinate government agencies, in the absence of statutory authorization, ordinarily do not have the capacity to sue or be sued." (citing *Hopkins v. Kansas*, 702 P.2d 311, 316 (Kan. 1985))).

[13] Fed. R. Civ. P. 17(b)(3) (noting that the capacity of a party to be sued in federal court is determined "by the law of the state where the court is located.").

[14] *Wright v. Wyandotte Cnty. Sheriff's Dept.*, 963 F. Supp. 1029, 1034 (D. Kan. 1997) (finding that the plaintiff improperly sued the county sheriff's department, which is "merely an agency of the county . . . and is not itself capable of being sued."); *Ayesh v. Butler Cnty. Sheriff's Office*, No. 19-CV-1183-EFM-KGG, 2019 WL 6700337, at *3 (D. Kan. 2019) (noting that the sheriff's office must be dismissed because it is "not amenable to suit," but permitting the plaintiff to amend the complaint to properly name the county).

[15] *Whayne v. Kansas*, 980 F. Supp. 387, 391 (D. Kan. 1997) (finding that the Topeka Police Department is a subunit of city government and "therefore, is not a governmental entity subject to suit.")

aforementioned statutes, it appears that the City Commission, as the governing body of Kansas, was explicitly granted the power to sue or be sued by statute.

Whether the City Commission may sue or be sued under its own name, or whether it must use the City's name, is a separate matter that Defendants do not raise.[16]  The Court finds that it has subject-matter jurisdiction over Defendant City Commission because it is not a subordinate governmental agency.[17]  However, the Court will revisit this decision if the parties submit additional argument in future briefings.  Defendants' motion to dismiss Defendant City Commission from this suit for lack of subject-matter jurisdiction is denied.

## III.    Failure to State a Claim—Fed. R. Civ. P. 12(b)(6)

### A.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[18] and include "enough facts to state a claim for relief that is plausible on its face."[19] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[20]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[21]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation

---

[16] K.S.A. § 12-102 states that the "corporate name of each city shall be "The city of _____.""

[17] The Court notes that Defendants have alleged no basis to support dismissing the Commission/ City from the suit entirely.  Rather, if Plaintiff erred by naming the Board, it would likely be proper to grant Plaintiff leave to amend his Complaint to name the City of Lawrence, Kansas instead of the Commission.

[18] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

[19] *Id.* at 570.

[20] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[22]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[23]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[24]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[25]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[26]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27]

## B.      Application to Plaintiff's Claims

Plaintiff asserts two official capacity claims against Defendant City Commission: (1) a facial vagueness challenge to the germane and decorum standards; and (2) a facial challenge to the germane and decorum standards based on forum status.  Plaintiff asserts the following claims against Larsen and Shipley in their individual capacities: (1) an as-applied challenge to the

---

[22] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[23] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[24] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[25] *Id*. at 678–79.

[26] *Id*. at 679.

[27] *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).

germane and decorum standards based on forum status;[28] (2) an as-applied content- and viewpoint-discrimination challenge to the germane standard; (3) a First Amendment retaliation claim; (4) a content- and viewpoint-discrimination claim based on handclapping; (5) a compelled speech claim; and (6) an equal protection challenge.[29]  Defendants move to dismiss all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Below, the Court finds that Plaintiff states a plausible claim for relief on his forum status claims, both facially and as-applied, as well as his retaliation claim and equal protection claim. However, Plaintiff fails to state a plausible claim for relief on his vagueness claim, his as-applied claim based on content- and viewpoint-discrimination, and his two handclapping claims.[30]

### 1.    Facial Vagueness Challenge

Plaintiff asserts that the germane standard in the general comment portion of City Commission meetings is facially unconstitutional because it is vague and overly discretionary. Plaintiff also challenges two parts of the decorum standard: (1) the prohibition of disruptive behavior; and (2) the prohibitions on slander, speech invasive of the privacy of individuals, and unreasonably loud or repetitious speech.[31]  Defendants assert that the two standards are not

---

[28] As described below, the Court construes Plaintiff's Complaint to raise his forum status challenge both facially and as-applied, even though he nominally raises it only as a facial challenge.  *See* Doc. 1 at 29.  The Court considers the forum status claims together, below, but clarifies here that the facial challenge is brought against the City Commission, and the as-applied challenge is brought against Larsen and Shipley.

[29] The Court notes that the numbering of the claims in this Order does not mirror the numbering in the Complaint.  The Court considers Plaintiff's vagueness claim separately from the forum status claim, even though Plaintiff put both claims under the same header in his Complaint, because they require distinct legal analyses.  *See id.* ¶¶ 76–91.  Plaintiff also labeled two separate claims in his Complaint as the third claim, which the Court corrects here.  *See id.* at 33, 36; *see also Cornell v. Stryker Corp.*, No. 11-CV-356-F, 2012 WL 12861085, at *3 (D. Wyo. Apr. 18, 2012) (noting that the court is "not bound by a party's choice of labels for its action because this would put form over substance," and treating the plaintiff's claims according to their substance instead of their labels (quotation omitted)).

[30] The claims the Court dismisses under Fed. R. Civ. P. 12(b)(6) are described in the Complaint as the First, Second, Fourth, and the duplicate Third (compelled speech) causes of action.  The First cause of action is not dismissed in its entirety because the forum status claims remain, but the others are dismissed in their entirety.

[31] Plaintiff mentions the word "overbroad" in his facial claim section, while discussing the decorum standard.  *See* Doc. 1 ¶ 88 ("The [decorum] restrictions . . . are unworkable, unreasonable, and overbroad and

impermissibly vague because ordinary people: (1) understand "germane" to mean "relevant"; and (2) understand which kinds of conduct or speech are prohibited under the decorum standard. Defendants alternatively argue that the standards are not unconstitutionally vague because they are not unconstitutional in all applications.  The Court finds that Plaintiff fails to state a plausible claim that the germane and decorum standards are void-for-vagueness.

"A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."[32]  "To mount a facial vagueness challenge, the litigant must show that the potential chilling effect on protected expression is 'both real and substantial.'"[33]  The void-for-vagueness doctrine grew out of the due process clause in the criminal law context; though it can apply to civil cases, "[t]o find a civil statute void for vagueness, the statute must be so vague and indefinite as really to be no rule or standard at all."[34]

Beginning with the germane standard, Plaintiff alleges that members of the public do not understand which topics are germane.  However, the transcripts provided in the Complaint show that speakers did understand the germane standard and attempted to comply with it.[35]  This

---

vague.").  Overbreadth is a distinct type of facial challenge which, if successful, invalidates the entire statute or policy in question.  *See United States v. Stevens*, 559 U.S. 460, 473 (2010).  However, given that Plaintiff presents no specific argument on overbreadth, the Court declines to engage in an overbreadth analysis based on the mere presence of the word "overbroad" in Plaintiff's Complaint.

[32] *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

[33] *Jordan v. Pugh*, 425 F.3d 820, 828 (10th Cir. 2005) (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, (1975)).

[34] *Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1170 (D.N.M. 2014) (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)).

[35] *See* Doc. 1 ¶ 39 (noting that a speaker "Nicole" began her comment by stating "I am addressing all city commissioners so this will be germane"); *id.* ¶ 47 (noting that after a warning that a comment on Gaza needed to be germane, a speaker said "I'm getting there" and complied with the germane standard by stating "I would like the Lawrence City Commission and all present to think about how our resources and funds such as tax dollars are allocated in this conflict."); *id.* (noting that the next speaker to discuss Gaza began her comment by stating "this

evidence shows that speakers understood germane to mean "relevant" or "pertinent" to city business, and that they understood "city business" to include asking the City Commission to take some kind of action.[36]  The fact that some speakers may have had different understandings of what "germane" means, as Plaintiff alleges, does not support a finding that speakers lacked a reasonable opportunity to understand what speech was prohibited.  "Condemned to the use of words, we can never expect mathematical certainty from our language."[37]  In fact, the transcripts indicate that both Larsen and Shipley gave speakers warnings when they were speaking on non-germane matters, which provided speakers a reasonable opportunity to understand that their speech was not germane.[38]  Plaintiff fails to plausibly allege that the chilling effect of the germane standard is real and substantial, given that the allegations in his Complaint support a finding that speakers did understand the standard and readily complied with it.

Plaintiff also alleges that the germane standard is void-for-vagueness because it authorizes arbitrary enforcement.  But the presence of discretion alone cannot invalidate a policy on vagueness grounds.[39]  To support his argument that the germane standard is arbitrarily

---

does pertain to city business, so I will proceed with my comment hopefully without interruption"); *id.* (noting that after another speaker discussing Gaza was warned about the germane standard, she complied with the policy by stating: "[S]o the City of Lawrence cannot say that they don't stand with the genocide of the Palestinian people? . . . That's what I'm asking the City of Lawrence to do is to call for a ceasefire.").

[36] *See Gilmore v. Beveridge*, No. 22-2032-HLT, 2022 WL 3139023, at *7 (D. Kan. Aug. 5, 2022) (finding that a germane standard for a school board meeting is not unconstitutionally vague because "[t]he Court struggles to see how a person of ordinary intelligence would not understand that their remarks during a school board meeting should be relevant to the business of the school board.").

[37] *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (citation omitted).

[38] *See* Doc. 1 ¶ 47 (noting that Larsen gave warnings that speech was not germane at least twice, but gave the speakers an opportunity to redirect their comments towards city business); *id.* ¶ 42 (noting that Larsen asked Plaintiff what his comment had to do with the City, then warned Plaintiff several more times that his comment was not germane, before informing him that he needed to stop talking); *id.* ¶ 34 (noting that Shipley asked Plaintiff several times whether the Commission had control over the topics Plaintiff was discussing, then later explicitly warned him his comment was not germane, and warned him several more times that his speech was non-germane before removing him from the meeting).

[39] *See Gilmore*, 2022 WL 3139023, at *8 (noting that the constitutional protection against vague policies "doesn't foreclose discretion altogether, especially where the provision at issue, like here, measures what is allowed and not allowed by objective criteria, e.g. relevant to school board business.  'For a school board to function, it must

enforced, Plaintiff draws a distinction between the two iterations of the standard in the specific comment portion of the meetings versus the general comment portion of the meetings.  As alleged in the Complaint, the resolution provides that general comments "*should* be . . . germane to the business of the Governing Body," and that specific comments "*shall* be germane to the item being discussed."[40]  Plaintiff asserts that the word "should" means that the standard is permissive in the general comment portion of the meetings, and that the word "shall" means that the standard is mandatory in the specific comment portion of the meetings.  Plaintiff then argues that Defendants enforced the "should be germane" standard in the general comment portion of the meetings as if it were mandatory.

Plaintiff fails to explain why the iteration of the germane standard in the specific comment portion is relevant to his claims, which are based on the germane standard in the general comment portion of the meetings.[41]  However, assuming the comparison is relevant, the fact that different words are used does not, standing alone, plausibly allege that the germane standard is enforced differently in the two portions of the meetings.  Nor does it support a finding that ordinary people cannot understand which types of speech are prohibited.  The Court need not accept Plaintiff's legal conclusion that the "shall" and "should" lead to arbitrary enforcement, given that Plaintiff provides no supportive reasoning for his argument.[42]

---

be able to keep its meetings in order, a requirement that necessarily demands that the moderator exercise some discretion over the number of speakers and the time allotted for each to speak.'" (quoting *Lowery v. Jefferson Cnty. Bd. of Ed.*, 586 F.3d 427, 436 (6th Cir. 2009))).

[40] Doc. 1 ¶ 26 (emphasis added).

[41] Based on the distinct subject-matter application, it is not evident that a comparison between the standards sheds any light on Plaintiff's claims.  For example, Plaintiff makes various points about what "the business of the Governing Board" means, which is a phrase that only appears in the general comment germane standard.  Doc. 1 ¶ 37; Doc. 16 at 7.  This further illustrates that Plaintiff's claims are unconnected to the standards governing the specific comment portion of meetings.

[42] For example, Plaintiff does not allege any facts about enforcement of the policy in the specific comment portion of the meetings.  Without any specific argument or facts to support Plaintiff's legal conclusion, the Court declines to assume Plaintiff is correct that the two standards are meaningfully distinct.

Turning to the decorum standard, it is facially clear about which types of speech are prohibited.  A person of ordinary intelligence would understand not to invade anyone's privacy, not to speak overly loudly, not to repeat themselves, and to avoid interfering with the meeting.[43] Though different mayors might disagree about whether a speaker violates the decorum standard, Plaintiff has not plausibly alleged that the decorum standard fails to provide speakers with fair notice of the type of conduct that is prohibited.

In sum, the fact that certain speakers might have different understandings about which matters are germane does not satisfactorily allege that the germane standard is impermissibly vague.  And the assertion that the decorum standard could be enforced differently by different mayors does not plausibly allege that the decorum standard is effectively standardless.  Since Plaintiff has offered facts to support a finding that speakers do understand both standards, Plaintiff's void-for-vagueness challenge is dismissed for failure to state a plausible claim.

### 2. Forum Status Challenge

Plaintiff's alternative facial challenge is based on forum status.  As a threshold matter, it is not clear whether Plaintiff asserts a purely facial challenge based on forum status, or whether Plaintiff also asserts an as-applied challenge based on forum status.[44]  Out of an abundance of caution, the Court considers Plaintiff's forum status challenge both facially and as-applied.[45]

---

[43] *See Grayned*, 408 U.S. at 110–12 (finding that an ordinance forbidding "noisy or diversionary activity that disrupts or is about to disrupt" school is not facially vague because, "[a]lthough the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted." (citation omitted)).

[44] Plaintiff lists the forum status challenge under a header entitled "facial challenge," but proceeds to discuss primarily how the policy was applied to himself.  *See* Doc. 1 ¶¶ 76–91.

[45] The Supreme Court has noted that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).  Instead, the distinction between the two types of claims "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint."  *Id.*  Given that the distinction between the claims goes to the remedy, the Court

Plaintiff asserts that the City Commission meetings are designated public fora, and that the germane and decorum standards do not survive strict scrutiny.  Defendants argue that the City Commission meetings are properly characterized as limited public fora, and thus the two standards need only survive rational basis review.  Since the standard of review depends on the Court's determination of the forum status of the City Commission meetings, the Court first sets out the law, and then considers the parties' arguments.  As explained in more detail below, the Court declines to decide the status of the forum at this early stage in the litigation.  Instead, the Court will follow the Tenth Circuit's lead and consider the standards under strict scrutiny, for the limited purposes of this Order.  The Court finds that Plaintiff plausibly alleges that the germane and decorum standards do not survive strict scrutiny.

### i.     Forum Status Law

To analyze a First Amendment challenge, courts follow three-steps: (1) determining whether the speech in question is protected; (2) identifying the status of the forum "because that determination dictates the extent to which the government can restrict First Amendment activities"; and (3) determining "whether the proffered justifications for prohibiting speech in the forum satisfy the requisite standard of review."[46]  Here, it is undisputed that Plaintiff's speech was protected under the First Amendment, but the parties disagree about the status of the forum, and thus the applicable standard of review.

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property

---

declines to proscribe the limits of Plaintiff's relief at this early stage in the litigation.  Rather, the Court construes Plaintiff's Complaint as raising both a facial and an as-applied challenge based on forum status.

[46] *Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir. 2016) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

at issue."[47]  The Supreme Court has identified three categories of fora: (1) traditionally public fora; (2) designated public fora; and (3) non-public fora.[48]  Traditionally public fora are places which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."[49]  In traditionally public fora, like parks and streets, the government's rights to restrict expressive activity "are sharply circumscribed" and must satisfy strict scrutiny.[50]

Designated public fora are "created when the government 'intentionally open[s] a nontraditional public forum for public discourse.'"[51]  Infringement on speech at a designated public forum is subject to the same strict scrutiny as traditional public fora.[52]  If a property is "generally available to a certain class of speakers," courts have found a designated public forum to exist.[53]  In contrast, a non-public forum is "[p]ublic property which is not by tradition or designation a forum for public communication."[54]  "Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."[55]

---

[47] *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983).

[48] *Id.* at 45–46.

[49] *Id.* at 45 (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).

[50] *Id.*

[51] *Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007) (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998)).

[52] *Id.*

[53] *Forbes*, 523 U.S. at 679.

[54] *Perry*, 460 U.S. at 46.

[55] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) (citing *Perry*, 460 U.S. at 49)).

Relevant here, there is a sub-category of the non-public forum called a "limited public forum," which "arises where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum."[56]  If the government restricts speech in a limited public forum, the restriction "must only be reasonable in light of the purpose served by the forum and be viewpoint-neutral."[57]

The issue here is whether the City Commission meetings qualify as designated public fora or limited public fora.  If the meetings are designated public fora, then the germane and decorum standards must satisfy strict scrutiny.[58]  Therefore, the question would be whether the standards are narrowly tailored to serve a compelling government interest.[59]  If the meetings are limited public fora, then the two standards are valid so long as they are "reasonable in light of the purpose served by the forum and . . . viewpoint-neutral."[60]

The Tenth Circuit has declined to decide whether city council meetings fall under either definition.  Instead, in cases which have squarely raised the issue, the Tenth Circuit has decided that the distinction was irrelevant because the policies in question survived even strict scrutiny.[61]  However, the Tenth Circuit "has offered 'three non-exhaustive factors to consider in determining whether the government has created a designated public forum' instead of a limited public

---

[56] *Shero*, 510 F.3d at 1202 (quoting *Summum v. City of Ogden*, 297 F.3d 995, 1002 n.4 (10th Cir. 2002)).

[57] *Id.* at 1202–03 (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

[58] *Id.* at 1202.

[59] *Id.*

[60] *Id.*

[61] *Id.* at 1203 ("We need not decide whether a city council meeting is a designated public forum or a limited public forum, however, as the time limitation on [the plaintiff's] speech satisfies the more stringent strict scrutiny standard."); *see also Griffin v. Bryant*, 677 F. App'x 458, 462 n.7 (10th Cir. 2017) ("Because we conclude that [the plaintiff] was not restrained from speaking during the Council meeting and that the time limit on his speech during the Public Input portion of the meeting satisfies the strict scrutiny standard . . . we need not decide whether the Council meeting is a designated public forum or a limited public forum.").

forum: (1) the forum's purpose; (2) the extent of the forum's use; and (3) the government's intent in opening the forum to the public."[62]  Courts "will not find that a public forum has been created in the face of clear evidence of contrary intent," or when "the nature of the property is inconsistent with expressive activity."[63]

### ii.    Discussion

Given the open question of law, and the fact-intensive nature of forum analysis,[64] the Court declines to resolve the forum status of the City Commission meetings[65] at this early stage in the litigation.  Rather, the Court assumes without deciding that strict scrutiny applies for the purpose of this Order, and finds that Plaintiff has plausibly alleged that the germane and decorum standards do not survive strict scrutiny.

Plaintiff does not challenge Defendants' compelling government interest in running orderly city council meetings,[66] but rather asserts that the germane and decorum standards are not narrowly tailored.[67]  Plaintiff alleges that the two standards lack ascertainable boundaries,

---

[62] *Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.*, 660 F. App'x 600, 605 (10th Cir. 2016) (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1129 (10th Cir. 2012)).

[63] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 803 (1985).  Defendants argue that *Cornelius* is irrelevant and the *Celebrity Attractions* test is the only applicable law.  Doc. 24 at 2 n.2.  The Court agrees that the three-factor test from *Celebrity Attractions* is the applicable test.  But *Celebrity Attractions* explicitly requires courts to consider the government's intent in opening the forum to the public, as well as the use of the forum in practice.  *See Celebrity Attractions*, 660 F. App'x at 605 (quotation omitted).  Thus, *Cornelius* is relevant in determining whether, when the City Commission opened the meetings to public expression, it intended to create a limited public forum (which is a type of non-public forum) or a designated public forum.

[64] *See Verlo v. Martinez*, 820 F.3d 1113, 1144 (10th Cir. 2016) ("[F]orum status is an inherently factual inquiry about the government's intent and the surrounding circumstances that requires the district court to make detailed factual findings." (citing *Stewart v. D.C. Armory Bd.*, 863 F.2d 1013, 1018 (D.C. Cir. 1988) ("[I]dentifying the government's intent . . . raises inherently factual issues that cannot be resolved on a Rule 12(b)(6) motion."))).

[65] The parties do not devote any argument to *how* to define the forum in question—i.e., whether the relevant forum is the entirety of the City Commission meetings, or just the general comment portions of the meetings.  The Court cannot classify the forum without first defining the forum, and the Court declines to define the forum without substantive argument from the parties.

[66] The Tenth Circuit held that the promotion of "orderly and efficient [city council] meetings" is a significant government interest in *Shero*, 510 F.3d at 1203.

[67] The parties do not engage in much discussion about whether the germane and decorum standards are content-based or content-neutral.  The distinction is relevant because the type of narrow tailoring required differs

and have been inconsistently applied to him and other speakers. For example, Plaintiff alleges that he occasionally has been allowed to speak about topics that, at other meetings, have been declared non-germane. Plaintiff also asserts that he was removed from the meetings for behavior that was not disruptive of the business of the City Commission. Plaintiff blames the unbridled discretion of the Mayors for the inconsistent enforcement of the standards, and asserts that the standards cannot be narrowly tailored with such arbitrary enforcement.

Defendants assert that both times Plaintiff was prevented from speaking and removed from meetings, Plaintiff had violated the germane and decorum standards. For example, Defendants note that at the October 11, 2022 meeting, Plaintiff called Shipley a Nazi numerous times and refused to comply with her direction to speak about germane matters. Defendants also allege that at the July 18, 2023 meeting, Plaintiff's speech was irrelevant and disruptive.

Plaintiff need not demonstrate that he is likely to succeed on the merits—he need only allege sufficient factual matter to demonstrate that he should be allowed to present evidence to support his claims.[68] Plaintiff has plainly satisfied this burden. Plaintiff's facts, if assumed true and with all reasonable inferences drawn in his favor, plausibly allege that the germane and decorum standards are not narrowly tailored because they burden substantially more speech than is necessary. Thus, Plaintiff has stated a plausible as-applied claim for relief based on forum status. And though Plaintiff's facts rely primarily on the application of the policy, the Court

---

depending on whether the policy is content-based or content-neutral. *See Verlo*, 820 F.3d at 1134 ("For the purposes of a content-neutral regulation, 'the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation, and does not burden substantially more speech than is necessary to further the government's legitimate interests.' In contrast, a content-based restriction is narrowly tailored only if it is the least restrictive means of achieving the government's compelling objective." (quoting *Wells v. City & Cnty. of Denver*, 257 F.3d 1132, 1148 (10th Cir. 2001)) (citations omitted)). The Court need not resolve whether the germane and decorum standards are content-based or content-neutral at this time, because Plaintiff has plausibly alleged that they fail both types of narrow tailoring.

[68] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

concludes that Plaintiff has also plausibly stated a facial challenge because Plaintiff sufficiently alleges that the policy writ large is not narrowly tailored.  Therefore, Defendants' motion to dismiss Plaintiff's facial and as-applied challenges based on forum status is denied.

### 3.        As-Applied Challenge—Content- and Viewpoint-Discrimination[69]

Plaintiff argues that, even if the germane standard is facially constitutional,[70] Defendants have selectively enforced the policy against him because of the ideas he expressed in his public comments.  Defendants argue that they did not discriminate against the content or viewpoint of Plaintiff's speech.  The Court agrees with Defendants, and finds that Plaintiff fails to plausibly allege that Defendants discriminated against the content or viewpoint of his speech.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."[71]  Content- and viewpoint-discrimination are distinct concepts because "[w]hen the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. . . . Viewpoint discrimination is thus an egregious form of content discrimination."[72]  In support of his argument that Defendants discriminated against the content and viewpoint of his speech, Plaintiff asserts that he is the most infamous antagonistic speaker.  Plaintiff points to the fact that other speakers have spoken about the same topics he was removed for trying to speak about,

---

[69] Plaintiff labels this claim only as an "As Applied Challenge" in the heading of his second cause of action, but from the substance of his allegations, it is clear that he is alleging a content- and viewpoint-discrimination challenge.  Doc. 1 ¶¶ 92–97.

[70] Plaintiff does not mention the decorum standard in the as-applied section of his claims.  Doc. 1 ¶¶ 92–97. Thus, the Court considers only the germane standard in its analysis of Plaintiff's as-applied challenge based on content- and viewpoint-discrimination.

[71] *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) (citation omitted).

[72] *Id.* at 829 (citations omitted).

without interruption or removal.  However, this argument undercuts the plausibility of Plaintiff's claim.

If Defendants were discriminating against the content of Plaintiff's speech, then it would support his claim if he showed that they also prohibited others from speaking on the same topics.[73]  But Plaintiff alleges facts that support the opposite conclusion.[74]  And if Defendants were discriminating against Plaintiff's viewpoint, then it would support his claim if he alleged that they also forbade others from expressing that same viewpoint.[75]  Again, Plaintiff alleges facts that work against his claim.[76]  In fact, despite the wide variety of topics and viewpoints expressed in the meetings, the only examples of removal Plaintiff alleges in the Complaint are the two times he was removed.  In sum, these facts could support an argument that Plaintiff was treated differently because of who he is, but they do not plausibly allege that Plaintiff was treated differently because of what he said.

Since Plaintiff fails to allege any facts that support his content- and viewpoint-discrimination claim, and actually alleges facts undercutting his claim, the Court finds that Plaintiff has failed to plausibly allege that Defendants are discriminating against the content or

---

[73] *See id.* at 828–29 ("[T]he government offends the First Amendment when it imposes . . . burdens on certain speakers based on the content of their expression.").

[74] *See* Doc. 1 ¶¶ 32, 39 (noting that another speaker, Nicole, spoke about comparisons between Presidents Trump and Biden without interruption or removal on two occasions); *id.* ¶¶ 35–36 (explaining that inflation, rent, taxes, and gas have been brought up hundreds of times at City Commission meetings, yet only Plaintiff was told that his discussion of the same topics was non-germane); *id.* ¶ 44 (noting that the topic of masks was discussed uninterrupted hundreds of times at former meetings, but Plaintiff was told that his speech about masks was non-germane); *id.* ¶ 48 (explaining that Plaintiff himself was permitted to speak about how the cost of living is higher now under President Biden than it was under President Trump, though he had previously been removed for discussing the same topic).

[75] *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) ("[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." (citations omitted)).

[76] *See* Doc. 1 ¶ 32 (noting that "[a]nother speaker, Nicole, spoke on the dangers of following liberal politicians and criticized President Biden" without interruption or removal); *id.* ¶ 39 (listing another comment from Nicole, expressing a conservative viewpoint and accusing of the Commissioners of being liberal "buzz kills," without interruption or removal).

viewpoint of his speech.  Defendants' motion to dismiss Plaintiff's as-applied claim based on content- and viewpoint-discrimination is granted.

### 4.    Retaliation Claim

"To state a claim for First Amendment retaliation, a plaintiff must allege (1) that [he] was engaged in constitutionally protected activity, (2) the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) the defendant's actions were substantially motivated as a response to [the plaintiff's] protected conduct."[77]  "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, [the] standard for evaluating that chilling effect on speech is objective, rather than subjective . . . a trivial or de minimis injury will not support a retaliatory prosecution claim."[78]

It is undisputed that Plaintiff alleges facts to support the first and third elements. However, Defendants argue that Plaintiff does not sufficiently allege facts to satisfy the second element.  Specifically, Defendants assert that preventing Plaintiff from speaking, and removing him from meetings, would not chill an ordinary person from returning to speak at future meetings.  In fact, Defendants argue that Plaintiff himself was not chilled from future speech at meetings, because Plaintiff returned and spoke at meetings after both instances of removal.[79]

The Court finds that Plaintiff has stated a plausible claim for retaliation under the First Amendment.  Though Plaintiff did return to the meetings after being removed, the Court's

---

[77] *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1172 (10th Cir. 2021) (citing *McBeth v. Himes*, 598 F.3d 708, 727 (10th Cir. 2010)).

[78] *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (quoting *Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir. 2004) (first alteration in original)).

[79] According to the Complaint, after Plaintiff was removed from the October 11, 2022 meeting, he returned and spoke at the October 18, 2022 meeting. Doc. 1 ¶ 41.  And after Plaintiff was removed from the July 18, 2023 meeting, he returned and spoke at the November 7, 2023 meeting.  *Id.* ¶ 48.

analysis of the injury's chilling effect must be objective, rather than subjective.[80]  "[T]he objective standard permits a plaintiff who perseveres despite governmental interference to bring suit" if his injury was sufficiently severe.[81]  Plaintiff alleges that he was interrupted during his public comment, and eventually removed from the meetings by law enforcement officers. Despite Defendants' argument to the contrary, under an objective standard, public removal from a meeting could be embarrassing and could easily chill a person of ordinary firmness from returning to speak.  In fact, the specter of law enforcement could chill speech not only because speakers fear removal, but also because they fear arrest.

At this stage of the litigation, Plaintiff need not conclusively prove that the removals would chill speech.  Plaintiff need only allege sufficient facts to demonstrate entitlement to present evidence on his claim.[82]  Plaintiff has done so.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's retaliation claim.

### 5.      Content- and Viewpoint-Discrimination—Handclapping

Plaintiff alleges that Defendants discriminated against the content of his speech, or his viewpoint, by preventing him from clapping after other speakers' comments.  However, Plaintiff does not allege any specific facts to support his claim.  In fact, Plaintiff does not even mention clapping in his factual allegations.  The first time Plaintiff mentions clapping is in the argument section of his Complaint where he asserts each of his claims.[83]  There, Plaintiff matter-of-factly states that Defendants prevented him from clapping based on his viewpoint—but does not allege

---

[80] *See Shero*, 510 F.3d at 1204 (finding that the plaintiff's alleged injuries—being prevented from speaking after the three-minute time limit, and being denied a council packet—were objectively de minimis injuries).

[81] *Eaton*, 379 F.3d at 954–55.

[82] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[83] Doc. 1 ¶ 110.

a date this occurred, who prevented him from clapping, what reason they offered for preventing

him from clapping, or any context whatsoever.  Given the complete lack of factual allegations,

Plaintiff's handclapping claim fails to state a plausible claim for relief.  Therefore, the Court

grants Defendants' motion to dismiss Plaintiff's content- and viewpoint-discrimination claim

based on the alleged prohibition of clapping.

### 6.     Compelled Speech—Handclapping

Plaintiff also asserts that Defendants' prohibition on clapping was a form of compelled

speech.  Plaintiff alleges that clapping is a communicative expression of approval, and that by

prohibiting the expression of approval, Defendants compelled him to express disapproval.  The

Court finds that Plaintiff fails to state a plausible claim that Defendants compelled his speech

when they allegedly prevented him from clapping.  As noted above, without *any* factual matter to

support his handclapping claims, Plaintiff cannot satisfy Fed. R. Civ. P. 12(b)(6).  Therefore, the

Court grants Defendants' motion to dismiss Plaintiff's compelled speech claim for failure to state

a claim.

### 7.     Equal Protection Challenge—Disparate Treatment

Plaintiff asserts that his Fourteenth Amendment right to equal protection was violated

when Defendants discriminated against him because of his speech.  Plaintiff asserts that he is a

class of one, who was treated less favorably than similarly situated people.  The Court need not

engage in an analysis of this claim because Defendants fail to address the claim in their motion

to dismiss.  Though Defendants assert in their motion that they move to dismiss "all" of

Plaintiff's claims, they did not offer specific argument in favor of dismissal of this claim.

Plaintiff raised this oversight in his response to Defendants' motion, but Defendants again failed

to mention the equal protection claim in their reply.  The Court therefore declines to engage in a plausibility analysis of the equal protection claim.

### C.    Qualified Immunity—Individual Defendants

As described above, the Court found that Plaintiff failed to state a plausible claim for his individual capacity claims based on content- and viewpoint-discrimination and compelled speech.  But the Court found that Plaintiff alleged the following plausible claims for relief against Larsen and Shipley in their individual capacities: (1) an as-applied claim based on forum status; (2) a First Amendment retaliation claim; and (3) an equal protection claim.

Defendants assert that Larsen and Shipley are immune from suit because they are entitled to qualified immunity.  Defendants argue that Larsen and Shipley did not violate Plaintiff's constitutional rights, and that even if they did, those rights were not clearly established under Tenth Circuit precedent.  Plaintiff asserts that both Larsen and Shipley violated his clearly established constitutional rights.  Plaintiff also argues that, even if Larsen and Shipley are entitled to qualified immunity, they would be shielded only from damages claims—not his claims for injunctive and declaratory relief.

Plaintiff is correct that qualified immunity shields government officials from damages liability alone.[84]  Since Plaintiff brings claims for equitable relief against all Defendants, in addition to his damages claims, the Court considers only whether Larsen and Shipley are entitled to qualified immunity on Plaintiff's damages claims.  Below, the Court finds that neither Defendant is entitled to qualified immunity at this stage of the litigation.  Therefore, Defendants' motion to dismiss Plaintiff's damages claims against Larsen and Shipley is denied.

---

[84] *See Cannon v. City & Cnty. of Denver*, 998 F.2d 867, 876 (10th Cir. 1993); *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1207 n.2 (10th Cir. 1988); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998).

Suing a state official in her individual capacity opens the door for the official to assert the defense of qualified immunity, as Larsen and Shipley assert here.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions"[85] and protects "all but the plainly incompetent or those who knowingly violate the law."[86]  "Once the qualified immunity defense is asserted, the plaintiff 'bears a heavy two-part burden' to show, first, 'the defendant's actions violated a constitutional or statutory right,' and, second, that the right was 'clearly established at the time of the conduct at issue.'"[87] Defendants are responsible only for their own conduct.[88]

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity."[89] However, when a defendant asserts a qualified immunity defense in response to a Rule 12(b)(6) motion, the defendant is subject "'to a more challenging standard of review than would apply on summary judgment.'  Specifically, the court analyzes 'the defendant's conduct as alleged in the complaint.'"[90]

The Court finds that Larsen and Shipley have not demonstrated that they are entitled to qualified immunity on the claims that survived the Court's plausibility analysis.  Defendants do not separately analyze each of Plaintiff's claims.  Rather, Defendants broadly assert that Larsen

---

[85] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[86] *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

[87] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)).

[88] *See id.* ("In the context of a § 1983 action against multiple individual governmental actors, it is particularly important . . . that the complaint make clear exactly who is alleged to have done what . . . ." (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013))).

[89] *Id.*

[90] *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (first quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004); and then quoting *Thomas*, 765 F.3d at 1194 (emphasis omitted)).

and Shipley are entitled to qualified immunity, writ large.  Defendants also fail to address Plaintiff's specific allegations against Larsen and Shipley—Plaintiff accuses Shipley of violating his rights at the October 11, 2022 meeting, and Larsen of violating his rights at the July 18, 2023 meeting.  Because the Court must conduct individualized analyses for each Defendant to determine whether either of them is entitled to qualified immunity, Defendants' failure to separately address the claims against Larsen and Shipley is dispositive.  Defendants cannot satisfy the stringent standard for qualified immunity at this stage without specific, substantive argument as to each Defendant and each claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 12) is **granted in part** and **denied in part**.  The following claims are dismissed for failure to state a claim: Plaintiff's facial vagueness claim, as-applied content- and viewpoint-discrimination claim, viewpoint-discrimination claim based on handclapping, and compelled speech claim.  Defendants' motion is **denied** as to Plaintiff's facial and as-applied forum status claims, retaliation claim, and equal protection claim.  Defendants' motion to dismiss Defendant City Commission for lack of subject-matter jurisdiction is **denied**.  Defendants' motion to dismiss Larsen and Shipley on the basis of qualified immunity is **denied**.

**IT IS SO ORDERED.**

Dated: April 1, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE