**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JUSTIN SPIEHS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:23-CV-4107-JAR-BGS** |
| **LISA LARSEN, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff Justin Spiehs brings this action under 42 U.S.C. § 1983 against Defendants Lisa Larsen, Courtney Shipley, and the Board of City Commissioners of Lawrence, Kansas,[1] asserting that his free speech and equal protection rights were violated at two Lawrence City Commission meetings.  This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. 11), seeking to prevent Defendants from enforcing their speech policy at City Commission meetings.  The Court held an evidentiary hearing on February 13, 2024, and the parties filed supplemental briefs after the hearing.  The Court has considered the pre-hearing briefing, the evidence presented at the hearing, and the post-hearing briefing, and is now prepared to rule.  For the reasons explained more fully below, the Court denies Plaintiff's motion.

I.      **Facts**

Defendant Lawrence City Commission ("City Commission") meetings are open to the public and presided over by the Lawrence City Mayor.  Members of the public may offer oral or written comment at certain times during City Commission meetings.  For example, the presiding

---

[1] Plaintiff brought suit against several additional Defendants, all of whom have either been terminated or severed from this action.  *See* Docs. 25, 38.

officer may invite public comment on a specific item being considered by the City Commission, or invite general public comment on items not scheduled for discussion.  The public is invited to offer these two types of public comments (either specific or general) at different portions of the meetings.  But for both types of public comments, they are limited to three minutes.

On October 4, 2022, the City Commission adopted Resolution No. 7451 which established public speaking rules and procedures.  This resolution added several new provisions, including: (1) a provision governing the general public comment portion of the meeting, providing that comments "should be limited to issues and items germane to the business of the Governing Body" ("germane standard"); and (2) a decorum provision updating the rules to prohibit "fighting words, slander, speeches invasive of the privacy of individuals, unreasonably loud or repetitious speech," and disruptive speech that interferes with/substantially interrupts the Board's ability to conduct City business ("decorum standard").[2]  It is the Mayor's responsibility to monitor public comments.

At the October 11, 2022 City Commission meeting, Chris Flowers, a member of the public, offered a strategy for evading the germane standard during his general public comment.  Flowers stated that members of the public could simply ask that their speech be made a proclamation—which he described as unlimited in subject-matter—to avoid the germane standard.

Plaintiff was the next speaker at the October 11 meeting.  He began his comment by introducing himself as a Republican candidate for Douglas County Commissioner.  Plaintiff proceeded to offer several statistics comparing issues such as inflation, gas prices, and mortgage

---

[2] Ex. 16.  The Court notes that Plaintiff quoted from the wrong resolution in his Complaint.  In Plaintiff's Complaint, Plaintiff purports to quote from Resolution No. 7451, but actually quotes from Resolution No. 7496, the policy that replaced No. 7451 on August 1, 2023.  Doc. 1 ¶ 26; Ex. 18.  Since the resolution that was in effect during the relevant events in this suit was Resolution No. 7451, the Court considers that resolution in this Order.

rates, from the last day President Trump was in office and under President Biden.  Defendant Shipley, then-Mayor, interrupted Plaintiff and asked him, "is there some way that we have control, is there some way that this city commission has control over inflation?"[3]  Plaintiff ignored Shipley's question and continued offering statistics.  Shipley interrupted Plaintiff again about whether the City had control over the subject-matter of his statistics, and Plaintiff talked over her, stating that he wanted to make a proclamation about how asinine Democrats are, and calling her a Nazi.  Plaintiff continued speaking, and Shipley interrupted Plaintiff several more times to warn him about the germane standard.  Each time, Plaintiff refused to modify his speech or stop speaking.

Eventually, Plaintiff said that he was "getting around to the business of the City," and Shipley allowed him to proceed.[4]  But Plaintiff immediately started to discuss his campaign again.  When Shipley interrupted Plaintiff to tell him his speech was non-germane, Plaintiff raised his voice and called her a Nazi again.  The two proceeded to talk over each other, with Shipley warning Plaintiff about the germane standard, and Plaintiff insisting that he was speaking on germane matters.  Shipley eventually paused the meeting, and invited Plaintiff to leave.  Plaintiff proceeded to loudly assert that he was being discriminated against because he was white, called Shipley a Nazi several more times, and used profanity.  Eventually, Shipley called for a recess of the meeting, and a law enforcement officer removed Plaintiff from the building.  Shipley testified that she removed Plaintiff for violating both the germane and decorum standards.

---

[3] Ex. 15 at 25:56.

[4] *Id.* at 26:55.

Another speaker, "Joe," spoke after Plaintiff at the October 11 meeting.[5]  Joe began his comment by decrying what had just occurred with Plaintiff.  Joe then began to speak about the border, at which point Shipley interrupted him by telling him that the City had no control over what happens at any border.  Joe responded by redirecting his comments to the issue of illegal immigration in Lawrence, at which point Shipley allowed him to speak uninterrupted.  Joe then spoke about the science behind masking, and Shipley interrupted him by telling him that the City had no control over masking.  Joe appeared to get upset at this point, but then calmly started questioning why the City Commissioners could not simply listen to their constituents.  When Joe's time expired, he kept talking, over Shipley's objections.  Joe eventually called Shipley a Nazi for stealing his time.  At that point, Shipley asked if he was ready to be removed, but Joe walked away from the podium to sit down.

On July 18, 2023, Plaintiff spoke during the general public comment portion of the City Commission meeting.  At this time, Defendant Larsen was the acting Mayor.  Larsen inadvertently misgendered the speaker immediately preceding Plaintiff, but corrected herself and apologized.  When Plaintiff began his comment, he noted that Larsen had misgendered the former speaker, and questioned whether that error would be considered a hate crime under the discrimination act the Commission was considering.  Plaintiff then stated "[t]alk about, talk about baseless conspiracy theories—men having babies, men having periods.  Come on, there ain't (sic) a bigger conspiracy theory than that."[6]  City Commissioner Amber Sellers interrupted Plaintiff during this comment about conspiracy theories and asked for a point of order, but

---

[5] *See id.* at 45:48–49:22.

[6] Ex. 23 at 4:05.

Larsen did not act upon the request.  Plaintiff continued to speak, stating "so save your conspiracy theory bullshit for somebody that gives a shit."[7]

Plaintiff then introduced himself, and started to discuss a protest he started in July 2021 against child mask mandates in the Lawrence Unified School District 497 ("USD 497").  Sellers continued to interrupt Plaintiff several more times by asking for a point of order.  Larsen then interrupted Plaintiff and asked him, "Sir, what's it do with the city?"[8]  At this time, another speaker, Michael Eravi, interrupted Larsen; Larsen warned Eravi that he was out of order and subject to being removed if he spoke out-of-turn again.  Plaintiff continued to speak about his protest, but was interrupted several more times by Sellers asking for a point of order.  Larsen also interrupted Plaintiff to warn him that he was not speaking about something germane to the City, and asked Sellers to be quiet.  Plaintiff continued to try to speak about the City's mask mandate, but Larsen told Plaintiff "Sir, you're done,"[9] and warned him again that he was not speaking about germane items.  When Plaintiff continued to speak, and questioned why he was being interrupted, Larsen paused the meeting and asked a law enforcement officer to remove Plaintiff from the building.  Larsen testified that she removed Plaintiff for violating both the germane and decorum standards.

## II.    Standards

### A.       Preliminary Injunctions

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'"[10]  Plaintiff must establish four

---

[7] *Id.* at 4:16.

[8] *Id.* at 4:39.

[9] *Id.* at 5:28.

[10] *N.M. Dep't of Game & Fish v. U.S. Dep't of Interior*, 854 F.3d 1236, 1245–46 (10th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (alteration in original) (citation omitted)).

elements to warrant a preliminary injunction: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) "that an injunction is in the public interest."[11]  This standard "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction."[12]  There is no longer a relaxed likelihood of success on the merits standard available to movants where the other three elements are demonstrated.[13]

"[I]n First Amendment cases, the likelihood of success on the merits will often be the determinative factor."[14]  Irreparable harm is presumed when movants demonstrate a likelihood of success on the merits for a First Amendment claim.[15]  The balance of the equities factor similarly depends on the Court's resolution of the likelihood of success on the merits.[16]  And finally, the public interest factor also stands or falls with the resolution of the likelihood of success on the merits.[17]

Here, Plaintiff focuses his argument on the likelihood of success on the merits, and relies on the presumption that the remaining factors will also be satisfied if he shows that he is likely to succeed on the merits.  Thus, the Court declines to engage in independent analyses of the

---

[11] *Ramirez v. Collier*, 595 U.S. 411, 421 (2022) (quoting *Winter*, 555 U.S. at 20).

[12] *Winter*, 555 U.S. at 22 (emphasis and citations omitted).

[13] *N.M. Dep't of Game & Fish*, 854 F.3d at 1246–47.

[14] *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (quoting *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012), cert. denied, 133 S.Ct. 651 (2012)).

[15] *Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.*, 660 F. App'x 600, 603 (10th Cir. 2016) ("[T]here is a presumption of irreparable harm for the loss of First Amendment freedoms." (citations omitted)); *Hobby Lobby*, 723 F.3d at 1145 ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003))).

[16] *Hobby Lobby*, 723 F.3d at 1145 ("[W]hen [a] law . . . is likely unconstitutional, the[ ] interests [of those the government represents, such as voters] do not outweigh [a plaintiff's interest] in having [its] constitutional rights protected." (alterations in original) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1131–32 (10th Cir. 2012))).

[17] *Id.* (quoting *Awad*, 630 F.3d at 1132 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.")).

irreparable harm, balance of the equities, or public interest factors below.  Instead, the Court focuses its analysis on whether Plaintiff's claims are likely to succeed on the merits.  As described below, Plaintiff fails to satisfy this standard and the Court denies his motion for preliminary injunction.

### B.    Disfavored Preliminary Injunctions

Certain types of preliminary injunctions are disfavored and require the movant to satisfy a heightened standard.[18]  They are "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."[19]  When a preliminary injunction is a disfavored one, the movant "must make a strong showing both with regard to the likelihood of success on the merits and with regards to the balance of the harms."[20]  The Court finds that this is not a disfavored preliminary injunction.

Plaintiff seeks preliminary injunctive relief to prevent Defendants from: (1) removing Plaintiff, or any public speaker, because of a violation of the speech policy; and (2) enforcing the germane standard or any prohibition on speech.  Defendants assert that Plaintiff's requested injunction should be disfavored because it would alter the status quo by forcing them to refrain from enforcing their speech policy.  Indeed, some courts have disfavored preliminary injunctions

---

[18] These types of preliminary injunctions are disfavored "[b]ecause the limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'"  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

[19] *O Cento Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc) (per curiam) (affirming the three types of disfavored injunctions identified in *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1097, 1098 (10th Cir. 1991), but overruling the portion of *SCFC ILC, Inc.* which held that disfavored preliminary injunctions must demonstrate a right to relief "heavily and compellingly."), *aff'd*, 126 S. Ct. 1211 (2006).

[20] *Id.* at 976.

that seek to enjoin enforcement of an existing policy.[21]  However, the Tenth Circuit defines "status quo" not by the position of the parties at the hearing, but rather as the "last peaceable uncontested status existing between the parties before the dispute developed."[22]  Where an injunction challenges a policy or action that has taken place, it is not necessarily disfavored based on the status quo factor, because the status quo is the position of the parties *before* the challenged action or policy occurred.[23]

Here, Defendants adopted the germane and decorum standards on October 4, 2022. Plaintiff first claims to have suffered an injury soon after, on October 11, 2022.  Thus, the status quo is the position of the parties before the City Commission adopted the new standard.  In other words, Plaintiff's preliminary injunction seeks a return to the status quo, not a departure. Therefore, the Court will analyze Plaintiff's motion for preliminary injunction under the normal preliminary injunction standard.

## III. Discussion

Plaintiff moves for a preliminary injunction on the basis that he is likely to succeed on the merits of Counts 1 and 2 of the Complaint.  Counts 1 and 2 raise four distinct claims: (1) a facial challenge to the germane and decorum standards based on vagueness; (2) a facial challenge to

---

[21] *See Cole v. Goossen*, 402 F. Supp. 3d 992, 1012 (D. Kan. 2019) (disfavoring a preliminary injunction that sought to "stop enforcement of certain regulations and policies currently in place."); *Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trs.*, No. 23-CV-069, 2023 WL 4297186, at *5 (D. Wyo. June 30, 2023) (disfavoring a preliminary injunction that sought to enjoin enforcement of a recently adopted policy).

[22] *Schrier*, 427 F.3d at 1260 (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948, at 136 (2d ed. 1995)).

[23] *See Free the Nipple–Fort Collins v. City of Fort Collins,* 916 F.3d 792, 798 n.3 (10th Cir. 2019) (noting that the district court's finding that the injunction sought to alter the status quo by enjoining enforcement of an existing policy was erroneous, because the last peaceable uncontested status "would be the status existing *before* [the defendant] enacted the challenged public-nudity ordinance." (emphasis in original)); *Schrier*, 427 F.3d at 1260 (finding it erroneous for a district court to disfavor an injunction as altering the status quo where the plaintiff sought reinstatement to his previously held position, by identifying the status quo as the time *before* the plaintiff was removed from his position, years earlier).

both standards based on forum status; (3) an as-applied challenge to both standards based on forum status; and (4) an as-applied content- and viewpoint-discrimination challenge to both standards.[24]  On April 1, 2024, the Court dismissed the facial vagueness claim and the content- and viewpoint-discrimination claim for failure to state a claim.[25]  Thus, the Court considers only whether Plaintiff has demonstrated that he is likely to succeed on the claims based on forum status.  As explained in more detail below, the Court denies Plaintiff's motion because he fails to demonstrate that his remaining claims are likely to succeed on the merits.

### A.      Governing Law

To analyze a First Amendment challenge, courts follow three-steps: (1) determining whether the speech in question is protected; (2) identifying the status of the forum "because that determination dictates the extent to which the government can restrict First Amendment activities"; and (3) determining "whether the proffered justifications for prohibiting speech in the forum satisfy the requisite standard of review."[26]  Here, it is undisputed that Plaintiff's speech was protected under the First Amendment, but the parties disagree about the status of the forum, and thus the applicable standard of review.  Plaintiff asserts that the City Commission meetings are designated public fora, and that the germane and decorum standards do not survive strict scrutiny.  Defendants argue that the City Commission meetings are properly characterized as limited public fora, and thus the two standards need only survive rational basis review.

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property

---

[24] *See* Doc. 45 at 9–10, 14–15.

[25] *Id.* at 14, 22.  The Court also found that Plaintiff's Complaint did not raise an overbreadth claim.  *See id.* at 10–11 n.31.  Thus, Plaintiff cannot seek injunctive relief based on an overbreadth challenge.

[26] *Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir. 2016) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

at issue."[27]  The Supreme Court has identified three categories of fora: (1) traditionally public fora; (2) designated public fora; and (3) non-public fora.[28]  Traditionally public fora are places which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."[29]  In traditionally public fora, like parks and streets, the government's rights to restrict expressive activity "are sharply circumscribed" and must satisfy strict scrutiny.[30]

Designated public fora are "created when the government 'intentionally open[s] a nontraditional public forum for public discourse.'"[31]  Infringement on speech at a designated public forum is subject to the same strict scrutiny as traditional public fora.[32]  If a property is "generally available to a certain class of speakers," courts have found a designated public forum to exist.[33]  In contrast, a non-public forum is "[p]ublic property which is not by tradition or designation a forum for public communication."[34]  "Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."[35]

---

[27] *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983).

[28] *Id.* at 45–46.

[29] *Id.* at 45 (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).

[30] *Id.*

[31] *Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007) (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998)).

[32] *Id.*

[33] *Forbes*, 523 U.S. at 679.

[34] *Perry*, 460 U.S. at 46.

[35] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) (citing *Perry*, 460 U.S. at 49)).

Relevant here, there is a sub-category of the non-public forum called a "limited public forum," which "arises where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum."[36]  If the government restricts speech in a limited public forum, the restriction "must only be reasonable in light of the purpose served by the forum and be viewpoint-neutral."[37]

The Tenth Circuit has declined to decide whether city council meetings constitute designated public fora or limited public fora.  Instead, in cases that squarely raised the issue, the Tenth Circuit decided that the distinction was irrelevant because the policies in question survived even strict scrutiny.[38]  Here too, for the purposes this Order, the Court considers the germane and decorum standards under strict scrutiny.  As described below, even under strict scrutiny, Plaintiff fails to show that his forum status claims are likely to succeed on the merits.

**B.     Facial Challenge**

Plaintiff asserts that the germane and decorum standards are facially unconstitutional. Defendants bear the burden of proving the standards' constitutionality because, "though duly enacted laws are ordinarily presumed constitutional, when a law infringes on the exercise of First Amendment rights, its proponent bears the burden of establishing its constitutionality."[39]  In analyzing a facial challenge, courts should "apply the appropriate constitutional test to determine

---

[36] *Shero*, 510 F.3d at 1202 (quoting *Summum v. City of Ogden*, 297 F.3d 995, 1002 n.4 (10th Cir. 2002)).

[37] *Id.* at 1202–03 (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

[38] *Id.* at 1203 ("We need not decide whether a city council meeting is a designated public forum or a limited public forum, however, as the time limitation on [the plaintiff's] speech satisfies the more stringent strict scrutiny standard."); *see also Griffin v. Bryant*, 677 F. App'x 458, 462 n.7 (10th Cir. 2017) ("Because we conclude that [the plaintiff] was not restrained from speaking during the Council meeting and that the time limit on his speech during the Public Input portion of the meeting satisfies the strict scrutiny standard . . . we need not decide whether the Council meeting is a designated public forum or a limited public forum.").

[39] *ACORN v. Mun. of Golden*, 744 F.2d 739, 746 (10th Cir. 1984).

whether the challenged restriction is invalid on its face (and thus incapable of any valid application)."[40]  Under forum analysis, discussed above, the Court assumes without deciding that the general comment portion[41] of the City Commission meetings constitutes a designated public forum.  Thus, Defendants must show that the germane and decorum standards satisfy strict scrutiny.

To survive strict scrutiny, the germane and decorum standards "must be narrowly tailored to advance a significant government interest."[42]  Plaintiff does not, and could not, challenge Defendants' significant interest in running orderly city council meetings.[43]  Instead, Plaintiff asserts that the two standards are not narrowly tailored because they are not the least-restrictive means of achieving the government's interest in orderly and efficient City Commission meetings.

However, the type of narrow tailoring required under strict scrutiny differs depending on whether the challenged restrictions on speech are content-based or content-neutral:

> For the purposes of a content-neutral regulation, "the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation, and does not burden substantially more speech than is necessary to further the government's legitimate interests."  In contrast, a content-based restriction is narrowly tailored only if it is the least restrictive means of achieving the government's compelling objective.[44]

---

[40] *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012).

[41] The parties refer to the relevant forum as either the general comment portion of the meetings, or the City Commission meetings as a whole.  Plaintiff asserts that there were multiple different fora within each meeting; Defendants do not respond to this argument, but simply argue in the alternative that the meetings, or the general comment portions, both constitute limited public fora.  The distinction is relevant for determining the status of the forum.  But since the Court assumes without deciding that strict scrutiny applies for the purposes of this Order, the distinction is of no import to the preliminary injunction analysis.

[42] *Verlo v. Martinez*, 820 F.3d 1113, 1131 (10th Cir. 2016) (explaining the strict scrutiny standard for content-neutral restrictions on speech in a traditional or designated public forum).

[43] Indeed, the Tenth Circuit held that the promotion of "orderly and efficient [city council] meetings" is a significant government interest in *Shero*, 510 F.3d at 1203.  Even under the compelling government interest standard, it is apparent that the City's interest in running orderly and effective City Commission meetings is compelling.

[44] *Verlo*, 820 F.3d at 1134 (quoting *Wells v. City & Cnty. of Denver*, 257 F.3d 1132, 1148 (10th Cir. 2001)).

Thus, before considering whether the germane and decorum standards are narrowly tailored, the Court must determine whether they are content-based or content-neutral. Plaintiff quotes the content-based "least-restrictive means" test in his briefing, without providing any argument for why the two standards are content-based. Defendants assert that both standards are content-neutral. The Court agrees with Defendants.

"The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."[45] Courts look to the government's purpose in adopting the regulation, because "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."[46] In other words, a regulation of speech is "content neutral so long as it is '*justified* without reference to the content of the regulated speech.'"[47] Here, the germane standard does not facially favor any message over another, and it is justified by the City's significant interest in running orderly and efficient meetings. Irrelevant speech is prohibited not because it expresses a particular message, but because it would frustrate the purpose of the meetings.

The same rationale applies to the decorum standard, which prohibits disruptive speech, unreasonably loud or repetitive speech, speech invasive of privacy, fighting words, and slander. The prohibition of disruptive, loud, and repetitive speech does not favor any message or viewpoint, but simply dictates *how* messages, regardless of their content, may be expressed. The prohibition of fighting words, slander, and speech invasive of privacy merely sets forth certain

---

[45] *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 295 (1984)).

[46] *Id.* (citation omitted).

[47] *Id.* at 791–92 (quoting *Clark*, 468 U.S. at 293) (citations omitted).

categories of speech that the City deemed overly disruptive of meetings—regardless of the content or viewpoint of the speech. These restrictions on speech undoubtedly serve the City's purpose of conducting orderly and efficient meetings, and may be justified without regard to the content of any particular speech. Therefore, both standards are content-neutral.

To prove that the standards are narrowly tailored, Defendants must show that the standards "serve a significant governmental interest and leave[] open ample alternative channels of communication," without burdening "substantially more speech than necessary."[48] The germane and decorum standards need not be "the least restrictive or least intrusive means of"[49] serving the City's interest. Beginning with the germane standard, it burdens only speech that is irrelevant to the City's business. A less restrictive standard would not serve the City's interest in orderly meetings as effectively. Thus, the germane standard does not burden substantially more speech than necessary. Additionally, if members of the public are restricted from speaking due to the germane standard, they have alternative methods of communication available to them. The most obvious alternative form of communication is to tailor their proposed comment so that it is germane to the City. Alternatively, speakers may write, email, or call Commissioners about their proposed comments.[50]

Turning to the decorum standard, it burdens speech that constitutes slander or fighting words, and speech that is repetitious, disruptive, invasive of privacy, or overly loud. Again, to serve the significant interest of orderly City Commission meetings, these rules are undoubtedly

---

[48] *Id.* at 791, 799.

[49] *Id.* at 798.

[50] Plaintiff asserted at the evidentiary hearing that these kinds of alternatives are not equivalent to public comment at an open meeting. However, Plaintiff presented no argument or authority in his post-hearing brief to support his claim that the alternative channels of communication must be equivalent to the prohibited form of communication.

effective.  Without the decorum standard, the City's ability to run orderly meetings would be significantly impeded.  Plaintiff has not presented any argument to support a finding that the standard prohibits substantially more speech than necessary to serve the City's interest, and from the face of the standard there is no indication that it would do so.  Moreover, as with the germane standard, speakers who are prohibited from speaking for violating the decorum standard have ample alternative methods of communication.  Again, the simplest method would be to comply with the decorum rules.  Alternatively, speakers may write, email, or call the Commissioners as many times as they would like.

In sum, assuming that the strict scrutiny standard applies, Plaintiff has not shown that his facial challenge is likely to succeed on the merits because the germane and decorum standards are narrowly tailored to serve a significant government interest.  Thus, Plaintiff's motion for a preliminary injunction based on this claim must be denied.

### C.    As-Applied Challenge

Plaintiff also asserts that the germane and decorum standards do not survive strict scrutiny when applied to himself and other speakers.  For example, Plaintiff argues that he was removed from meetings for behavior that was not disruptive of the City Commission's business.  Defendants argue that the two challenged applications of the standards—the two times Plaintiff was removed from meetings—were valid applications of constitutional standards.  As described in detail below, the Court finds that Plaintiff fails to establish a likelihood of success on the merits on this claim because Larsen and Shipley's application of the two standards survives strict scrutiny.

Beginning with the October 11, 2022 meeting, Plaintiff is not likely to succeed in showing that Shipley's decision to remove Plaintiff fails strict scrutiny.  Plaintiff began his

comment at the October 11 meeting with a list of statistics comparing cost of living, gas prices, the NASDAQ, etcetera, under Presidents Trump and Biden.  This speech was in no way related to the City of Lawrence.  And when Shipley interrupted Plaintiff to warn him that his speech was non-germane (or, in her words, that the City had no control over those subjects), Plaintiff either (1) ignored her, and continued speaking about the same topics; or (2) matter-of-factly asserted that he wanted to make a proclamation,[51] and continued speaking about the same topics.  The video is clear that Plaintiff paid no attention to Shipley's remarks that his speech was non-germane, and did not stop speaking when Shipley interrupted him.  He did not ask Shipley to clarify why his comment was non-germane, and he did not try to modify his speech to be pertinent to City business.  He simply ignored Shipley.

Plaintiff's decision to ignore Shipley, and later, to raise his voice and argue with her, created a decorum problem.  When speakers refuse to obey the moderator of a meeting, that disrupts the meeting.  And an argument between a speaker and the moderator certainly impedes the orderly conduct of the meeting.  The record is devoid of any comparable argument between speaker and moderator like the one Plaintiff engaged in with Shipley.

Comparing Plaintiff's comment with Joe's comment at the same meeting is illustrative.  Shipley interrupted both men several times about the germane standard, explaining it in terms of "control."  Plaintiff ignored her each time, and did not stop talking to listen to her.  In contrast, Joe paused his speech each time Shipley interrupted him and listened to her, redirecting his

---

[51] Plaintiff presented evidence at the hearing about proclamations, and claimed that proclamations are of unlimited subject-matter.  Plaintiff argued that if a speaker mentions the word "proclamation," their speech is automatically germane and must be allowed.  This argument is unpersuasive, because Shipley testified at the hearing that even if a proclamation is germane, it can still violate the decorum standard.  Regardless, it is clear from the video that Plaintiff was not seriously proposing that the City issue a proclamation about "how asinine the Democrats are," but rather was attempting to evade the germane standard by mentioning the word "proclamation."  Ex. 15 at 26:30.  In any event, the Court credits Shipley's testimony that she did not hear the word "proclamation" at the October 11 meeting, because each time Plaintiff mentioned the word "proclamation," he was talking over her.

comment so that it pertained to the City or the City Commission.  Both men eventually interrupted the flow of the meeting—Plaintiff interrupted the meeting by getting into an argument with Shipley and refusing to stop talking, and Joe interrupted the meeting by continuing to speak after his time had expired.  But when Shipley asked both men whether they were ready to be removed, Plaintiff continued to argue with her, and Joe went back to his seat.  Thus, Plaintiff disrupted the meeting, but Joe did not.

Additionally, Joe's demeanor throughout his comment was calm and conversational; Joe appeared to get flustered at one point, but maintained his even-tempered demeanor.  Plaintiff's demeanor started out calm, but then he became visibly frustrated, began to yell, and cursed at Shipley.  Nonetheless, the evidence shows that Shipley did not remove speakers just for cursing, or for calling her a Nazi.[52]  Shipley offered to remove Plaintiff and Joe only after extensive argument, or after the time limit expired.

When viewed in context, Plaintiff is unlikely to succeed in showing that Shipley's decision to remove him was not narrowly tailored and arbitrary.  In his briefs, Plaintiff asserts numerous times that removal is not a narrowly tailored response to off-topic speech, but the evidence shows that Plaintiff was offered the opportunity to return to his seat several times, and refused to do so.  By the time Plaintiff was removed, Shipley had warned him numerous times that his speech was non-germane, invited him to sit down or leave, and paused the meeting.  Plaintiff ignored all of those opportunities to deescalate the situation.  Plaintiff cannot now assert that there were more narrowly tailored options, after turning all of those options down in real-time.  Shipley also testified that she would have allowed Plaintiff to continue speaking if he

---

[52] *See* Ex. 15 at 49:20–49:24 (showing that Joe also called Shipley a Nazi, but was not removed from the meeting); *id.* at 51:10–52:24 (showing that another speaker, Michael, cursed numerous times throughout his comment about the corruption in the Lawrence City Police Department, without removal).

redirected his comment towards City business, which the video supports.  The video also shows that removal was necessary to achieve the purpose of running an orderly meeting.  Thus, Shipley's decision to remove Plaintiff did not burden more speech than necessary, let alone substantially more speech than necessary.

Turning to the July 18, 2023 meeting, the Court similarly finds that Plaintiff is unlikely to succeed in showing that Larsen's decision to remove Plaintiff fails strict scrutiny.  In that meeting, Plaintiff began his comment by accusing Larsen of committing a hate crime and making negative remarks about transgender people.  Plaintiff then began to speak about a protest he led against a former City masking policy.  Larsen did not interrupt Plaintiff to warn him about the germane standard until after Plaintiff began to speak about the masking policy.  The interaction between Plaintiff and Larsen is shorter than the interaction between Plaintiff and Shipley on October 11—Larsen waited less time before removing Plaintiff than Shipley did.  But Larsen still gave Plaintiff multiple warnings that he was not talking about germane matters before she asked a law enforcement officer to remove him.

The context from the video recording shows that Larsen's numerous warnings, and Plaintiff's decision to persist in discussing the same subject-matter, constituted a sufficient disruption of the meeting to violate the decorum standard.  It is apparent from the video that Plaintiff was incredulous that his topic of speech, a former City policy requiring masking for children, was deemed non-germane.  While another mayor might have deemed the comment germane, it is not necessarily wrong for Larsen to deem a former policy that is no longer active, non-germane.[53]  But the dispositive factor is that, even if Plaintiff was correct that his topic was

---

[53] Larsen testified at the hearing that she misunderstood Plaintiff's comment.  Larsen testified that she thought Plaintiff was discussing a mask mandate in reference to his local union, not the City's former mask mandate.  The video shows that Plaintiff did reference his union when he described the mask policy, but later asserted that the policy was one that the City had enacted.  Regardless, Larsen testified that she had additional

germane, his refusal to listen to Larsen created a decorum issue. Plaintiff could have responded to Larsen's interruptions by clarifying the connection between his comment and the City's business; instead, he persisted in discussing the same subject-matter. Larsen testified that she would have allowed Plaintiff to continue speaking if he had redirected his comment towards City business. The video supports Larsen's claim because it shows Larsen pausing and waiting after each warning, to see how Plaintiff would respond.

As explained above, arguing with the moderator of a meeting, or refusing to comply with the moderator's instructions, creates a decorum issue. This decorum issue is separate and apart from any violation of the germane standard. The Court finds that it would be inappropriate to cherry-pick the subjects from Plaintiff's comment—the former City masking policy, for example—and evaluate whether they are germane, without considering the context of Plaintiff's comment. The context here shows that Larsen told Plaintiff his speech was non-germane several times, and each time Plaintiff either ignored her, or questioned her, but always continued to speak about the same topics.

Given that Larsen warned Plaintiff multiple times that he was violating the germane standard, and then explicitly warned him several more times that he "was done," it is unlikely that Plaintiff can demonstrate that Larsen's decision to remove him was not narrowly tailored and arbitrary. The video evidence is clear—Plaintiff had multiple opportunities to deescalate the situation, but chose not to. Given this context, removing Plaintiff did not burden substantially more speech than necessary.

---

reasons for removing Plaintiff, beyond his non-germane speech, including that he was talking over her and disrupting the meeting.

Plaintiff asserts that, since the only explanation Larsen or Shipley gave for both removals was that Plaintiff's speech was non-germane, any argument that he violated the decorum standard is a *post-hoc* justification that should be discounted.  It is correct that "*post hoc* rationalizations by the [defendant] and the use of shifting or illegitimate criteria . . . [will] mak[e] it difficult for courts to determine in any particular case whether the [defendant] is permitting favorable, and suppressing unfavorable, expression."[54]  However, as described above, a mayor's decision that a speaker satisfies or violates the germane or decorum standards is contextual.  It is reasonable that mayors would state only part of their reasoning when they determine that a speaker is violating one or both of the standards.  For example, listing a litany of reasons for removal could take up significant time.  And since the Court can see from the videos that Plaintiff violated the decorum standard in both meetings, it is not a *post-hoc* rationalization for Defendants to explain that he violated both standards.

Plaintiff also takes issue with the concept of being removed for off-topic speech, because he points out that off-topic speech is not a stated basis for removal in the decorum standard.  But off-topic speech, if persistent and in contradiction of the Mayor's directions, can constitute a decorum violation because it is disruptive.  The evidence shows that Larsen and Shipley applied the germane standard tolerantly.  Larsen and Shipley both gave speakers warnings that their speech was non-germane, which were opportunities for speakers to re-direct their comments to germane matters.  No other speaker was removed for off-topic speech because no other speaker ignored those warnings and persisted in discussing the same topics, as Plaintiff did.  Thus, the distinction between Plaintiff's removals and other speakers' non-germane comments is about decorum.  Since Plaintiff violated the decorum standard by refusing to listen to Larsen and

---

[54] *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758 (1988) (citations omitted).

Shipley's directions, and arguing with them, his removals were consistent with the decorum standard.

Plaintiff is correct that the evidence shows that Larsen and Shipley did not interpret the germane standard the exact same way.  In fact, their testimony at the evidentiary hearing confirmed their different interpretations because Larsen testified that the germane standard was subjective, and Shipley testified that it was objective.  Shipley also testified that she would have handled Plaintiff's comment at the July 18 meeting differently than Larsen did, and Larsen testified the same about Shipley's handling of Plaintiff's comment at the October 11 meeting. Additionally, Shipley prevented Plaintiff from discussing his political campaign at the October 11 meeting because she deemed it non-germane, but Larsen testified that Plaintiff's campaign speech was germane to City business.

However, the fact that Larsen and Shipley enforced the germane standard differently does not mean that they enforced it arbitrarily.  Both Defendants enforced the germane standard tolerantly, by providing multiple warnings to speakers who were speaking about non-germane matters.  Thus, speakers had plenty of opportunities to discern that their comments were non-germane, and redirect their comments to City business, before facing any consequences.  Both Defendants also testified that they gave speakers time to get to City business, and did not always interrupt speakers immediately for non-germane speech.  Crucially, there is no evidence that either Defendant removed any speaker for mere off-topic speech, but only for persistent off-topic speech, in contradiction of Defendants' directions.  As explained above, ignoring the moderator, and arguing with the moderator, disrupts the meeting.  The Court can see for itself that both times Plaintiff was removed, he violated the decorum standard by disrupting the meetings.

In sum, even under strict scrutiny, Plaintiff fails to establish that he is likely to succeed on the merits of this claim. Plaintiff's motion for a preliminary injunction based on the as-applied forum status claim must be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Preliminary Injunction (Doc. 11) is **denied**.

**IT IS SO ORDERED.**

Dated: April 8, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE