IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Justin Spiehs Plaintiff v. Lisa Larsen *et al* Defendants | Case No.   5:23-cv-04107-JAR-BGS PLAINTIFF'S REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT Request for Oral Argument D. Kan. Rule 7.2 |

**PLAINTIFF DR. JUSTIN SPIEHS REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**When Enforcement by Different Mayors are Different with Different Outcomes Without Any Predictive Tool: This is the Definition of Arbitrary Enforcement**

Defendants fully embrace the idea that presiding mayors have, and will continue, to enforce the Resolution language differently with different outcomes. ECF 88, p.30.  But they do not explain how or why that is.  Defendants do not provide any formula or any interpretive tool in which the Court could possible predict the outcomes of these discretionary actions of a presiding mayor.  Defendants simply assert that it is OK for each presiding mayor to interpret differently, from other presiding mayors, which topics come in and which stay out – and what happens to speakers purportedly going off-topic – without any reference as to any predictive guideline.

Plaintiff has set forth facts that show a documented track record of topic discussions with largely *all-topics-in* applications by a presiding mayor.  "Arbitrary enforcement means that a law leaves government actors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case."

1

*United States v. Matchett,* 837 F.3d 1118, 1122 (11th Cir. 2016) (quoting *Giaccio v. Pennsylvania,* 382 U.S. 399, 402-03 (1966)).

The Supreme Court has clarified that in a facial challenge for vagueness the plaintiff is not required to show that the challenged statute is vague in all of its applications. *See Johnson v. United States*, 576 U.S. 591, 602-03 (2015) ("squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp"). Dr. Spiehs has demonstrated the topical manner the Resolution has been consistently applied as allowing all topics "in the vast majority of its applications." *Dr. John's, Inc. v. City of Roy,* 465 F.3d 1150, 1157 (10th Cir. 2006).   There is nothing cited by the defendants that would even provide an inkling as to how to predict how each presiding mayor will exercise this interpretive discretion.  In fact, defendants claim that as long as each mayor makes different interpretations and outcomes with "tolerance" that this removes the unpredictable application of the Resolution language not of the arbitrary kind.  Defendants are incorrect. This analysis not only "authorizes" arbitrary and discriminatory enforcement, it "encourages" it.  *Dr. John's, Inc.at* 1158 ("authorizes or even encourages arbitrary and discriminatory enforcement").

## Constitutional Avoidance

Under the canon of constitutional avoidance, the Court should interpret "should" in the public speaking section of the City's Resolution as advisory only thus avoiding the Constitutional question of whether the topic of City "business" is void

2

for vagueness.[1] S*ee Jennings v. Rodriguez,* \_\_\_ U.S. \_\_\_, 138 S. Ct. 830, 836, (2018) (explaining that "when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems"): *Integrity Advance, LLC v. Consumer Finance Protection Bureau,* 48 F.4th 1161, 1178 (10th Cir. 2022) (same citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 247-48 (2012) (explaining that the "constitutional-doubt canon" militates against not only those interpretations that would render the statute unconstitutional but also those that would even raise serious questions of constitutionality")).

### There is No Definition of "Business" That Would Prohibit Dr. Spiehs Topics While Permitting the Topics Discussed by Other Speakers

"Vagueness permeates the text" of the Resolution. *Dr. John's, Inc.at* 1157. Putting aside the issue of the Resolution language "should," using any definition of City "business" there is no reasonable definition upon which would exclude the topics of Dr. Spiehs while allowing the topics of the multitude of other speakers. There is no definition of :"business" that would justify the mayors targeting and interrupting Dr. Spiehs speech while not interrupting the speech of other speakers regarding their topics. There is certainly no workable definition of :"business" that would explain or justify the mayors interrupting Dr. Spiehs speech and then requiring him, under

---

[1] "Like the rule of lenity, the canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Aposhian v. Wilkinson*, 989 F.3d 890, 900 (10th Cir. 2021) (*en banc*).

police authority, to be removed from the meeting and the building when other speakers were interrupted for purported off-topic speech but then allowed to continue their speech and return to their seats.

The defendants have not controverted any of the facts which demonstrate that all of the myriad of topics described in Dr. Spiehs sworn statement have been allowed to be discussed at the City's general comment sections in its open meetings. Even the few instances where the speaker was interrupted for purportedly speaking off-topic even then the speaker resisted and was permitted to continue speaking. This was a designated public forum with an unlimited range of topics – this evidenced by the Resolution language, as well as the application of this Resolution language allowing the discussion of topics having nothing to do with City "governance" or issues over which the City had no legislative oversight or ability.

## Void For Vagueness Strict Scrutiny Applies

An "enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 109 (1972). In determining whether a statute is vague, it is viewed from the standpoint of a person of ordinary intelligence. *Id.* Defendants concede the respective interpretations of the Resolution language has exceed well beyond the map the City's legislative ability. The defendants offer nothing to counter the City's historic practical *laissez faire* treatment of topics which more than makes that point. Defendants side step any analysis of the actual Resolution language as to the reasonable meanings of "should" or "business." It is an insufficient guide by which a person could predict the legality of that person's

4

conduct. *See United States v. Handakas,* 286 F.3d 92, 104 (2d Cir.2002) ("It is not enough to say that judges can intuit the scope of the prohibition if [the defendants] could not").

In none of the defendants' memorandums do they remotely attempt to define the terms in the Resolution of "should" and city "business." In fact, in its opposition memorandum it claims the Resolution language is "irrelevant." ECF 88 p.31. The first – and actually foremost question the Court must answer – is whether the Resolution actually requires a topic restriction at all and then, if it does, what the topic restriction of the word "business" in the context of the City's "business" means.

These two issues are not periphery or hypothetical – they are the essentials – the core issues – or as the Supreme Court has referenced, the "hard core" of the Resolution's general comment language. *See Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973) (void for vagueness doctrine analyzes the essential "hard core" language in whether it provide sufficient notice). Thus, these two key issues of meaning are entirely relevant and are at the core of whether this Resolution passes Constitutional muster and whether the defendant presiding mayors were justified in all of their respective actions, from interrupting, cutting short Dr. Spiehs three minutes of allotted speaking time, and the being ejected not only from the meeting but from the building itself.

A person of ordinary intelligence would reasonably interpret the Resolution language of "should" as a suggestion. Even if the Court rejects that understanding a person of ordinary intelligence would interpret the topic restriction of city "business"

5

to include all topics, not only from the language but the historic practice of the meetings. And a person of reasonable intelligence would also conclude that there are not topic restrictions in asking for topic to be the subject of a proclamation.

The *Shero v. City of Grove,* 510 F.3d 1196 (10th Cir. 2007) decision regarding strict scrutiny is limited to its facts. It considered only the issue of a 3 minute time limitation which it held that particular limitation satisfied strict scrutiny and therefore did not need to determine the forum's designation. *Id.* at 1203. This lawsuit involves something different – not the three minutes of speaking time but the Resolution language and its historic application in allowing virtually all topics while not allowing Dr. Spiehs topics – then requiring, as a consequence to a purported off-topic violation, to be ejected from the meeting and the building. The language of the Resolution language "should" is subject to strict scrutiny and must be interpreted as favorable to free speech. The actions of the presiding mayors allowing a plethora of speakers to speak on topics having nothing to do with city governance is also subject to strict scrutiny in favor of free speech. Summary judgment should be granted on the plaintiff's claims of facial and as-applied challenges.

### Defendants Did Not Controvert Plaintiff's Facts

Defendants employ a cryptic and improper response in making an objection but then saying the statement of fact is "uncontroverted." *See e.g.* ECF 88, p.8 ¶23 (making objection but admitting "uncontroverted"). Irrespective, the vast bulk of Defendants 58 objection responses do not controvert any of the facts set forth by the plaintiff: they are all meritless evidentiary objections. Defendants argue the plaintiff's cited evidence is not admissible – which is not the standard. Rather, the

standard is whether the cited evidence can be submitted in a form admissible at trial. *Francoeur v. U.S. Bank N.A.,* 643 F. App'x 701, 704 (10th Cir. 2016). Defendants' objections to Dr. Spiehs citation to the City's public meeting videos, by date, speaker, and topic, with *HTML* links, claiming hearsay or "best evidence" are without merit.

Defendants don't deny that Dr. Spiehs has personal knowledge of the statements made by these defendants or the public meeting speakers. Neither do defendants deny the existence of each of the meetings, or that the recordings cited are public records, or that the statements were made by each of the speakers.

**Best Evidence Rule** The best evidence rule merely goes to the form of evidence. S*ee Hunt v. City of Los Angeles*, No. CV 17-8064 JFW (PVC), 2021 WL 768248, at *11 (C.D. Cal. Jan. 26, 2021) (objections that evidence violates the "best evidence" rule go to the form of the evidence rather than its ultimate admissibility). All of defendants' respective statements, as well as the public meeting recorded videos with the statements of presiding mayors and those speakers, are admissible at trial for various evidentiary reasons stated below which demonstrate the topic of each speaker, as well as the presiding mayor's reaction to the speech.

**Hearsay Objections are Without Merit**

Defendants 58 hearsay objections to the plaintiff's 58 statements of fact are without merit. The statements made by speakers at the City's public meetings are not being cited for the "truth of the matter asserted." Whether each speaker's public meeting statements were true or not is entirely irrelevant. Rather, the statements are cited for different reasons:

- **That They Were Made | Effect on the Listener**  In showing that the statements were made by the speakers, it demonstrates not only a pattern and practice of allowing speakers to speak on literally everything under the sun, it also shows the presiding mayors' state of mind (801(d)(2)(A)) and the fact those statements were made and heard and elicited an effect upon the hearer – each presiding mayor – in permitting the speaker to speak on the topic.  The statements are offered for the "fact that the statement was uttered." *Starr v. Pearle Vision, Inc.,* 54 F.3d 1548, 1555-56 (10th Cir. 1995) (citing Fed.R.Evid. 801(c)); *M.F. Patterson Dental Supply Co. v. Wadley,* 401 F.2d 167, 172 (10th Cir. 1968) ("well settled that testimony is not hearsay when it is offered to prove only that a statement was made and not the truth of the statement").  The statements also show that defendants had knowledge of speakers speaking on these myriad of subjects over which the city had no legislative control. *See Marsee v. U.S. Tobacco Co.,* 866 F.2d 319, 325 (10th Cir.1989) (knowledge of material facts is not hearsay).  Showing "effect on the listener" is not hearsay. *Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1434 (10th Cir.1993) (statements "offered for the effect on the listener ... are generally not hearsay").

- **Videos of Public Meetings are Public Records**  Dr. Spiehs cites the City's own records – its retained recordings published on YouTube – and provides each *htttml* link. Those are admissible as public records. *See* Fed.R.Evid. 803(8). The statements made in those public video records are not hearsay for the purposes of proving the topics talked about and the reactions, if any, of the presiding mayor.

- **Party Opponent Statements are Admissible**  Dr. Spiehs recited Defendants out-of-court statements made at the public meetings in his sworn statement. They are admissible as party opponent statements. Fed.R.Evid.801(d)(2); *Janny v. Gamez,* 8 F.4th 883, 900 (10th Cir. 2021) ("statements of a party opponent are excluded from being hearsay").

- **Verified Complaint is Competent Evidence**  Defendants argue that citation to the statement of facts set forth in the Amended Complaint is "self-serving." A verified Complaint is on equal footing with an affidavit.  The "self-serving" objection is without merit.  *See Janny* at 900 (affidavit based on personal knowledge which sets forth facts that would be admissible in evidence "is legally competent to oppose summary judgment, irrespective of its self-serving nature" as it "bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact").

### Resolution Language "Should" | Why Exactly Was Dr. Spiehs Silenced and Ejected?

Defendants do not provide any analysis to the Resolution language and instead evade the analysis by arguing it is "semantics" and "irrelevant." ECF 88 p.31, Defendants convoluted argument goes like this:

> 1. It doesn't matter if the Resolution general comment language actually prohibited the topics of Dr. Spiehs' 3 minute speech – *therefore*
>
> 2.  The mayors were right to interrupt and then argue with Dr. Spiehs in declaring his speech was off-topic – *therefore*
>
> 3. Dr. Spiehs purported off-topic speech plus his speech disagreeing with the mayor's interpretation using the word "Nazi" justified  the revocation of Dr. Spiehs remaining speaking time – *therefore*

9

> 4. This also justified not allowing Dr. Spiehs to return to his seat but forcibly evicting Dr. Spiehs (using police) from the meeting and from the building.

The logic is flawed from the inception. Whether the Resolution actually prohibited a topic is the first and foremost question. If it did not, the mayors were completely out of line in targeting and interrupting Dr. Spiehs alleging off-topic speech and in having him forcible ejected. And even if Dr. Spiehs's speech was off-topic, did his disagreement or the use of the word "Nazi" then justify the added punishment of having him forcibly removed from the meeting rather than allow him to return to his seat? Did this disagreement using the word "Nazi" justify booting Dr. Spiehs from the building where he could not return to the meeting for the subsequent public comment section?

The defendants contend the Court ignore that and blame Dr. Spiehs for disagreeing with the presiding mayor's errant interpretations of the Resolution. That is akin to saying the officer had probable cause to arrest simply because the citizen resisted arrest which is a flawed cart-before-the-horse argument. Dr. Spiehs was not looking for a fight – it was these two presiding mayors who targeted Dr. Spiehs, interrupted him, then engaged in a back and forth debate, which was not Dr. Spiehs fault for being right, then punished him further in having him marched out of the meeting by police.

Defendants don't claim Dr. Spiehs was at all being "disruptive" or using "inflammatory" language prior to the defendants improperly interrupting him. Not only did the Resolution language only *suggest* topics, even if it was mandatory Dr. Spiehs repeatedly stated he wanted his topic to be made a proclamation – which even

defendants concede in their memorandum is a permissible topic. Defendants don't claim Dr. Spiehs speech was disruptive or inflammatory prior to each respective interruption by that mayor. It was only because of the defendants interrupting Dr. Spiehs – erroneously telling him he was speaking off-topic – did the back and forth debate occur. Defense counsel now claims Dr. Spiehs was silenced and removed because it was "disruptive" and "inflammatory" but that is not only made up after the fact: the back and forth debate was caused by the defendants' erroneous interpretations as well as their retaliatory motives. The Resolution language did not prohibit Dr. Spiehs topics. There were no topic limitations and even if there was one, Dr. Spiehs cabined his speech as requests for a proclamation. The record is clear that Dr. Spiehs requested his topic to be made a proclamation, of which the defendants have not controverted this fact. If the Court does not rule the ambiguities in the Resolution are void for vagueness, one supposes it will be a jury question unless the Court can rule, as a matter of law, there is only one reasonable interpretation to "should" and "business." Defendants have not offered any admissible evidence that Dr. Spiehs did not repeatedly frame his speech as proclamation requests at the public meeting. Summary judgment should be granted as to that being within City

business.² Defendants attacking Dr. Spiehs' sincerity or motivations is fatally flawed as a fact controverting mechanism.³

### Defendants Have Not Controverted Plaintiff's Forum Facts

Dr. Spiehs' speech restrictions were content based. Thus, strict scrutiny means that the City's time, place, or manner restriction must not be based on either the content or subject matter of speech. *See Consolidated Edison v. Public Service Commission*, 447 U.S. 530, 536 (1980). Not only do the plaintiff's facts demonstrate that the presiding mayors have interpreted the word "should" as merely a suggestion in allowing the myriad of topics to be discussed at its meetings, this same fact demonstrates that in application this was a designated public forum in all respects subject to strict scrutiny and narrow tailoring. *Shero* does not stand for the proposition that the forum analysis is irrelevant as to scrutiny in all circumstances. Defendants urge the Court to simply hold that all city open meetings that have public

---

² Thus defendants make the same argument in *Helget v. City of Hays,* 844 F.3d 1216 (10th Cir. 2017) where they claimed credibility was sufficient to controvert a fact which *Helget* rejected. *Helget* held that when those defendants fail "to provide admissible evidence rebutting testimony offered by the moving party, the question is not one of credibility, but rather the absence of evidence creating a triable issue of fact." *Id.* at 1223 n. 3. They "must do more than merely assert that the jury might' disbelieve the testimony of [Dr. Spiehs]; [s]he must present her own affirmative evidence of those facts which are contradicted by the interested testimony." Defendants offer no evidence whatsoever to controvert the fact that Dr. Spiehs repeatedly asked for a proclamation topic which falls within the contours of city "business."

³ Defendants cite the Court's credibility determination in footnote 51 of ECF 46 where the Court opined that "it is clear from the video that Plaintiff was not seriously proposing that the City issue a proclamation…but rather was attempting to evade the germane standard by mentioning the word proclamation" as a fact but it is not. Credibility is not in play in these competing motions. *See Helget* 1223 n. 3.

comment sections are, by default, limited public forums, which is erroneous. *See Verlo v. Martinez,* 820 F.3d 1113, 1144, 2016 WL 1395205, at *24 (10th Cir. Apr. 8, 2016) ("forum status is an inherently factual inquiry").

## Conclusion

Defendants did not controvert the plaintiff's material facts. The elephant in the room is the historic interpretation and application of the Resolution language which unmistakably demonstrates there are no topic restrictions whatsoever – either because the Resolution language itself doesn't require it or because the presiding mayors don't care to enforce a topic restriction – unless one's name is Dr. Justin Spiehs. Resolution language interpretation comes first and the defendants don't offer any language analysis at all. "Should" is not "shall" or "must." The Resolution used "shall" regarding the second public comment section. The question is why? Under Kansas canon of statutory construction, and consistent with Federal interpretation, "should" is merely advisory. The defendant mayors admit they have different definitions of "business" as referred to in the public comment section of the Resolution. And no defendant provides any definition – and certainly no workable definition – of exactly the playing field of what City "business" entails particularly in light of its practice of opining on any number of topical subjects, after hearing citizen suggestions or criticisms at its public comment sections, as to those topics. In one light there is no difference of opinion regarding the language of the Resolution as "should" has either been uniformly interpreted as a suggestion and / or "business" uniformly interpreted as any hearing comments on any topic the City can make a

proclamation about – which is not limitation of topics. Either way Dr. Spiehs was speaking on topic and should not have been targeted by the defendant mayors claiming he was speaking off-topic.  And  because Dr. Spiehs was speaking entirely within the parameters of the Resolution, he didn't do anything wrong in pointing out each mayor's error in interrupting him claiming he was speaking off-topic.  Dr. Spiehs was speaking during his allotted three-minute time and whatever "disruption" occurred during that allotted time was because the defendant mayors erroneously claimed Dr. Spiehs was violating the Resolution language by speaking off-topic.   It cannot follow that the mayors were justified in cutting short Dr. Spiehs time for contesting cutting short his speaking time or even calling a mayor "Nazi" for her improper conduct.  Even if the mayors could benefit from their own misconduct or misinterpretation of the Resolution language in interrupting, debating, and threatening Dr. Spiehs for his protected topical speech, the term "Nazi" is not a "fighting word" and not prohibited under any Resolution language.

     Under any analysis, including narrow tailoring, even if Dr. Spiehs' sin was either speaking off-topic or debating the mayors – or even calling them names – there was no reason to not allow Dr. Spiehs to return to his seat to listen and await his turn for the next public comment section of the meeting.  Defendants offer no rational why this was necessary.  There was no reason to use police to force Dr. Spiehs from the meeting altogether.  There was no reason to use police to eject Dr. Spiehs from the building upon which he could not return to the meeting to participate in the following public comment section.

The Court should give judgment in favor of the plaintiff on his as-applied and facial challenge and declare that:

1. The use of the word "should" in the public comment section of the Resolution is advisory and does not limit speaker topics;

2. City "business" includes any topic that a proclamation can be the subject of which is unlimited;

3. A topic is permissible when the speaker invokes the proclamation process even if "should" means "must";

4. The public comment section is a designated public forum which subjects any speech restrictions to strict scrutiny and narrow tailoring;

5. Dr. Spiehs' civil rights were violated when the defendants cut short his allotted 3 minute speaking time based upon Equal Protection and the First Amendment;

6. Dr. Spiehs civil rights were violated when Dr. Spiehs was not permitted to return to his seat to remain in the meeting based upon Equal Protection and the First Amendment;

7. Dr. Spiehs civil rights were violated when the defendants utilized police to force Dr. Spiehs from the meeting;

8. Dr. Spiehs civil rights were violated when the defendants utilized police to force Dr. Spiehs from the building;

9. Dr. Spiehs civil rights were violated when the defendants prohibited Dr. Spiehs from returning to that meeting to speak at the subsequent public comment section.

| | |
|---|---|
| /s/Linus L. Baker KS 18197<br>6732 West 185th Terrace<br>Stilwell, Kansas 66085<br>Telephone:  913.486.3913<br>Fax:  913.232.8734<br>Email: linusbaker@prodigy.net<br>Attorney for the plaintiff | **CERTIFICATE OF SERVICE**<br><br>On this 12th day of January, 2025, the above document was filed with the Court's CM-ECF system which will provide notice to all counsel of record.<br>/s/Linus L. Baker<br>Linus L. Baker |