IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JUSTIN SPIEHS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 23-4107-JAR-BGS** |
| **LISA LARSEN, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff Justin Spiehs brings this action under 42 U.S.C. § 1983 against City Mayor Lisa Larsen, City Mayor Courtney Shipley, and the Board of City Commissioners of Lawrence, Kansas, asserting that his free speech and equal protection rights were violated at two City Commission meetings.  This matter is currently before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 82)[1] and Defendants' Motion for Summary Judgment (Doc. 84).  The motions are fully briefed, and the Court is prepared to rule.  For the reasons explained more fully below, the Court grants Defendants' motion for summary judgment and denies Plaintiff's motion for summary judgment.

## I.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact

---

[1] Though Plaintiff styles his motion as one for "partial summary judgment," his briefing seeks summary judgment on all claims, so the Court construes the motion as one for full summary judgment.

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

The moving party must initially show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy this burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]  To accomplish this, the facts "must be

---

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Adams v. Am. Guar. & Liab. Ins.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Celotex*, 477 U.S. at 324.

[9] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (2000); *see also Kannady*, 590 F.3d at 1169.

identified by reference to an affidavit, a deposition transcript[,] or a specific exhibit incorporated therein."[11]  "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[12]

Finaly, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[13]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14]

## II. Uncontroverted Facts

The following facts are either stipulated to or uncontroverted.[15]  City Commission meetings are open to the public and presided over by the City Mayor.  At its discretion, the City Commission opens the floor during the meeting for general public comment on city-related topics.  This public-comment period allows the City Commissioner to "gather concerns, opinions, and issues from their constituents so the Lawrence City Commission can continue to effectively govern the City of Lawrence."[16]  The public-comment period gives "constituents an

---

[11] *Adams*, 233 F.3d at 1246 (quoting *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.3d 1022, 1024 (10th Cir. 1992)).

[12] *James Barlow Fam. Ltd. P'ship v. David M. Munson, Inc*., 132 F.3d 1316, 1319 (10th Cir. 1997).

[13] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[15] Defendants offer two YouTube videos of the City Commission meetings to support their factual assertions about those meetings.  Plaintiff does not object to the admissibility of the YouTube videos, and the Court finds that they support the parties' material factual assertions.

[16] Riedemann Aff. ¶ 11, Doc. 85-1.  Although the parties do not cite this part of the record, the Court may still consider it.  Fed. R. Civ. P. 56(c)(3).

opportunity to comment and voice their opinions on topics relevant to the Lawrence City Commission."[17]

On October 4, 2022, the City adopted Resolution 7451, which prescribes rules and procedures for the public-comment period. Two of those rules are at issue here: the "germane standard" and the "decorum standard." The germane standard requires that speakers' comments "should be limited to issues and items germane to the business of the Governing Body,"[18] and both Shipley and Larsen understood "business of the Governing Body" to mean issues related to the City's business. The decorum standard requires that speakers avoid "fighting words, slander, speech invasive of the privacy of individuals, unreasonably loud or repetitious speeches, and speeches so disruptive of the proceedings that the business of the City is substantially interrupted."[19] If a speaker violates those standards and "engage[s] in disruptive behavior that interferes with the Governing Body's ability to conduct the business of the City," the speaker "may, after a warning, be subject to removal from the meeting."[20]

Plaintiff attended two meetings; the presiding mayor ordered him removed at each meeting. First, Plaintiff attended a meeting on October 11, 2022, presided over by Mayor Shipley. Plaintiff took to the podium for the public-comment period. He offered his observations about the national economy under President Biden and then compared it to when President Trump was in office. He supported his comparison by citing various economic metrics—inflation rates, gas prices, and mortgage rates. Mayor Shipley then asked Plaintiff how his comments were germane to the City Commission's business. Plaintiff spoke over Shipley

---

[17] Riedemann Aff. ¶ 10.

[18] Doc. 83-6 § 5(a)(iii).

[19] *Id.* § 5(f).

[20] *Id.*

and did not modify his speech.  Plaintiff forged ahead and moved for a proclamation "that the city consider how asinine the democrats are"[21] and continued discussing the national economy. After Shipley warned Plaintiff several more times that his speech was not germane, Plaintiff assured Shipley that he would "get to" matters germane to the City Commission's business. Instead he began to discuss his campaign and sidewalk demonstrations.  So Shipley issued a final warning that Plaintiff's discussion violated the germane standard; Plaintiff issued a rejoinder: "Can you stop, Nazi?"[22]  Shipley suspended the meeting and directed that Plaintiff be removed.

Second, Plaintiff attended the July 18, 2023 meeting presided over by Mayor Larsen. Once again, Plaintiff spoke during the public-comment portion.  He discussed mask mandates at Lawrence's local schools.  At the time, the City itself did not have a mask mandate in place.  So Mayor Larsen asked Plaintiff how the topic related to the City Commission's business, and Plaintiff ignored the question and continued his discussion of the schools' mask mandates. Larsen then warned Plaintiff that his comments violated the germane standard, but Plaintiff persisted, so Larsen directed that Plaintiff be removed.

## III.  Discussion

The following claims remain: (1) claims based on forum status (Counts I, II, and IV), (2) free-speech retaliation (Count III), and (3) a class-of-one equal protection claim (Count V).[23] Plaintiff brings these claims against Shipley and Larsen in their individual capacities and against

---

[21] Lawrence City Commission, *10/11/22 City Commission*, YouTube (Oct. 12, 2022), https://www.youtube.com/watch?v=j20V0R0vsbk, at 26:21–26:52, Doc. 85-1, Ex. D.

[22] *Id.* at 27:07–27:14.

[23] The Pretrial Order (Doc. 81) includes causes of action that the Court dismissed in its previous Memorandum and Order (Doc. 45), and Plaintiff's briefing argues for summary judgment on those dismissed claims.  They are the facial vagueness claim, as-applied content-and-viewpoint-discrimination claim, and as-applied claim based on arbitrary enforcement.  Those claims have been dismissed, so the Court does not address them.

the City.  Plaintiff and Defendant have each moved for summary judgment on all claims. The Court first addresses the individual-capacity claims and then the official-capacity claims.

### A.  Individual-Capacity Claims

Against the individual-capacity claims, Shipley and Larsen both invoke qualified immunity.  Once a defendant raises qualified immunity, the burden is on the plaintiff to "(1) com[e] forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrat[e] that the right violated was clearly established at the time of the conduct at issue."[24]  Courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first.[25]

In determining whether a plaintiff has demonstrated a violation of his rights and that the right was clearly established at the time, courts must view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment.[26]  "[T]his usually means adopting . . . the plaintiff's version of the facts," unless that version "is so utterly discredited by the record that no reasonable jury could have believed him."[27]  Additionally, "because at summary judgment [the court is] beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record."[28]  In that sense, the Court does not discard the Rule 56 process, but relies upon facts supported by the record, while viewing those facts and reasonable inferences therefrom in the light most favorable to Plaintiff.[29]

---

[24] *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998)); *see also Libretti v. Courtney*, 633 F. App'x 698, 699 (10th Cir. 2016).

[25] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[26] *Scott v. Harri*s, 550 U.S. 372, 376–80 (2007).

[27] *Id.*

[28] *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

[29] *Id.* (citing *Scott*, 550 U.S. at 378, 380).

Here, the undisputed facts show that Shipley and Larsen did not violate Plaintiff's constitutional rights.  He has therefore failed—on all claims—to satisfy the first requirement to overcome Shipley and Larsen's qualified immunity.  The Court first addresses the forum-status claims, then the free-speech retaliation claim, and finally, the equal protection claim.

### 1. Forum-Status Claims

Defendants Shipley and Larsen are entitled to qualified immunity on the forum-status claims.  To analyze a First Amendment challenge, courts follow three-steps: (1) determining whether the speech in question is protected; (2) identifying the status of the forum "because that determination dictates the extent to which the government can restrict First Amendment activities"; and (3) determining "whether the proffered justifications for prohibiting speech in the forum satisfy the requisite standard of review."[30]  Here, it is undisputed that Plaintiff's speech was protected under the First Amendment, but the parties disagree about the status of the forum, and thus the applicable standard of review.

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue."[31]  The Supreme Court has identified three categories of forums: (1) traditional public forums; (2) designated public forums; and (3) nonpublic forums.[32]  Traditional public forums are places which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and

---

[30] *Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir. 2016) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

[31] *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983).

[32] *Id.* at 45–46.

discussing public questions."[33]  In traditional public forums (like parks and streets) the government's right to restrict expressive activity is "sharply circumscribed" and must satisfy strict scrutiny.[34]

Designated public forums are "created when the government 'intentionally open[s] a nontraditional public forum for public discourse.'"[35]  If a property is "generally available to a certain class of speakers," courts have found a designated public forum to exist.[36]  Speech restrictions in a designated public forum are subject to the same strict scrutiny as traditional public forums.[37]

In contrast, a nonpublic forum is "[p]ublic property which is not by tradition or designation a forum for public communication."[38]  Speech restrictions in a nonpublic forum enjoy more lenient scrutiny.  They are constitutional "so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."[39]

Nonpublic forums have a subcategory—"limited public forums"—which "arise[] where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum."[40]  Speech restrictions in a limited public forum receive the same scrutiny as nonpublic forums: they

---

[33] *Id.* at 45 (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).

[34] *Id.*

[35] *Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007) (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998)).

[36] *Forbes*, 523 U.S. at 679.

[37] *Id.*

[38] *Perry*, 460 U.S. at 46.

[39] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) (citing *Perry*, 460 U.S. at 49)).

[40] *Shero*, 510 F.3d at 1202 (quoting *Summum v. City of Ogden*, 297 F.3d 995, 1002 n.4 (10th Cir. 2002)).

"must only be reasonable in light of the purpose served by the forum and be viewpoint-neutral."[41]

The Tenth Circuit has not decided whether city council meetings are limited public forums or designated public forums. But the circuit "has offered 'three non-exhaustive factors to consider in determining whether the government has created a designated public forum' instead of a limited public forum: (1) the forum's purpose; (2) the extent of the forum's use; and (3) the government's intent in opening the forum to the public."[42] And courts "will not find that a public forum has been created in the face of clear evidence of a contrary intent," or when "the nature of the property is inconsistent with expressive activity."[43]

Based on the undisputed facts, the Court finds that the public-comment period of the City Commission meetings is a limited public forum.[44] Applying the circuit's test, the Court concludes that the City Commission did not create a designated public forum when it opened the public-comment period but instead opened the forum only for a limited purpose: to solicit public comment on the Commission's conduct of City business. First, the public-comment period's purpose is to allow "constituents an opportunity to comment and voice their opinions *on topics relevant to the Lawrence City Commission*."[45] And the extent of the forum's use overlaps with

---

[41] *Id.* at 1202–03 (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

[42] *Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.*, 660 F. App'x 600, 605 (10th Cir. 2016) (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1129 (10th Cir. 2012)).

[43] *Cornelius*, 473 U.S. at 803.

[44] Here, the parties do not devote time to defining the forum—whether it is the meeting generally or the public-comment period specifically. To define the forum at issue, a court "focuse[s] on the access sought by the speaker," *id.* at 801, which, in this case, is access to speak during the public-comment period of the meeting. The Court therefore defines the forum here as the public-comment period of the City Commission's meetings. *See Hirt v. Unified Sch. Dist. No. 287*, 17-2279, 2018 WL 6326412, at *5 (D. Kan. Dec. 4, 2018) (defining forum as the public-comment period of a school-board meeting); *Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1178 (D.N.M. 2014) (defining forums as the "Governing Body meetings" generally and the "public input portions in particular").

[45] Riedemann Aff. ¶ 10, Doc. 85-1 (emphasis added).

that purpose: public comments must be germane, limited to three minutes, and addressed to the City Commission.  Moreover, the public-comment period is not guaranteed; the City Commission retains discretion to hold one or not.  Those limits are inconsistent with the "general access" or "indiscriminate use" required to create a designated public forum.[46]  Rather, they permit only "selective access to some speakers or some types of speech"[47]—in other words, limits indicative of a limited public forum.[48]  Finally, the City Commission's purpose in opening the forum—to "gather concerns, opinions, and issues from their constituents so the Lawrence City Commission can continue to effectively govern the City of Lawrence"[49]—supports the limited-public-forum characterization.  Those undisputed facts are consistent with the City Commission's creation of a limited, not designated, public forum.[50]

Because the public-comment period is a limited public forum, the Commission is entitled to pass and enforce speech restrictions, "so long as they are "reasonable in light of the purpose served by the forum and . . . viewpoint-neutral."[51]  The Court concludes that the germane and decorum standards satisfy those conditions.

Both standards reasonably further the purpose served by the forum.  The City Commission opens the floor for public comment during its meetings to hear citizens' comments

---

[46] *See Summum v. Callaghan*, 130 F.3d 906, 915 n.13 (10th Cir. 1997) (internal quotation marks omitted) (first quoting *Cornelius*, 473 U.S. at 803; and then quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 47 (1983)).

[47] *Celebrity Attractions*, 660 F. App'x at 605 (quoting *Verlo v. Martinez*, 820 F.3d 1113, 1129 n.6 (10th Cir. 2016)).

[48] *See Hirt*, 2018 WL 6326412, at *5 (finding that school board did not create general or indiscriminate access because comments were limited to three minutes and to comments about school board's business); *Griffin*, 30 F. Supp. 3d at 1180 (finding city -council meeting is limited public forum because "[t]he Governing Body has placed numerous reasonable restrictions on speakers").

[49] Riedemann Aff. ¶ 10, Doc. 85-1 (emphasis added).

[50] This conclusion comports with the opinions of several Courts of Appeals.  *See Griffin*, 30 F. Supp. 3d at 1180 (collecting cases).

[51] *Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007).

on City business.  The germane standard furthers that purpose because it limits public comment

to topics that it has authority over and that relate to the City Commission's business.  The

decorum standard furthers that purpose by facilitating orderly and efficient meetings.

Both standards are also viewpoint neutral.  Viewpoint discrimination occurs "[w]hen

government officials target speech *because of* 'particular views taken by speakers on a

subject.'"[52]  This "egregious form of content discrimination" arises when the government

squelches "the specific motivating ideology or the opinion or perspective of the speaker."[53]  First,

neither the germane standard nor decorum standard are viewpoint discriminatory on their face.

The germane standard limits what topics a speaker may discuss but does not limit certain

viewpoints on a topic, while allowing other viewpoints.  The decorum standard does not on its

face discriminate among viewpoints either; it only limits the way a speaker may express his

message.  Second, the undisputed facts show that the City Commission did not adopt the

standards to target views taken by Plaintiff or other speakers.  The City Commission adopted the

standards to "ensur[e] that public meetings are run efficiently and effectively."[54]  The City

Commission's reason for adopting the standards was neutral and unrelated to any viewpoints.

Both standards are viewpoint neutral.[55]

---

[52] *Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

[53] *Rosenberger*, 515 U.S. at 819.

[54] Riedemann Aff. ¶ 15, Doc. 85-1.

[55] Plaintiff also appears to argue that the standards have been applied to him in a viewpoint discriminatory manner.  To the extent that Plaintiff argues a separate claim for viewpoint discrimination, the Court has already dismissed that claim, *see* Doc. 45, and the Court rejects his attempt to revive it here.  Perhaps Plaintiff means, however, that because the standards have been applied to him in a viewpoint discriminatory manner, they fail the limited-public-forum scrutiny.  That argument still fails: Plaintiff has brought forth no facts that Shipley or Larsen prevented him from expressing his viewpoint on a topic, while allowing other speakers to voice different viewpoints on the same topic.

Because the germane and decorum standards are reasonable and viewpoint neutral, they survive the scrutiny applied to limited public forums. The Court therefore concludes that Shipley and Larsen did not violate Plaintiff's free-speech rights by enforcing the standards against him. He has failed to satisfy the first requirement to overcome Shipley and Larsen's qualified-immunity defense, so Defendants are entitled to judgment as a matter of law on the forum-status claims. The Court grants summary judgement for the individual Defendants on the forum-status claims (Counts I, II, and IV).

### 2. Retaliation

Defendants Shipley and Larsen are also entitled to qualified immunity on the retaliation claim. To bring a successful free-speech retaliation claim, Plaintiff must show that he "engage[d] in . . . constitutionally protected activity."[56] But as explained above, Plaintiff's speech during the public-comment portion was not a constitutionally protected activity because he uttered it in violation of the limited public forum's constitutionally permissible speech restrictions. Because the undisputed facts show that Plaintiff was not engaged in constitutionally protected activity, neither Shipley nor Larsen retaliated against him for exercising his constitutional rights and therefore did not violate his constitutional rights. Shipley and Larsen are entitled to qualified immunity on the retaliation claim. The Court grants summary judgment for the individual Defendants on Claim III.

### 3. Equal Protection

Defendants Shipley and Larsen are entitled to qualified immunity on the equal protection claim. An equal protection claim ordinarily challenges "governmental action that

---

[56] *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1172 (10th Cir. 2021) (citing *McBeth v. Himes*, 598 F.3d 708, 727 (10th Cir. 2010)).

disproportionally burdens certain classes of citizens."[57]  In *Village of Willowbrook v. Olech*, however, the Supreme Court carved out a "class-of-one" equal protection claim, holding that a plaintiff "has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[58]  Plaintiff faces a heavy burden, though, because he must allege that others "'similarly situated in *every material respect*[,]' were treated differently."[59]

Even assuming that Plaintiff was similarly situated in every material respect as other speakers, he has failed to show that Shipley's and Larsen's interruptions and removals of him lacked a rational basis.  Shipley and Larsen need only have a rational basis for treating Plaintiff differently than those other speakers.[60]  And they do have that basis: as the presiding mayors of the City Commission meetings, Shipley and Larsen have a significant interest in conducting "orderly and efficient [City Commission] meetings."[61]  Shipley and Larsen removed Plaintiff to maintain order during the meeting after he defied the germane and decorum standards and ignored Shipley's and Larsen's warnings.  Shipley and Larsen therefore had a rational basis for their treatment of Plaintiff during the public-comment period.  That dooms his claim.  Shipley and Larsen are entitled to qualified immunity on the equal protection claim, so the Court grants summary judgment for the individual Defendants on the equal protection claim (Count V).

**B.  Official Capacity Claims**

Plaintiff brings the same claims against the City: (1) forum status, (2) First Amendment retaliation, and (3) equal protection.  Under *Monell v. Department of Social Services of the City*

---

[57] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215–16 (10th Cir. 2011).

[58] 528 U.S. 562 (2000) (per curiam).

[59] *A.M. v. Holmes*, 830 F.3d 1123, 1167 (10th Cir. 2016) (quoting *Kan. Penn Gaming*, 656 F.3d at 1216).

[60] *Id.* at 1167 (quoting *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688–89 (10th Cir. 2012)).

[61] *Shero*, 510 F.3d at 1203.

*of New York*,[62] an injured plaintiff may hold a municipal entity liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[63]  The claim has three general requirements: (1) an underlying injury to a constitutional right of the plaintiff; (2) a municipal policy or custom, and (3) a direct causal link between the policy or custom and the injury.[64]  "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[65]

Plaintiff's claims against the City all fail because the undisputed facts show that no Defendant inflicted an injury to his constitutional rights.  Plaintiff's forum-status claims stumble because the germane and decorum standards were reasonable and viewpoint-neutral speech restrictions permissible in a limited public forum.  Plaintiff's retaliation claim fails because he was not engaged in constitutionally protected activity in light of the limited public forum's permissible limitations.  And his equal protection claim founders because, even assuming that he was similarly situated in all material respects as other speaker, the City Commission's treatment of Plaintiff had a rational basis.  Because Plaintiff did not suffer a constitutional injury, the City is entitled to summary judgment on the official-capacity claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 84) is **granted** and Plaintiff's Motion for Partial Summary Judgment (Doc. 82) is **denied.**  The Clerk is directed to enter judgment in favor of Defendants and terminate this action.

---

[62] 436 U.S. 658 (1978).

[63] *Id.* at 694.

[64] *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

[65] *Feen v. City of Truth or Consequences*, 983 F.3d 1143, 1150 (10th Cir. 2020) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

**IT IS SO ORDERED.**

Dated: March 6, 2025

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE